| Fill in this information to identify your case: | | | |
|---|---|---|---|
| Debtor 1 | *Karl William Krouse* | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | *Betty Corinne Krouse* | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA | | |
| Case number | *25-10027-CMB* | | |
| (if known) | | | |

☐ Check if this is an amended filing

## Official Form 106Sum

## Summary of Your Assets and Liabilities and Certain Statistical Information    12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Fill out all of your schedules first; then complete the information on this form. If you are filing amended schedules after you file your original forms, you must fill out a new *Summary* and check the box at the top of this page.**

### Part 1:    Summarize Your Assets

| | **Your assets**<br>Value of what you own |
|---|---|

1. **Schedule A/B: Property** (Official Form 106A/B)
   1a. Copy line 55, Total real estate, from Schedule A/B..................................................... $ **128,000.00**

   1b. Copy line 62, Total personal property, from Schedule A/B........................................... $ **15,948.00**

   1c. Copy line 63, Total of all property on Schedule A/B.................................................... $ **143,948.00**

### Part 2:    Summarize Your Liabilities

| | **Your liabilities**<br>Amount you owe |
|---|---|

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 106D)
   2a. Copy the total you listed in Column A, *Amount of claim,* at the bottom of the last page of Part 1 of *Schedule D...* $ **146,998.19**

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 106E/F)
   3a. Copy  the total claims from Part 1 (priority unsecured claims) from line 6e of *Schedule E/F*................................. $ **338.85**

   3b. Copy  the total claims from Part 2 (nonpriority unsecured claims) from line 6j of *Schedule E/F*........................... $ **49,418.73**

   **Your total liabilities** $ **196,755.77**

### Part 3:    Summarize Your Income and Expenses

4. *Schedule I: Your Income* (Official Form 106I)
   Copy your combined monthly income from line 12 of *Schedule I*............................................................... $ **2,206.06**

5. *Schedule J: Your Expenses* (Official Form 106J)
   Copy your monthly expenses from line 22c of *Schedule J*.......................................................... $ **2,943.00**

### Part 4:    Answer These Questions for Administrative and Statistical Records

6. **Are you filing for bankruptcy under Chapters 7, 11, or 13?**

   ☐ No. You have nothing to report on this part of the form. Check this box and submit this form to the court with your other schedules.

   ■ Yes

7. **What kind of debt do you have?**

   ■ **Your debts are primarily consumer debts.** *Consumer debts* are those "incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). Fill out lines 8-9g for statistical purposes. 28 U.S.C. § 159.

   ☐ **Your debts are not primarily consumer debts.** You have nothing to report on this part of the form. *Check this box* and submit this form to the court with your other schedules.

Debtor 1   *Karl William Krouse*
Debtor 2   *Betty Corinne Krouse*

Case number *(if known)* **25-10027-CMB**

8. **From the *Statement of Your Current Monthly Income*:** Copy your total current monthly income from Official Form 122A-1 Line 11; **OR**, Form 122B Line 11; **OR**, Form 122C-1 Line 14.

$ _____ **477.90**

9. **Copy the following special categories of claims from Part 4, line 6 of *Schedule E/F*:**

| From Part 4 on *Schedule E/F*, copy the following: | Total claim |
|---|---|
| 9a. Domestic support obligations (Copy line 6a.) | $ _____ *0.00* |
| 9b. Taxes and certain other debts you owe the government. (Copy line 6b.) | $ _____ *338.85* |
| 9c. Claims for death or personal injury while you were intoxicated. (Copy line 6c.) | $ _____ *0.00* |
| 9d. Student loans. (Copy line 6f.) | $ _____ *12,219.85* |
| 9e. Obligations arising out of a separation agreement or divorce that you did not report as priority claims. (Copy line 6g.) | $ _____ *0.00* |
| 9f. Debts to pension or profit-sharing plans, and other similar debts. (Copy line 6h.) | +$ _____ *0.00* |

9g. **Total.** Add lines 9a through 9f.

$ _____ **12,558.70**

**Fill in this information to identify your case and this filing:**

| | | | |
|---|---|---|---|
| Debtor 1 | *Karl William Krouse* | | |
| | First Name | Middle Name | Last Name |
| Debtor 2 | *Betty Corinne Krouse* | | |
| (Spouse, if filing) | First Name | Middle Name | Last Name |

United States Bankruptcy Court for the:    WESTERN DISTRICT OF PENNSYLVANIA

Case number    **25-10027-CMB**

☐ Check if this is an
amended filing

## Official Form 106A/B
# Schedule A/B: Property                                                    **12/15**

In each category, separately list and describe items. List an asset only once.  If an asset fits in more than one category, list the asset in the category where you think it fits best.  Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**    **Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In**

1.  **Do you own or have any legal or equitable interest in any residence, building, land, or similar property?**

☐ No. Go to Part 2.

■ Yes.  Where is the property?

1.1

| | |
|---|---|
| *4408 Wilcox Road* | **What is the property?** Check all that apply |
| Street address, if available, or other description | ■ Single-family home |
| | ☐ Duplex or multi-unit building |
| | ☐ Condominium or cooperative |
| | ☐ Manufactured or mobile home |
| *Wilcox*    *PA*    *15870-0000* | ☐ Land |
| City    State    ZIP Code | ☐ Investment property |
| | ☐ Timeshare |
| | ☐ Other _____ |

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$128,000.00** | **$128,000.00** |

**Who has an interest in the property?** Check one

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another

**Describe the nature of your ownership interest** (such as fee simple, tenancy by the entireties, or a life estate), if known.

*Tenants by the Entireties*

*Elk*

County

☐ Check if this is community property
(see instructions)

Other information you wish to add about this item, such as local property identification number:

2.  **Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here.........................................................................=>**

| |
|---|
| **$128,000.00** |

**Part 2:**    **Describe Your Vehicles**

**Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not?** Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

| Debtor 1 | **Karl William Krouse** | | |
|---|---|---|---|
| Debtor 2 | **Betty Corinne Krouse** | Case number *(if known)* | **25-10027-CMB** |

3. **Cars, vans, trucks, tractors, sport utility vehicles, motorcycles**

☐ No
■ Yes

| 3.1 | Make: | **Kia** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|
| | Model: | **Sportage** | ■ Debtor 1 only | |
| | Year: | **2005** | ☐ Debtor 2 only | |
| | Approximate mileage: | **205,000** | ☐ Debtor 1 and Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Other information: | | ☐ At least one of the debtors and another | |
| | | | ☐ Check if this is community property (see instructions) | **$2,000.00**    **$2,000.00** |

| 3.2 | Make: | **Chevy** | Who has an interest in the property? Check one | Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.* |
|---|---|---|---|---|
| | Model: | **S-10** | ■ Debtor 1 only | |
| | Year: | **1990** | ☐ Debtor 2 only | |
| | Approximate mileage: | **100,000** | ☐ Debtor 1 and Debtor 2 only | Current value of the entire property? / Current value of the portion you own? |
| | Other information: | | ☐ At least one of the debtors and another | |
| | | | ☐ Check if this is community property (see instructions) | **$1,000.00**    **$1,000.00** |

4. **Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5. **Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for pages you have attached for Part 2. Write that number here...........................................................=>**    **$3,000.00**

**Part 3:**  Describe Your Personal and  Household Items

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

6. **Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes.  Describe.....

| **All household goods and furniture** | **$2,800.00** |
|---|---|

7. **Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices including cell phones, cameras, media players, games
   ☐ No
   ■ Yes.  Describe.....

| **TV, DVD, and all other electronics** | **$400.00** |
|---|---|

8. **Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections; other collections, memorabilia, collectibles
   ■ No

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* | ***25-10027-CMB*** |

☐ Yes. Describe.....

9. **Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools; musical instruments

☑ No
☐ Yes. Describe.....

10. **Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment

☐ No
☑ Yes. Describe.....

| *2 handguns* | *$300.00* |
|---|---|

11. **Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories

☐ No
☑ Yes. Describe.....

| *Clothing owned by debtors* | *$300.00* |
|---|---|

12. **Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver

☐ No
☑ Yes. Describe.....

| *Wedding bands; costume jewelry* | *$75.00* |
|---|---|

13. **Non-farm animals**
   *Examples:* Dogs, cats, birds, horses

☐ No
☑ Yes. Describe.....

| *2 Dogs* | *$1.00* |
|---|---|

14. **Any other personal and household items you did not already list, including any health aids you did not list**

☑ No
☐ Yes. Give specific information.....

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached for Part 3. Write that number here ............................................................

| | *$3,876.00* |
|---|---|

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
   *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition

☐ No
☑ Yes.........................................................................................................

2/04/25 12:42PM

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* | **25-10027-CMB** |

| | *Cash in debtor's possession* | *$46.00* |
|---|---|---|

**17. Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
        institutions. If you have multiple accounts with the same institution, list each.

☐ No
■ Yes.......................                     Institution name:

| 17.1. | *Husband's Checking* | *CNB Checking* | *$100.00* |
|---|---|---|---|
| 17.2. | *Joint Checking* | *CNB Checking* | *$2,300.00* |
| 17.3. | *Wife's Checking* | *CNB Checking* | *$5.00* |

**18. Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes...................       Institution or issuer name:

**19. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ■ No
    ☐ Yes.  Give specific information about them....................
                        Name of entity:                               % of ownership:

**20. Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
                        Issuer name:

**21. Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ☐ No
    ■ Yes. List each account separately.
                        Type of account:                    Institution name:

| *401(k)* | *Kwik Fill retirement plan through United Refinery* | *$6,000.00* |
|---|---|---|
| *Social Security* | *Social Security - Husband receives $1,025 per month (in pay status)* | *$1.00* |
| *Social Security* | *Social Security - Wife receives $778 per month (in pay status)* | *$1.00* |

**22. Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ■ No
    ☐ Yes. .....................       Institution name or individual:

Official Form 106A/B                       Schedule A/B: Property                              page 4

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* | *25-10027-CMB* |

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
- ■ No
- ☐ Yes.............    Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
- ■ No
- ☐ Yes.............    Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

25. **Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
- ■ No
- ☐ Yes.  Give specific information about them...

26. **Patents, copyrights, trademarks, trade secrets, and other intellectual property**
    *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
- ■ No
- ☐ Yes.  Give specific information about them...

27. **Licenses, franchises, and other general intangibles**
    *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
- ■ No
- ☐ Yes.  Give specific information about them...

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

28. **Tax refunds owed to you**
- ☐ No
- ■ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

| *Income tax refunds for tax year ending 2024 is Federal $438 and State $181* | *Federal & State* | $619.00 |
|---|---|---|

29. **Family support**
    *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
- ■ No
- ☐ Yes. Give specific information......

30. **Other amounts someone owes you**
    *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
        benefits; unpaid loans you made to someone else
- ■ No
- ☐ Yes. Give specific information..

31. **Interests in insurance policies**
    *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
- ■ No
- ☐ Yes. Name the insurance company of each policy and list its value.
        Company name:                Beneficiary:                Surrender or refund value:

32. **Any interest in property that is due you from someone who has died**
    If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because
        someone has died.
- ■ No
- ☐ Yes.  Give specific information..

| Debtor 1 | *Karl William Krouse* |
|---|---|
| Debtor 2 | *Betty Corinne Krouse* |

Case number *(if known)*  **25-10027-CMB**

**33. Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
*Examples:* Accidents, employment disputes, insurance claims, or rights to sue
- ■ No
- ☐ Yes.  Describe each claim.........

**34. Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
- ■ No
- ☐ Yes.  Describe each claim.........

**35. Any financial assets you did not already list**
- ■ No
- ☐ Yes.  Give specific information..

**36.** Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached
for Part 4. Write that number here..................................................................................................................

*$9,072.00*

**Part 5:** Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1.

**37. Do you own or have any legal or equitable interest in any business-related property?**
- ■ No. Go to Part 6.
- ☐ Yes.  Go to line 38.

**Part 6:** Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In.
If you own or have an interest in farmland, list it in Part 1.

**46. Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
- ■ No. Go to Part 7.
- ☐ Yes.  Go to line 47.

**Part 7:** Describe All Property You Own or Have an Interest in That You Did Not List Above

**53. Do you have other property of any kind you did not already list?**
*Examples:* Season tickets, country club membership
- ■ No
- ☐ Yes. Give specific information.........

**54.** Add the dollar value of all of your entries from Part 7. Write that number here ....................................

*$0.00*

**Part 8:** List the Totals of Each Part of this Form

| | | |
|---|---|---|
| **55.** Part 1: Total real estate, line 2 ............................................................................. | | *$128,000.00* |
| **56.** Part 2: Total vehicles, line 5 | *$3,000.00* | |
| **57.** Part 3: Total personal and household items, line 15 | *$3,876.00* | |
| **58.** Part 4: Total financial assets, line 36 | *$9,072.00* | |
| **59.** Part 5: Total business-related property, line 45 | *$0.00* | |
| **60.** Part 6: Total farm- and fishing-related property, line 52 | *$0.00* | |
| **61.** Part 7: Total other property not listed, line 54 | + *$0.00* | |
| **62.** **Total personal property.** Add lines 56 through 61... | *$15,948.00* | Copy personal property total  *$15,948.00* |
| **63.** **Total of all property on Schedule A/B.** Add line 55 + line 62 | | *$143,948.00* |

Karl William Krouse
Betty Corinne Krouse
Case #25-10027-CMB

Schedule A/B

The real estate located at 4408 Wilcox Road, Wilcox, PA situate in the Township of Jones, County of Elk and Commonwealth of Pennsylvania acquired by virtue of a deed dated April 27, 2007 and recorded on June 6, 2007 at Elk County Instrument #2007-002241 for a purchase price of $75,000; subject to a mortgage in favor of Countrywide Home Loans, Inc. dated April 27, 2007 and recorded on June 6, 2007 at Elk County Instrument #2007-002242 in the face amount of $75,000 and an assignment of mortgage in favor of BAC Home Loans Servicing LP recorded on February 24, 2010 at Elk County Instrument #2010-000473 and an assignment of mortgage in favor of M&T Bank recorded on May 5, 2014 at Elk County Instrument #2014-001072 and a modification agreement recorded on July 23, 2015 at Elk County Instrument #2015-002189 in the face amount of $81,981.93 and an assignment of mortgage in favor of M&T Bank recorded on May 25, 2017 at Elk County Instrument #2017-001426 and a Loan Modification Agreement recorded on April 29, 2019 at Elk County Instrument #2019-001049 and a release of 0.249 acres from the mortgage recorded on May 6, 2022 at Elk County Instrument #2022-001258.

#01694738



**Falcon Settlement, Inc.**
660 Longview Road, Suite A
Fairmount City, PA 16224
814-365-5455 Fax 5019
www.falconsettlement.com
research@falconsettlement.com

January 16, 2025

Quinn, Buseck, Leemhuis, Toohey, Kroto, Inc.
2222 West Grandview Blvd.
Erie PA 16506-4508
814-833-2222, FAX 835-2076
MTrayer@quinnfirm.com

File #75844.0001
Re:    Karl Krouse and Betty Herzing
Jones Township #07-06-015-1873
Elk County

The Elk County Courthouse records have been searched, from 4/27/07 to 1/14/2025. The above captioned premises were searched with regard to the surface owners, but not as to any oil, gas or mineral interests, which may have been severed from the surface, nor as to any liens (municipal, current taxes, property owner fees, child support, bankruptcy, etc.) that are NOT filed in the courthouse.

The following information has been found.  Please note:

ASSESSMENT

Jones Township map #07-06-015-1873, Tax I.D. #07-009297, assessed as 418' X irr. lot, valued at $2,750, with residential improvements, valued at $24,050, totaling $26,800.

The property address is 4408 Wilcox Road (Wilcox, PA 15870).

Assessed to Karl Krouse and Betty Herzing of 4408 Wilcox Road, Wilcox, PA 15870.

SOURCE OF TITLE

#2007-002241, dated 4/27/07, recorded 6/6/07, for $75,000.00, Gail N. Barnett and Lori L. Abplanalp, (both nms), to Karl Krouse and Betty Herzing, (both nms), as joint tenants, conveying 1) tract and 2) tract, excepting the south 1 ½ acres to Loraine Morgan as in DB 245/538. (copy)

RECORDED LIENS

Real Estate Tax:      Paid through 2024

Mortgages:            #2007-2242, dated 4/27/07, recorded 6/6/07, for $75,000.00, Karl Krouse and
                      Betty Herzing to MERS as nominee for Countrywide Home Loans, Inc., covering
                      map #07-06-015-1873.
                               -#2010-000473, recorded 2/24/10, assigned to BAC Home Loans
                               Servicing, L.P. f/k/a Countrywide Home Loans Servicing L.P.
                               -#2014-001072, recorded 5/5/14, assigned to M&T Bank
                               -#2015-002189, recorded 7/23/15, modification agreement to new
                               principal amount of $81,981.93
                               -#2017-001426, recorded 5/25/17, assigned to M&T Bank.
                               -#2019-001049, recorded 4/29/19, loan modification agreement
                               -#2022-001258, recorded 5/6/2022, release of 0.249 acres from mortgage

Judgments:            1) #658-2009, entered 6/24/09 for $9,605.35, United States of America vs. Karl
                      W. Krouse

                      2) #10026-2011, entered 6/15/11 for $407.67, Jones Township Municipal
                      Authority vs. Karl Krouse and Betty Herzing.
                               -Regarding map #07-06-015-1873

                      3) #246-2012, entered 3/28/12 for $1,387.07, LVNV Funding LLC vs. Betty
                      Herzing.

                      4) #895-2013, David Newman and Fred Newman vs. Karl W. Krouse d/b/a
                      Krouse Salvage.
                               -Writ of execution was filed 10/16/13 in the amount of $1,085.75 being a
                               Writ of execution from Jefferson Co. #746-2013

                      5) #528-2022, complaint in mortgage foreclosure filed 7/22/2022, M&T Bank vs.
                      Shirley L. Biel, Peter T. Biel, Betty Herzing a/k/a Betty C. Herzing and Karl
                      Krouse a/k/a Karl W. Krouse.
                               -Case marked discontinued and ended as to Peter T. Biel and Shirley L.
                               Biel on 11/10/2022
                               -Judgment entered 12/29/2022 for $117,670.60
                               -Writ of execution issued 12/29/2022
                               -3129 filed 12/29/2022
                               -Writ of execution filed 8/22/2024
                               -3129 filed 8/22/2024
                               -3129.1 filed 1/14/2025

                      6) #10005-2023, entered 4/12/2023 for $3,771.36, Jones Township Municipal
                      Authority vs. Betty Herzing a/k/a Betty C. Herzing and Karl Krause a/k/a Karl
                      Krause.
                               -Regarding map #07-06-015-1873

7) #10017-2024, entered 12/23/2024 for $3,173.88, Jones Township Municipal Authority vs. Betty Herzing a/k/a Betty C. Herzing and Karl Krouse a/k/a Karl W. Krouse.

    -Regarding map #07-06-015-1873

Recorder UCCs:    None

## ADVERSE DEEDS

#2008-3921, dated 9/21/08, recorded 9/26/08, Karl Krouse et al to Peter T. Biel et ux, conveying 0.249 acres. (copy)

    -Note: Grantors executed this deed as successors in interest to Gail M. Barnett and Lori L. Abplanalp and made to satisfy a boundary line agreement.

## RIGHTS OF WAY

None

## LEASES AND AGREEMENTS

None

## MISCELLANEOUS

#501-2008, complaint in divorce filed 5/21/08, Karl W. Krouse vs. Linda R. Krouse.

    -Granted 7/14/08

This information is provided from researching public records and should not be considered an opinion of title, title guarantee, title insurance, nor can we guarantee accuracy of the public records on which we have relied.

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0125655-00070

| RECORDING COVER PAGE | Page 1 of 6 |

Document Type: Deed
Document Date: 06/06/2007 12:40:12 PM
Document Number: 2007-002241

Transaction #:        126096
Document Page Count: 5

**RETURN TO:**
AMERICAN DREAM SETTLEMENT
100 WEST MALL PLAZA
CARNEGIE, PA 15106

**SUBMITTED BY:**
AMERICAN DREAM SETTLEMENT
100 WEST MALL PLAZA
CARNEGIE, PA 15106

**DOCUMENT REFERENCE NAME:**

| CONSIDERATION/SECURED AMT: | $75,000.00 |
|---|---|

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Deed | $41.50 |
| State RTT | $750.00 |
| Johnsonburg Area RTT | $375.00 |
| Jones Township 8 RTT | $375.00 |
| Additional Pages Fee | $2.00 |
| Additional Parcels Fee | $0.50 |
| N/C | $-0.50 |
| | |
| **Total:** | **$1,543.50** |

**Document Number: 2007-002241**
**Recorded Date: 06/06/2007**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

# *This Indenture*  *Made the* 27th *day of* April 2007

*Between*

**Gail N. Barnett and Lori L. Abplanalp**

*(hereinafter called the Grantor(s), of the one part, and*

**Karl Krouse and Betty Herzing**  *[handwritten: joint tenants w/ full right of survivorship]*

*(hereinafter called the Grantee(s), of the other part;*

*Witnesseth That the said Grantor(s) for and in consideration of the sum of Seventy Five Thousand dollars and Zero cents ($75,000.00) lawful money of the United States of America, unto them well and truly paid by the said Grantee(s), at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents does grant, bargain, sell, alien, enfeoff, release and confirm unto the said Grantee(s) their Heirs and Assigns,*

*All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:*

## *THE FIRST THEREOF:*

*BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.*

## *THE SECOND THEREOF:*

*Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.*

*Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.*

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

Being the same premises which Henry L. Halquist and Marilyn J. Halquist by deed dated July 25, 2000 and recorded September 26, 2000 in the Office of the Recorder of Deeds of Elk County in Deed Book Volume 412, Page 812, granted and conveyed unto Gail N. Barnett and Lori L. Abplanalp, the Grantors herein.

Under and subject to exceptions, reservations, covenants, conditions, easements, rights of way, restrictions and conveyances as recorded in prior instruments of record or which are visible on the premises and other instruments of record affecting title to the above-described premises.

*Together* with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of the said Grantor(s), as well at law as in equity, or otherwise howsoever, of, in, and to the same and every part thereof.

*To have and to hold* the said lot or piece of ground described with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s) their Heirs and Assigns, to and for the only proper use and behoof of the said Grantee(s), their Heirs and Assigns forever,

*And* the said Grantor(s), for themselves, their Heirs, Executors, and Administrators does by these presents, covenant, grant, promise and agree, to and with the said Grantee(s), their Heirs and Assigns, that the said Grantor(s) and their Heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s), their Heirs and Assigns, against the said Grantor(s) and their Heirs, and against all and every other Person and Persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will WARRANT and forever DEFEND.

*In Witness Whereof,* the said parties of the first part to these presents have hereunto set their hand(s) and seal(s).  Dated the day and year first above written.

*Signed, Sealed and Delivered*
**IN THE PRESENCE OF US:**

_____ Seal
Gail N. Barnett

_____ Seal
Lori L. Abplanalp

_____ Seal

_____ Seal

**Commonwealth of Pennsylvania**          )
                                                              ss:
**County of**                                      )

On this, the      27th            day of   April                   2007          , before me, a Notary Public
for the Commonwealth of Pennsylvania, the undersigned Officer, personally appeared **Gail N. Barnett** and **Lori
L. Abplanalp** known to me (satisfactorily proven) to be the person(s) whose name(s) is subscribed to the within
instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
                                                              *Notary Public*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karln F. Hesse, Notary Public
Upper St. Clair Twp., Allegheny County
My Commission Expires March 17, 2011
Member, Pennsylvania Association of Notaries

**NOTICE: - THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE
OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH
THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER
OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO
REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY
RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR
OTHER STRUCTURE ON OR IN SUCH LAND.** (This notice is set forth in the manner provided
in Section 1 of the Act of July, 17, 1957, P. L. 984)

_____
Karl Krouse

_____
Betty Herzing

# DEED.

**Gail N. Barnett and Lori L. Abplanalp**

**TO**

**Karl Krouse and Betty Herzing**

---

## MAIL TO:

**American Dream Settlements, Inc**
1700 N. Highland Road
Pittsburgh, PA 15241

The address of the above mentioned Grantee is:

4408 Wilcox Road
Wilcox, Pennsylvania 15870

*On behalf of the Grantee*

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0125656-00060

RECORDING COVER PAGE                                    Page 1 of 19

Document Type: Mortgage                          Transaction #:       126096
Document Date: 06/06/2007 12:40:13 PM            Document Page Count: 18
Document Number: 2007-002242

| RETURN TO: | SUBMITTED BY: |
|---|---|
| AMERICAN DREAM SETTLEMENT<br>100 WEST MALL PLAZA<br>CARNEGIE, PA 15106 | AMERICAN DREAM SETTLEMENT<br>100 WEST MALL PLAZA<br>CARNEGIE, PA 15106 |

DOCUMENT REFERENCE NAME:

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Mortgage | $41.50 |
| Additional Pages Fee | $28.00 |
| **Total:** | **$69.50** |

**Document Number: 2007-002242**
**Recorded Date: 06/06/2007**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania

*[Seal: RECORDER OF DEEDS OF ELK COUNTY, PENNSYLVANIA]*

*P.W. Weidenboerner* (signature)

P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Prepared By:
BONNIE BURNETT
COUNTRYWIDE HOME LOANS, INC.


2595 W. CHANDLER BLVD
MSTP6147
CHANDLER
AZ 85224
Phone: (866)628-4995
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Parcel Number:
07060151873
Premises:
4408 WILCOX ROAD
WILCOX
PA 15870

——————————————— [Space Above This Line For Recording Data] ———————————————

            102358                      0001674647470400
        [Escrow/Closing #]                 [Doc ID #]

# MORTGAGE

**PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 17

-6A(PA) (0508)      CHL (10/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291            Form 3039 1/01





K. K.
B.H.

DOC ID #: 00016746474704007
MIN 1000157-0007173573-8

DEFINITIONS
Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.
**(A) "Security Instrument"** means this document, which is dated APRIL 27, 2007
together with all Riders to this document.
**(B) "Borrower"** is
KARL KROUSE, AND BETTY HERZING

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this
Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613
**(E) "Note"** means the promissory note signed by Borrower and dated APRIL 27, 2007
The Note states that Borrower owes Lender
SEVENTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 75,000.00          ) plus interest. Borrower has promised to pay this debt in regular

-6A(PA) (0506)      CHL (10/05)          Page 2 of 17                    Form 3039 1/01



DOC ID #: 0001674647470 4007

Periodic Payments and to pay the debt in full not later than  MAY 01, 2037

(F) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) **"Escrow Items"** means those items that are described in Section 3.

(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

VMP -6A(PA) (0508)          CHL (10/05)                Page 3 of 17                        Form 3039  1/01



DOC ID #: 0001674647470 4007

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

                    COUNTY                    of                    ELK
          [Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
see attachment "a"

which currently has the address of
                    4408 WILCOX ROAD, WILCOX
                              [Street/City]
Pennsylvania     15870     ("Property Address"):
          [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(PA) (0508)     CHL (10/05)          Page 4 of 17                    Form 3039 1/01



DOC ID #: 00016746474704007

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(PA) (0508)        CHL (10/05)              Page 5 of 17                          Form 3039 1/01



DOC ID #: 0001674647470 4007

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



DOC ID #: 0001674647470 4007

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If



DOC ID #: 0001674647470400 7

Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is





DOC ID #: 0001674647470400?

completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan



DOC ID #: 0001674647470400 7

is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has · if any · with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or



DOC ID #: 0001674647470400?

repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of



DOC ID #: 00016746474704007

Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by



DOC ID #: 00016746474704007

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,



DOC ID #: 0001674647470400?

instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).



DOC ID #: 00016746474704007

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.




DOC ID #: 00016746474704007

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
KARL KROUSE                                                      -Borrower

_____ (Seal)
BETTY HERZING                                                  -Borrower

_____ (Seal)
                                                                         -Borrower

_____ (Seal)
                                                                         -Borrower

-5A(PA) (0508)      CHL (10/05)          Page 16 of 17                    Form 3039  1/01



Document Number: 2007-002242        **RECORDED ELK COUNTY, PA**        Page 18 of 19

DOC_ID #: 0001674647470 4007

**COMMONWEALTH OF PENNSYLVANIA,**     ELK     **County ss:**

On this, the ___27th___ day of ___April___ ,___2007___ , before me, the undersigned officer, personally appeared ___Karl Krouse and Betty Herzing___

_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: 3/17/11

_____
**Title of Officer** ___Notary Public___

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karin F. Hesse, Notary Public
Upper St. Clair Twp., Allegheny County
My Commission Expires March 17, 2011
Member, Pennsylvania Association of Notaries

**Certificate of Residence**
I, ___Karin F. Hess___ , do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___27th___ day of ___April___ ___2007___ .

_____
**Agent of Mortgagee**

-6A(PA) (0508)     CHL (10/05)     Page 17 of 17     Form 3039 1/01

## *Stewart Title Guaranty Company*

### EXHIBIT "A"

**File Number:** 102358

**The land referred to is described as follows:**

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

**BEGINNING** at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

**BEING** designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*



0178130-0005I

| | | |
|---|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | | |

| RECORDING COVER PAGE | Page 1 of 3 |
|---|---|
| **Document Type:** Assignment of Mortgage | **Transaction #:** 186513 |
| **Document Date:** 02/24/2010 11:06:42 AM | **Document Page Count:** 2 |
| **Document Number:** 2010-000473 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| PHELAN HALLINAN & SCHMIEG LLP<br>ONE PENN CENTER AT SUBURBAN STATION<br>1617 JFK BLVD STE 1400<br>PHILADELPHIA, PA 19103-9897 | PHELAN HALLINAN & SCHMIEG LLP<br>ONE PENN CENTER AT SUBURBAN STATION<br>1617 JFK BLVD STE 1400<br>PHILADELPHIA, PA 19103-9897 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Assignment of Mortgage | $44.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | $64.00 | |

**Document Number: 2010-000473**
**Recorded Date: 02/24/2010**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

## DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.

Document Number: 2010-000473        **RECORDED ELK COUNTY, PA**

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **"Mortgage Electronic Registration Systems, Inc."** hereinafter **"Assignor"** the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING LP** , **"Assignee,"** the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by KARL KROUSE and BETTY HERZING to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC., bearing the date 04/27/2007, in the amount of $75,000.00, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on 06/06/2007 in the County of ELK, Commonwealth of Pennsylvania, in **Mortgage Book 2007 Page 2242, MIN: 1000157-0007173573-8.**

Being Known as Premises: 4408 WILCOX ROAD, WILCOX, PA 15870-2216
Parcel No: 07-06-015-1873

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignor. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said **"Assignor"** has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 8th day of February, 2010.

Mortgage Electronic Registration Systems, Inc.

By: _Judith T. Romano_

Judith T. Romano, Assistant Secretary and Vice President

Sealed and Delivered
in the presence of us;

State of Pennsylvania       :
                            ss.
County of Philadelphia      :

On this 8th day of February, 2010, before me, the subscriber, personally appeared Judith T. Romano, who acknowledged herself to be the Assistant Secretary and Vice President of **Mortgage Electronic Registration Systems, Inc.**, and that she, as such Assistant Secretary and Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

**COMMONWEALTH OF PENNSYLVANIA**

> NOTARIAL SEAL
> EUGENE JASKIEWICZ, Notary Public
> City of Philadelphia, Phila. County
> My Commission Expires August 13, 2012

**Stamp/Seal:**

The precise address of the within named Assignee is:
**7105 CORPORATE DRIVE
PLANO, TX 75024**
By: _____
   (For Assignee)

After recording return to:
**Phelan Hallinan & Schmieg, LLP**
1617 JFK Boulevard, Suite 1400
One Penn Center Plaza
Philadelphia, PA 19103

**February 5, 2010
Document Execution
PHS # 229221**

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

THE FIRST THEREOF:

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

THE SECOND THEREOF:

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 1/2 acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

Being the same premises which Henry L. Halquist and Marilyn J. Halquist by deed dated July 25, 2000 and recorded September 26, 2000 in the Office of the Recorder of Deeds of Elk County in Deed Book Volume 412, Page 812, granted and conveyed unto Gail N. Barnett and Lori L. Abplanalp, the Grantors herein.

## RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0220493-0010E |

| RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | |
|---|---|
| Document Type: Assignment of Mortgage<br>Document Date: 05/05/2014 09:15:43 AM<br>Document Number: 2014-001072 | Transaction #:      261313<br>Document Page Count: 3 |
| **RETURN TO:**<br>M & T BANK<br>P O BOX 1288<br>BUFFALO, NY 14240 | **SUBMITTED BY:**<br>M & T BANK<br>P O BOX 1288<br>BUFFALO, NY 14240 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | | |
|---|---|---|---|
| Recording Fee: Assignment of Mortgage | $44.00 | | |
| Parcel Id Fee | $20.00 | | |
| | | | |
| Total: | $64.00 | | **Document Number: 2014-001072**<br>**Recorded Date: 05/05/2014** |

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania

P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Document Number: 2014-001072    **RECORDED ELK COUNTY, PA**    **Page 2 of 4**

Recording requested by:
BANK OF AMERICA, N.A.,
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING LP

When recorded mail to:
M&T BANK
ATTN: EMILY WITT
1 FOUNTAIN PLAZA, 4TH FLOOR
BUFFALO, NY 14203
Attn: ASSIGNMENT UNIT

## CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID# 33616746474756778
Commitment# A60745

For value received, the undersigned, BANK OF AMERICA, N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING
LP, 101 S. MARENGO AVE., 4TH FLOOR, PASADENA, CA 91101, hereby grants,
assigns and transfers to:
M & T BANK
1 FOUNTAIN PLAZA, 4TH FLOOR, BUFFALO, NY 14203

All its interest under that certain Mortgage dated 4/27/07, executed by:
KARL KROUSE and BETTY HERZING, Mortgagor as per MORTGAGE recorded as
Instrument No. 2007-002242 on 6/06/07 in Book N/A Page N/A of official
records in the County Recorder's Office of ELK County, PENNSYLVANIA.
Tax Parcel = 07-06-015-1873.
Original Mortgage $75,000.00
4408 WILCOX ROAD, WILCOX, PA 15870

   (See page attached hereto for Legal Description)
Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage. "I hereby certify that the precise address of the
within named assignee is 1 FOUNTAIN PLAZA, 4TH FLOOR, BUFFALO, NY 14203 "

X _____

Document Number: 2014-001072    **RECORDED ELK COUNTY, PA**    **Page 3 of 4**

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID# 33616746474756778
Commitment# A60745

Dated: 02/04/2014    BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME
LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
SERVICING LP

By _____
GLENDA CHAVEZ, ASSISTANT VICE PRESIDENT

State of California
County of LOS ANGELES

On 02/04/2014 before me, _____Martine F.S. Henry_____, Notary Public,
personally appeared GLENDA CHAVEZ, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
Martine F.S. Henry

Prepared by: GLENDA CHAVEZ
101 S MARENGO AVE., 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 486-3537

MARTINE F. S. HENRY
COMM. # 1917150
NOTARY PUBLIC·CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 12, 2015

DOC#33616746474756778

# LEGAL DESCRIPTION

The land referred to is described as follows:

All these certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Holquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

(2)

# RECORDER OF DEEDS
# ELK COUNTY
## *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0246982-0005V |

| RECORDING COVER PAGE | Page 1 of 10 |
|---|---|

| | |
|---|---|
| Document Type: Modification of Mortgage<br>Document Date: 07/23/2015 01:00:21 PM<br>Document Number: 2015-002189 | Transaction #:      304111<br>Document Page Count: 9 |

| **RETURN TO:**<br>SCHILLER & KNAPP<br>1412 SWEET HOME ROAD<br>SUITE 12<br>AMHERST, NY 14228 | **SUBMITTED BY:**<br>SCHILLER & KNAPP<br>1412 SWEET HOME ROAD<br>SUITE 12<br>AMHERST, NY 14228 |
|---|---|

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Modification of Mortgage | $20.50 | |
| Additional Pages Fee | $10.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | $50.50 | |

**Document Number: 2015-002189**
**Recorded Date: 07/23/2015**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT**
**FOR ANY ADDITIONAL INFORMATION.**

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Investor Loan # **FHLMC / 0435176471**

RECORD & RETURN TO:
SCHILLER & KNAPP, LLP
1412 SWEET HOME ROAD, STE 12
AMHERST, NY 14228

This document was prepared by Gabriel Foster
Asset Manager, M&T Bank
475 Crosspoint Pkwy Getzville, NY 14068

_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1]
**KARL KROUSE AND BETTY HERZING**

Lender or Servicer ("Lender"):
**M&T BANK**
47E Crosspoint Parkway, Getzville, NY 14068
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**April 27, 2007**

as recorded in Book or Liber or Instrument number  2007-002242  at page(s) N/A,  at County of ELK,
Commonwealth of PENNSYLVANIA

Loan Number:  Original principal balance $75,000.00 ; Premodification
8616      principal balance $69,361.31; Capitalized amount of
        $12,650.62.
Property Address [and Legal Description if recordation is necessary] ("Property"):
**4408 WILCOX RD, WILCOX PA 15870**

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                      Form 3157     3/09 (rev. 10/10)

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART OF HEREOF, AS EXHIBIT 'A'

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.    **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.    One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.    There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.    I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.    If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.    I have made or will make all payments required under a trial period plan.

2.    **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.    I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.    **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on first day of April, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under

KARL KROUSE;

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3157    3/09 (rev. 10/10)

a trial period plan, this modification will not take effect. The first modified payment will be due on first day of April, 2015.

A. The Maturity Date will be: November 01, 2050.

B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan The new principal balance of my Note will be $81,981.93 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of first day of March, 2015 and the first new monthly payment on the New Principal Balance will be due on first day of April, 2015. My payment schedule for the modified Loan is as follows:

| Interest Rate Change | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 | 2.000% | first day of March, 2015 | $268.07 | $367.29, may adjust periodically | $635.36, may adjust periodically | first day of April, 2015 | 60 |
| 2 | 3.000% | first day of March, 2020 | $306.54 | May adjust periodically | May adjust periodically | first day of April, 2020 | 12 |
| 3 | 3.750% | first day of March, 2021 | $336.44 | May adjust periodically | May adjust periodically | first day of April, 2021 | 356 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                          Form 3157      3/09 (rev. 10/10)

Document Number: 2015-002189        **RECORDED ELK COUNTY, PA**        Page 5 of 10

C. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

**D-1 Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D-1. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D-1.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                    Form 3157    3/09 (rev. 10/10)

estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.-

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                    Form 3157    3/09 (rev. 10/10)

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                        Form 3157      3/09 (rev. 10/10)

_____ (Seal)
KARL KROUSE

Commonwealth of PENNSYLVANIA
County of ELK

On the 11th day of MAY in the year 2015 before me, the undersigned, personally appeared
KARL KROUSE personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or
person upon behalf of which the individual acted, executed the instrument

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Grace E. Eisenman, Notary Public
Ridgway Boro, Elk County
My Commission Expires March 17, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Notary Public

My Commission expires: 3-17-2018

_____ (Seal)
BETTY HERZING

Commonwealth of PENNSYLVANIE
County of ELK

On the 11th day of MAY in the year 2015 before me, the undersigned, personally appeared
BETTY HERZING personally known to me or proved to me on the basis of satisfactory evidence to be the
individual whose name is subscribed to the within instrument and acknowledged to me that he/she
executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or
person upon behalf of which the individual acted, executed the instrument

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Grace E. Eisenman, Notary Public
Ridgway Boro, Elk County
My Commission Expires March 17, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Notary Public

My Commission expires: 3-17-18

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                          Form 3157      3/09 (rev. 10/10)

LENDER

M&T Bank        LENDER
Richard Scott Pomietlasz
Supervisor I    5-12-15

Date of Lender's Signature

Witness 1                    Tynika Bennett

Witness 2                    Denise Gatti

-------------------[Space Below This Line For Acknowledgments]-------------------

State of **New York**

County of **Erie**

On the ____12th____ day of ____MAY____ in the year ____2015____ before me, the undersigned, personally appeared ____Richard Scott Pomiz____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s)on the instrument, the individual(s),or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

GABRIEL J FOSTER
Lic. #01FO6246828
Notary Public-State of New York
Qualified in ERIE
My Commission Expires 08/15/2015

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                    Form 3157    3/09 (rev. 10/10)

Document Number: 2015-002189        RECORDED ELK COUNTY, PA                    Page 10 of 10
ALTA Loan Policy (6-17-06) - TIRBOP modifications (4-1-07)

## LOAN POLICY OF TITLE INSURANCE

## SCHEDULE A

### Exhibit A: Legal Description

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

*For Company Reference Only; Not An Insuring Provision:*

Address:        4408 Wilcox Road
                Wilcox, PA 15870

Parcel ID / Tax ID Number: 07-06-015-1873

**Loan Policy - Schedule A - Page 2 of 2**



P.O. Box 2029, Houston, TX 77252-2029

ALTA Loan Policy (6-17-06) - TIRBOP modifications (4-1-07)

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

<table>
<tr><td>

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347

</td><td>



0298908-0005Z

</td></tr>
</table>

| RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

| | |
|---|---|
| **Document Type:** Assignment of Mortgage | **Transaction #:**     372854 |
| **Document Date:** 05/25/2017 08:48:17 AM | **Document Page Count:** 2 |
| **Document Number:** 2017-001426 | |

| **RETURN TO:** | **SUBMITTED BY:** |
|---|---|
| M & T BANK | M & T BANK |
| PO BOX 1850 | PO BOX 1850 |
| BUFFALO, NY 14240-9715 | BUFFALO, NY 14240-9715 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Assignment of Mortgage | $56.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | $76.00 | |

**Document Number: 2017-001426**
**Recorded Date: 05/25/2017**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Document Number: 2017-001426      RECORDED ELK COUNTY, PA   1209 35FC   Page 2 of 3

When Recorded Return To:
VERONIKA STEEN
M&T BANK
ATTN: ASSIGNMENTS
PO BOX 1288
BUFFALO, NY  14240

## CORPORATE ASSIGNMENT OF MORTGAGE

**Elk, Pennsylvania**
**SELLER'S SERVICING #:0050818616 "KROUSE"**
**SELLER'S LENDER ID#:  P71**

**MERS #: 100015700071735738  SIS #: 1-888-679-6377**

Date of Assignment: November 8th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
Assignee: M AND T BANK

I hereby certify the precise address of the within named Assignor is 1901 E VOORHEES STREET,
SUITE C, DANVILLE, IL 61834.

I hereby certify the precise address of the within named Assignee is 1 FOUNTAIN PLAZA, 4TH FLR.,
BUFFALO, NY  14203.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C,
Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: KARL KROUSE, AND BETTY HERZING  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.
ITS SUCCESSORS AND ASSIGNS
Date of Mortgage:  04/27/2007 Recorded:  06/06/2007  in Book/Reel/Liber: N/A Page/Folio: N/A as
Instrument No.: 2007-002242  In the County of Elk, State of Pennsylvania.
4408 WILCOX ROAD, WILCOX, PA  15870 in the City of WILCOX    UPI# 07-06-015-1873

I do certify that the precise address of M AND T BANK is 1 FOUNTAIN PLAZA, 4TH FLR., BUFFALO,
NY 14203
Attested By: _____

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $75,000.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and
the full benefit of all the powers and of all the covenants and provisos therein contained, and the said
assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the
Security Instrument.

*YYS*YYSMATB*11/08/2013 08:51:51 AM* MATB01MATBA000000000000000742207* PAELK*
0050818616 PASTATE_MORT_ASSIGN_ASSN **YYSMATB*

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

   TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee
forever, subject to the terms contained in said Security Instrument.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
On November 8th, 2013

By: _____
Veronika A. Steen, Assistant Secretary

STATE OF New York
COUNTY OF Erie

On November 8th, 2013, before me, TAMMY M. HAMILTON, a Notary Public in and for Erie in the State
of New York, personally appeared Veronika A. Steen, Assistant Secretary of MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE
HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on
the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____              Tammy M. Hamilton
TAMMY M. HAMILTON                         Notary Public, State of New York
Notary Expires: 01/12/2017  #01HA6199021        Qualified in Erie County
Qualified in Erie County                      Reg #01HA6199021
                                          My Commission Expires 1/12/2017

                                          (This area for notarial seal)

*YYS*YYSMATB*11/08/2013 08:51:51 AM* MATB01MATBA000000000000000742207* PAELK*
0050818616 PASTATE_MORT_ASSIGN_ASSN **YYSMATB*

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

<table>
<tr><td>

Elk County
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347

</td><td>



0324475-0005N

</td></tr>
</table>

| RECORDING COVER PAGE | Page 1 of 9 |
|---|---|

**Document Type:** Modification of Mortgage
**Document Date:** 04/29/2019 12:12:23 PM
**Document Number:** 2019-001049

**Transaction #:**     418316
**Document Page Count:** 8

| RETURN TO: | SUBMITTED BY: |
|---|---|
| RUTH RUHL PC<br>12700 PARK CENTRAL DR<br>SUITE 850<br>DALLAS, TX 75251 | RUTH RUHL PC<br>12700 PARK CENTRAL DR<br>SUITE 850<br>DALLAS, TX 75251 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Modification of Mortgage | $20.50 |
| Additional Pages Fee | $8.00 |
| Parcel Id Fee | $20.00 |
| **Total:** | $48.50 |

**Document Number: 2019-001049**
**Recorded Date: 04/29/2019**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

Parcel ID No.: 07-06-015-1873

_____[Space Above This Line For Recording Data]_____

Loan No.: 0050818616

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this  18th   day of   January, 2019
between KARL KROUSE and BETTY HERZING

("Borrower")

and  M&T Bank

("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
April 27th, 2007      , recorded June 6th, 2007      , and recorded in Book/Liber N/A        , Page N/A
Instrument No. 2007-002242        , of the        Records of Elk        County, Pennsylvania ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
4408 WILCOX ROAD, WILCOX, Pennsylvania 15870        .

Said Security Instrument was assigned as follows:
    From Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.,                                                                                , to
BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP

by assignment dated  February 8th, 2010      , and recorded on  February 24th, 2010      of the Official Records of
Elk        County, State of Pennsylvania in Book/Liber  N/A            , Page N/A        ,
Instrument No. 2010-000473

Original Loan Amount: $75,000.00

---

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                                    **Page 1 of 6**
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Document Number: 2019-001049    **RECORDED ELK COUNTY, PA**    Page 3 of 9

Loan No.: 0050818616

From BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
to M&T Bank                                    , by assignment dated February 4th, 2014    ,
and recorded on May 5th, 2014        of the Official Records of Elk            County, State of Pennsylvania
in Liber or Book N/A        , Page N/A        , Instrument No.    2014-001072

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

        1.        As of March 1st, 2019, the amount payable under the Note and the Security Instrument (the "New
Principal Balance") is U.S. $94,634.46 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any
interest and other amounts capitalized.
        2.        $20,000.00 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and
Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the
Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is
$74,634.46. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.750%, from
February 1st, 2019. Borrower promises to make monthly payments of principal and interest of U.S. $300.42,
beginning on the 1st day of March, 2019, and continuing thereafter on the same day of each succeeding month until
the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of
3.750% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been
paid in full. The new Maturity Date will be February 1st, 2059.
        3.        Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed
under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the
Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.
        4.        If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment
first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.
        5.        If all or any part of the Property or any interest in the Property is sold or transferred (or if
Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument,
        If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice
shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower
must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of
this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand
on Borrower.
        6.        Borrower also will comply with all other covenants, agreements, and requirements of the Security
Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes,
insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to
make under the Security Instrument; however, the following terms and provisions are forever canceled, null and
void, as of the specified date in paragraph No. 1 above:
        (a)        all terms and provisions of the Note and Security Instrument (if any) providing for, implementing,
or relating to, any change or adjustment in the rate of interest payable under the Note; and

Loan No.: 0050818616

(b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

8.    Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

9.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to

Loan No.: 0050818616

Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

| | |
|---|---|
| _2-11-19_ | _Karl K_ _____(Seal) |
| Date | KARL KROUSE –Borrower |
| _2-11-19_ | _Betty Herzing_ _____(Seal) |
| Date | BETTY HERZING –Borrower |
| | _____(Seal) |
| Date | –Borrower |
| | _____(Seal) |
| Date | –Borrower |

PENNSYLVANIA LOAN MODIFICATION AGREEMENT  Page 4 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.: 0050818616

## BORROWER ACKNOWLEDGMENT

State of _PENNSYLVANIA_      §
                            §
County of _ELK_             §

On this, the 11ᵗʰ day of _FEBRUARY_ , _2019_, before me Jennifer M. Patterson
the undersigned officer, personally appeared KARL KROUSE and BETTY HERZING

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument,
and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Jennifer M. Patterson  Notary Public
Ridgway Boro, Elk County
My Commission Expires Nov 30, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Notary Signature

NOTARY PUBLIC
Title of Officer

ACKNOWLEDGMENT (PENNSYLVANIA)                                      Page 5 of 6

**Document Number: 2019-001049**      **RECORDED ELK COUNTY, PA**                    **Page 7 of 9**

Loan No.: 0050818616

M&T Bank                                              _2-13-19_
                        —Lender                                                    -Date


By: _Marie F. MacKay_                    Marie F. MacKay
                                         Banking Officer
Its: _____


## LENDER ACKNOWLEDGMENT

State of New York              §
                               §
County of Erie                 §

On this, the 13  day of  February   . 2019 before me  Gabriel Foster
the undersigned officer, personally appeared Marie F. MacKay            who acknowledged
himself/herself to be the Banking Officer          of  M&T Bank

a entity, and that he/she as such  Banking Officer             being authorized to do so, executed the
foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as
Banking Officer
          In witness whereof, I hereunto set my hand and official seal.

(Seal)         GABRIEL FOSTER
               REGISTRATION # 61FO6246828
               NOTARY PUBLIC-STATE OF NEW YORK
               NIAGARA COUNTY              Notary Signature
               MY COMMISSION EXPIRES AUGUST 15, 2019 _Notary Public_
                                          Title of Officer

"I, _Marie F MacKay_, do hereby certify that the correct address of the within named Mortgagee is
475 Crosspoint Pkwy, Getzville, New York 14068. Witness my hand this  13  day of _Feb_   ,
2019."                                     Marie F. MacKay
Signed: _Marie F. MacKay_                  Banking Officer
By: _____

ACKNOWLEDGMENT (PENNSYLVANIA)                                          Page 6 of 6

# Exhibit "A"
# Legal Description

The land referred to is described as follows:

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Holmquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet in a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

**Document Number: 2019-001049**          **RECORDED ELK COUNTY, PA**                    **Page 9 of 9**

Loan No.: 0050818616

## EXHIBIT "B"

(1) The Security Instrument executed by  KARL KROUSE and BETTY HERZING

in favor of   Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.
in the original principal sum of $ 75,000.00        , dated  April 27th, 2007      , recorded on June 6th, 2007            ,
in Liber or Book N/A          . Page  N/A          , Instrument No.  2007-002242          ,of the office of the Clerk of
Elk              County, Pennsylvania        .

Said Security Instrument was modified by a Loan Modification Agreement, recorded on July 23rd, 2015, in Liber or
Book N/A, Page N/A, Instrument No. 2015-002189, of the Official Records of Elk County, Pennsylvania.

Said Security Instrument was assigned as follows:
      From   Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.                                                                                     , to
BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
by assignment dated  February 8th, 2010      , and recorded on  February 24th, 2010    in the office of the Clerk of
Elk                County, State of Pennsylvania in Liber or Book   N/A            , Page N/A                         ,
Instrument No.  2010-000473        .

      From  BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
to M&T Bank                                                   , by assignment dated  February 4th, 2014            ,
and recorded on  May 5th, 2014        in the office of the Clerk of  Elk              County, State of
Pennsylvania in Liber or Book   N/A          , Page N/A          , Instrument No.   2014-001072            .

      From  N/A                                                                                      ,
to N/A
by assignment dated  N/A                      ,and recorded on  N/A              in the office of the Clerk of
Elk                County, State of Pennsylvania in Liber or Book   N/A            , Page  N/A            ,
Instrument No.  N/A        .

EXHIBIT "B"



# Lee A. Neureiter
### RECORDER OF DEEDS
## Elk County, Pennsylvania

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0347107-0014K |

| **RECORDING COVER PAGE** | Page 1 of 4 |
|---|---|

| | |
|---|---|
| Document Type: Partial Release<br>Document Date: 05/06/2022 11:16:40 AM<br>Document Number: 2022-001258 | Transaction #:  472100<br>Document Page Count: 3 |

| RETURN TO:<br>KML LAW GROUP P.C.<br>SUITE 5000<br>701 MARKET ST<br>PHILADELPHIA, PA 19106 | SUBMITTED BY:<br>KML LAW GROUP P.C.<br>SUITE 5000<br>701 MARKET ST<br>PHILADELPHIA, PA 19106 |
|---|---|

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Parcel Id Fee | $20.00 |
| Recording Fee: Release of Mortgage | $60.75 |
| | |
| **Total:** | **$80.75** |

**Document Number: 2022-001258**
**Recorded Date: 05/06/2022**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



*Lee A. Neureiter*

Lee A. Neureiter
Recorder of Deeds

# DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

When Recorded Return To:
KML Law Group P.C.
701 Market Street, Suite 5000 Philadelphia, PA 19106
(215) 627-1322
Assessor's/Tax ID No. Part of 07-06-015-1815
216348FC

### Partial Release of Mortgage

This Partial Release ("Partial Release"), granted this __4__ day of ___April___, 2022, by

**M & T BANK**

Name of Mortgagor: **KARL KROUSE and BETTY HERZING**

Name of Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

Date of Mortgage: **April 27, 2007**

Original Mortgage Debt: **$75,000.00**

Recorded on **June 6, 2007**, Instrument Number **2007-002242** of the Office of the Recorder of Deeds in Elk County, State of Pennsylvania

Assigned to **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** by Assignment dated February 8, 2010, recorded February 24, 2010, Instrument Number 2010-000473 of the Office of the Recorder of Deeds of Elk County, State of Pennsylvania

Further Assigned to Assigned to **M & T BANK** by Assignment dated February 4, 2014, recorded May 5, 2014, Instrument Number 2014-001072 of the Office of the Recorder of Deeds of Elk County, State of Pennsylvania

Property to be Released: **Part of Elk County, Pennsylvania. Parcel Identifier #07-06-015-1815** more particularly described as follows:

Loan: 0050818616

IN WITNESS WHEREOF, M & T Bank has caused this Partial Release to be executed by its duly authorized representative as of the day and year first above written.

WITNESS:

Jodie L. Fredlund

M & T BANK

By: Kimberly Coon
Print Name:  Kimberly Coon
Title:  Assistant Vice President

STATE OF   NEW YORK

ERIE _____, ss                          apil 4, 2022

I hereby certify that on this 4 day of April, 2022, before me, the subscriber, a notary public of the State of New York, and for the County of Erie, personally appeared Kimberly Coon known to me or satisfactorily proven to be the person(s) whose name is subscribed to the within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

Diane Chimera
Notary Public:
My Commission Expires:  6.2.2024

216348FC

Diane Chimera
Lic# 01CH6187936
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 06/02/ 2024

Loan: 0050818616

ALL that certain piece or parcel of land situate, lying and being in the Township of Jones, County of Elk and State of Pennsylvania, bounded and described as follows:

BEGINNING at a ¼" rebar set in the east right of way line of Pennsylvania State Route SR-0219; said rebar being South 08° 42' 50" East and 262.00 feet distant from the northwest corner of lands of Peter T. Biel et ux described in Deed Book 414 at Page 323, said rebar also marking the northwest corner of Parcel 1 of the Barnett Subdivision described below;

Thence, South 66° 30' 57" East 209.00 feet to a ¾" rebar set in the western lines of lands now or formerly of Bruce and Blair Anderson described at Record Book 542 at Page 143;

Thence, along the western line of said Anderson lands, South 08° 42' 50" East 13.58 feet to a ¾" rebar, said rebar marking the southeastern corner of Parcel 1 in the Barnett Subdivision described below;

Thence, South 86° 22' 12" West 177.56 feet to an iron pin set in the eastern line of Pennsylvania State Route SR-0219, marking the southwestern corner of said Parcel 1;

Thence, along the east line of Pennsylvania State Route SR-0219, North 08° 42' 50" West 109.21 feet to a rebar marking the point and place of beginning.

CONTAINING 0.249 acres and being all of Parcel 1 of the Gail N. Barnett and Lori L. Abplanalp Subdivision, as shown on map prepared by Curry & Associates dated April 5, 2007, and duly recorded in the Office of the Recorder of Deeds of Elk County.

BEING part of the same premises intended to be described in a deed from Derek B. Barnett and Erin M. Barnett to Peter T. Biel and Shirley L. Biel dated June 9, 2006, and recorded June 9, 2006, in Elk County Record Book 552 at Page 301. This deed is made in satisfaction of a Boundary Line Agreement dated June 9, 2006, between Derek B. Barnett and Erin M. Barnett and Peter T. Biel and Shirley L. Biel and Gail M. Barnett and Lori L. Abplanalp. Karl Krouse and Betty Herzing have executed this deed as successors in interest to the lands of Gail M. Barnett and Lori L. Abplanalp adjacent to the property herein described.

This parcel is part of Elk County Uniform Parcel Identifier Number is 07-06-015-1815.

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

| Elk County | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0133378-0006O |

| RECORDING COVER PAGE | Page 1 of 5 |
|---|---|
| **Document Type:** Quit Claim Deed | **Transaction #:**      136063 |
| **Document Date:** 09/26/2008 03:17:06 PM | **Document Page Count:** 4 |
| **Document Number:** 2008-003921 | |

| **RETURN TO:**<br>MEYER & WAGNER<br>115 LAFAYETTE STREET<br>ST MARYS, PA 15857 | **SUBMITTED BY:**<br>MEYER & WAGNER<br>115 LAFAYETTE STREET<br>ST MARYS, PA 15857 |
|---|---|

**DOCUMENT REFERENCE NAME:**

**CONSIDERATION/SECURED AMT:**      $0.00
**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Quit Claim Deed | $28.50 |
| Parcel Id Fee | $10.00 |
| **Total:** | $38.50 |

**Document Number: 2008-003921**
**Recorded Date: 09/26/2008**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

**NOTE: If document data differs from cover sheet, document data always supersedes.**
***COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.**

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Document Number: 2008-003921          RECORDED ELK COUNTY, PA                    Page 2 of 5 

# Quitclaim Deed

### Made this 21st day of September, 2008.

KARL KROUSE and BETTY HERZING, of Wilcox, Pennsylvania, the GRANTORS

AND

PETER T. BIEL and SHIRLEY L. BIEL, husband and wife, of Wilcox, Pennsylvania, the GRANTEES

WITNESSETH that in consideration of the sum of ONE DOLLAR to them in hand paid, receipt of which is hereby acknowledged, the Grantors do hereby RELEASE and QUITCLAIM to the Grantees, as tenants by the entireties, their heirs and assigns,

ALL that certain piece or parcel of land situate, lying and being in the Township of Jones, County of Elk and State of Pennsylvania, bounded and described as follows:

BEGINNING at a ¾" rebar set in the east right of way line of Pennsylvania State Route SR-0219; said rebar being South 08° 42' 50" East and 262.00 feet distant from the northwest corner of lands of Peter T. Biel et ux described in Deed Book 414 at Page 323, said rebar also marking the northwest corner of Parcel 1 of the Barnett Subdivision described below;

Thence, South 66° 30' 57" East 209.00 feet to a ¾" rebar set in the western lines of lands now or formerly of Bruce and Blair Anderson described at Record Book 542 at Page 143;

Thence, along the western line of said Anderson lands, South 08° 42' 50" East 13.58 feet to a ¾" rebar, said rebar marking the southeastern corner of Parcel 1 in the Barnett Subdivision described below;

Thence, South 86° 22' 12" West 177.56 feet to an iron pin set in the eastern line of Pennsylvania State Route SR-0219, marking the southwestern corner of said Parcel 1;

Thence, along the east line of Pennsylvania State Route SR-0219, North 08° 42' 50" West 109.21 feet to a rebar marking the point and place of beginning.

CONTAINING 0.249 acres and being all of Parcel 1 of the Gail N. Barnett and Lori L. Abplanalp Subdivision, as shown on map prepared by Curry & Associates dated April 5, 2007, and duly recorded in the Office of the Recorder of Deeds of Elk County.

BEING part of the same premises intended to be described in a deed from Derek B. Barnett and Erin M. Barnett to Peter T. Biel and Shirley L. Biel dated June 9, 2006, and recorded June 9, 2006, in Elk County Record Book 552 at Page 301. This deed is made in satisfaction of a Boundary Line Agreement dated June 9, 2006, between Derek B. Barnett and Erin M. Barnett and Peter T. Biel and Shirley L. Biel and Gail M. Barnett and Lori L. Abplanalp. Karl Krouse and Betty Herzing have executed this deed as successors in interest to the lands of Gail M. Barnett and Lori L. Abplanalp adjacent to the property herein described.

This deed is given for purposes of clearing a cloud on title and is therefore not subject to Pennsylvania or local realty transfer taxes.

This parcel is part of Elk County Uniform Parcel Identifier Number is 07-06-015-1815.

The Grantees herein are advised by the Grantors that the Grantors have never been placed on notice of any incurred violations of the Housing, Building, Safety or Fire Ordinance of the Township of Jones. The Grantees are instructed to contact the local Township Office if they desire further information regarding such ordinances. This statement is in conformance with Act No. 89 of June 23, 1976, P.L. 400, as outlined in 21 P.S. Section 611, et seq.

The Grantors herein have no actual knowledge of any hazardous waste as defined in Act No. 1980-97 of the Commonwealth of Pennsylvania having been or which is presently disposed of, on, or about the property described in this deed.

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND

AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.

NOTICE: The undersigned, as evidenced by the signature(s) to this notice and the acceptance and recording of this deed, (is, are) fully cognizant of the fact that the undersigned may not be obtaining the right of protection against subsidence, as to the property herein conveyed, resulting from coal mining operations and that the purchased property, herein conveyed, may be protected from damage due to mine subsidence by a private contract with the owners of the economic interest in the coal. This notice is inserted herein to comply with the Bituminous Mine Subsidence and Land Conservation Act of 1966.

*Witness the hand and seal of the Grantor*

_____ (SEAL)
Karl Krouse

_____ (SEAL)
Betty Herzing

State of Pennsylvania            :
County of Elk                    :

On this 21st, September, 2008 before me a Notary Public, the undersigned officer, appeared Karl Krouse and Betty Herzing, known to me or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Shawn T. McMahon, Notary Public
Ridgway Boro, Elk County
My Commission Expires April 26, 2011
Member, Pennsylvania Association of Notaries

Document Number: 2008-003921    **RECORDED ELK COUNTY, PA**    **Page 5 of 5**

### Certificate of Residence

I hereby certify that the precise address of the Grantee is:  4458 Wilcox Road
Wilcox, Pa. 15870



**Falcon Settlement, Inc.**
**660 Longview Road, Suite A**
**Fairmount City, PA 16224**
**(814) 365-5455**
**accounts@falconsettlement.com**

| Date | Invoice # |
|---|---|
| 1/16/2025 | 5098 |

Bill To

Quinn, Buseck, Leemhuis, Toohey & Kroto
2222 West Grandview Blvd.
Erie PA 16506-4508

| Reference # | Terms | Due Date |
|---|---|---|
| 75844.0001 | Net 30 | 2/15/2025 |

| Name | Search Type | Quantity | County | Rate | Amount |
|---|---|---|---|---|---|
| Krouse, Karl et al | Residential Current O... | | Elk | 55.00 | 55.00 |
| | Copies | 64 | | 1.00 | 64.00 |

| | Total | $119.00 |
|---|---|---|

**Please include invoice number on check or a copy of the invoice with your payment.**
**Payment is due within 30 days. Past due accounts will be subject to a late charge of $5.00 or 5% of the past due amount, whichever is greater.**

**Thank you for your business!**



**Falcon Settlement, Inc.**
660 Longview Road, Suite A
Fairmount City, PA 16224
814-365-5455 Fax 5019
www.falconsettlement.com
research@falconsettlement.com

January 16, 2025

Quinn, Buseck, Leemhuis, Toohey, Kroto, Inc.
2222 West Grandview Blvd.
Erie PA  16506-4508
814-833-2222, FAX 835-2076
MTrayer@quinnfirm.com

File #75844.0001
Re:   Karl Krouse and Betty Herzing
Jones Township #07-06-015-1873
Elk County

The Elk County Courthouse records have been searched, from 4/27/07 to 1/14/2025. The above captioned premises were searched with regard to the surface owners, but not as to any oil, gas or mineral interests, which may have been severed from the surface, nor as to any liens (municipal, current taxes, property owner fees, child support, bankruptcy, etc.) that are NOT filed in the courthouse.

The following information has been found.  Please note:

ASSESSMENT

Jones Township map #07-06-015-1873, Tax I.D. #07-009297, assessed as 418' X irr. lot, valued at $2,750, with residential improvements, valued at $24,050, totaling $26,800.

The property address is 4408 Wilcox Road (Wilcox, PA 15870).

Assessed to Karl Krouse and Betty Herzing of 4408 Wilcox Road, Wilcox, PA 15870.

SOURCE OF TITLE

#2007-002241, dated 4/27/07, recorded 6/6/07, for $75,000.00, Gail N. Barnett and Lori L. Abplanalp, (both nms), to Karl Krouse and Betty Herzing, (both nms), as joint tenants, conveying 1) tract and 2) tract, excepting the south 1 ½ acres to Loraine Morgan as in DB 245/538. (copy)

## RECORDED LIENS

Real Estate Tax:    Paid through 2024

Mortgages:    #2007-2242, dated 4/27/07, recorded 6/6/07, for $75,000.00, Karl Krouse and
Betty Herzing to MERS as nominee for Countrywide Home Loans, Inc., covering
map #07-06-015-1873.
-#2010-000473, recorded 2/24/10, assigned to BAC Home Loans
Servicing, L.P. f/k/a Countrywide Home Loans Servicing L.P.
-#2014-001072, recorded 5/5/14, assigned to M&T Bank
-#2015-002189, recorded 7/23/15, modification agreement to new
principal amount of $81,981.93
-#2017-001426, recorded 5/25/17, assigned to M&T Bank.
-#2019-001049, recorded 4/29/19, loan modification agreement
-#2022-001258, recorded 5/6/2022, release of 0.249 acres from mortgage

Judgments:    1) #658-2009, entered 6/24/09 for $9,605.35, United States of America vs. Karl
W. Krouse

2) #10026-2011, entered 6/15/11 for $407.67, Jones Township Municipal
Authority vs. Karl Krouse and Betty Herzing.
-Regarding map #07-06-015-1873

3) #246-2012, entered 3/28/12 for $1,387.07, LVNV Funding LLC vs. Betty
Herzing.

4) #895-2013, David Newman and Fred Newman vs. Karl W. Krouse d/b/a
Krouse Salvage.
-Writ of execution was filed 10/16/13 in the amount of $1,085.75 being a
Writ of execution from Jefferson Co. #746-2013

5) #528-2022, complaint in mortgage foreclosure filed 7/22/2022, M&T Bank vs.
Shirley L. Biel, Peter T. Biel, Betty Herzing a/k/a Betty C. Herzing and Karl
Krouse a/k/a Karl W. Krouse.
-Case marked discontinued and ended as to Peter T. Biel and Shirley L.
Biel on 11/10/2022
-Judgment entered 12/29/2022 for $117,670.60
-Writ of execution issued 12/29/2022
-3129 filed 12/29/2022
-Writ of execution filed 8/22/2024
-3129 filed 8/22/2024
-3129.1 filed 1/14/2025

6) #10005-2023, entered 4/12/2023 for $3,771.36, Jones Township Municipal
Authority vs. Betty Herzing a/k/a Betty C. Herzing and Karl Krause a/k/a Karl
Krause.
-Regarding map #07-06-015-1873

7) #10017-2024, entered 12/23/2024 for $3,173.88, Jones Township Municipal
Authority vs. Betty Herzing a/k/a Betty C. Herzing and Karl Krouse a/k/a Karl W.
Krouse.
-Regarding map #07-06-015-1873

Recorder UCCs:        None

## ADVERSE DEEDS

#2008-3921, dated 9/21/08, recorded 9/26/08, Karl Krouse et al to Peter T. Biel et ux, conveying 0.249
acres. (copy)
-Note: Grantors executed this deed as successors in interest to Gail M. Barnett and Lori L.
Abplanalp and made to satisfy a boundary line agreement.

## RIGHTS OF WAY

None

## LEASES AND AGREEMENTS

None

## MISCELLANEOUS

#501-2008, complaint in divorce filed 5/21/08, Karl W. Krouse vs. Linda R. Krouse.
-Granted 7/14/08

This information is provided from researching public records and should not be considered an opinion of title, title guarantee, title insurance, nor can
we guarantee accuracy of the public records on which we have relied.

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0125655-0007O

| RECORDING COVER PAGE | Page 1 of 6 |
|---|---|

| Document Type: Deed | Transaction #:    126096 |
| Document Date: 06/06/2007 12:40:12 PM | Document Page Count: 5 |
| Document Number: 2007-002241 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| AMERICAN DREAM SETTLEMENT | AMERICAN DREAM SETTLEMENT |
| 100 WEST MALL PLAZA | 100 WEST MALL PLAZA |
| CARNEGIE, PA 15106 | CARNEGIE, PA 15106 |

**DOCUMENT REFERENCE NAME:**

| CONSIDERATION/SECURED AMT: | $75,000.00 | |
|---|---|---|
| **FEES / TAXES:** | | |
| | | |
| Recording Fee: Deed | $41.50 | |
| State RTT | $750.00 | |
| Johnsonburg Area RTT | $375.00 | |
| Jones Township 8 RTT | $375.00 | **Document Number: 2007-002241** |
| Additional Pages Fee | $2.00 | **Recorded Date: 06/06/2007** |
| Additional Parcels Fee | $0.50 | |
| N/C | $-0.50 | I hereby CERTIFY that this document |
| | | is recorded in the Recorder's Office of |
| **Total:** | **$1,543.50** | Elk County, Pennsylvania |



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

# *This Indenture* Made the 27th day of April 2007

*Between*

**Gail N. Barnett and Lori L. Abplanalp**

*(hereinafter called the Grantor(s), of the one part, and*

**Karl Krouse and Betty Herzing**  [handwritten text]

*(hereinafter called the Grantee(s), of the other part;*

*Witnesseth That the said Grantor(s) for and in consideration of the sum of Seventy Five Thousand dollars and Zero cents ($75,000.00) lawful money of the United States of America, unto them well and truly paid by the said Grantee(s), at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents does grant, bargain, sell, alien, enfeoff, release and confirm unto the said Grantee(s) their Heirs and Assigns,*

*All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:*

## THE FIRST THEREOF:

*BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.*

## THE SECOND THEREOF:

*Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.*

*Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.*

*BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.*

*Being the same premises which Henry L. Halquist and Marilyn J. Halquist by deed dated July 25, 2000 and recorded September 26, 2000 in the Office of the Recorder of Deeds of Elk County in Deed Book Volume 412, Page 812, granted and conveyed unto Gail N. Barnett and Lori L. Abplanalp, the Grantors herein.*

*Under and subject to exceptions, reservations, covenants, conditions, easements, rights of way, restrictions and conveyances as recorded in prior instruments of record or which are visible on the premises and other instruments of record affecting title to the above-described premises.*

*Together* with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of the said Grantor(s), as well at law as in equity, or otherwise howsoever, of, in, and to the same and every part thereof.

*To have and to hold* the said lot or piece of ground described with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s) their Heirs and Assigns, to and for the only proper use and behoof of the said Grantee(s), their Heirs and Assigns forever,

*And* the said Grantor(s), for themselves, their Heirs, Executors, and Administrators does by these presents, covenant, grant, promise and agree, to and with the said Grantee(s), their Heirs and Assigns, that the said Grantor(s) and their Heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s), their Heirs and Assigns, against the said Grantor(s) and their Heirs, and against all and every other Person and Persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will WARRANT and forever DEFEND.

*In Witness Whereof*, the said parties of the first part to these presents have hereunto set their hand(s) and seal(s). Dated the day and year first above written.

**Signed, Sealed and Delivered**
**IN THE PRESENCE OF US:**

_____ Seal
Gail N. Barnett

_____ Seal
Lori L. Abplanalp

_____ Seal

_____ Seal

**Commonwealth of Pennsylvania**        )
                                                                ss:
**County of**                                       )

On this, the        27th            day of    April                2007        , before me, a Notary Public
for the Commonwealth of Pennsylvania, the undersigned Officer, personally appeared *Gail N. Barnett and Lori
L. Abplanalp* known to me (satisfactorily proven) to be the person(s) whose name(s) is subscribed to the within
instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
                                                        *Notary Public*

```
COMMONWEALTH OF PENNSYLVANIA
          Notarial Seal
   Karin F. Hesse, Notary Public
 Upper St. Clair Twp., Allegheny County
 My Commission Expires March 17, 2011
Member, Pennsylvania Association of Notaries
```

**NOTICE: - THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE
OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH
THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER
OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO
REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY
RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR
OTHER STRUCTURE ON OR IN SUCH LAND.** (This notice is set forth in the manner provided
in Section 1 of the Act of July, 17, 1957, P. L. 984)

_____
Karl Krouse

_____
Betty Herzing

# DEED.

### Gail N. Barnett and Lori L. Abplanalp

### TO

### Karl Krouse and Betty Herzing

## MAIL TO:

**American Dream Settlements, Inc**
1700 N. Highland Road
Pittsburgh, PA 15241

The address of the above mentioned Grantee is:

4408 Wilcox Road
Wilcox, Pennsylvania 15870

*On behalf of the Grantee*

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0125656-00060

| | RECORDING COVER PAGE | Page 1 of 19 |
|---|---|---|

**Document Type:** Mortgage
**Document Date:** 06/06/2007 12:40:13 PM
**Document Number:** 2007-002242

**Transaction #:** 126096
**Document Page Count:** 18

**RETURN TO:**
AMERICAN DREAM SETTLEMENT
100 WEST MALL PLAZA
CARNEGIE, PA 15106

**SUBMITTED BY:**
AMERICAN DREAM SETTLEMENT
100 WEST MALL PLAZA
CARNEGIE, PA 15106

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Mortgage | $41.50 |
| Additional Pages Fee | $28.00 |
| **Total:** | $69.50 |

**Document Number: 2007-002242**
**Recorded Date: 06/06/2007**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Prepared By:
BONNIE BURNETT
COUNTRYWIDE HOME LOANS, INC.


2595 W. CHANDLER BLVD
MSTP6147
CHANDLER
AZ 85224
Phone: (866)628-4995
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Parcel Number:
07060151873
Premises:
4408 WILCOX ROAD
WILCOX
PA 15870

---------------------- [Space Above This Line For Recording Data] ----------------------

102358                    0001674647470 4007
[Escrow/Closing #]              [Doc ID #]

# MORTGAGE

**PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 17

VMP®-6A(PA) (0508)     CHL (10/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291                Form 3039  1/01





K. K.
B.H

DOC ID #: 00016746474704007
MIN 1000157-0007173573-8

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 27, 2007 together with all Riders to this document.

(B) "Borrower" is

KARL KROUSE, AND BETTY HERZING

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is

COUNTRYWIDE HOME LOANS, INC.

Lender is a

CORPORATION

organized and existing under the laws of NEW YORK

Lender's address is

4500 Park Granada MSN# SVB-314

Calabasas, CA 91302-1613

(E) "Note" means the promissory note signed by Borrower and dated APRIL 27, 2007

The Note states that Borrower owes Lender

SEVENTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 75,000.00        ) plus interest. Borrower has promised to pay this debt in regular

-6A(PA) (0508)    CHL (10/05)    Page 2 of 17    Form 3039 1/01



DOC ID #: 0001674647704007

Periodic Payments and to pay the debt in full not later than MAY 01, 2037

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- ☐ Adjustable Rate Rider
- ☐ Balloon Rider
- ☐ VA Rider
- ☐ Condominium Rider
- ☐ Planned Unit Development Rider
- ☐ Biweekly Payment Rider
- ☐ Second Home Rider
- ☐ 1-4 Family Rider
- ☐ Other(s) [specify]

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

K-K.
B.H

DOC ID #: 0001674647470400?

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| COUNTY | of | ELK |
|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

see attachment "a"

which currently has the address of

4408 WILCOX ROAD, WILCOX

[Street/City]

Pennsylvania    15870    ("Property Address"):

[Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

-6A(PA) (0508)        CHL (10/05)                    Page 4 of 17                        Form 3039 1/01

DOC ID #: 00016746474704007

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.



DOC ID #: 00016746474704007

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



DOC ID #: 00016746474704007

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If

-6A(PA) (0508)      CHL (19/05)          Page 7 of 17                    Form 3039 1/01



DOC ID #: 00016746474704007

Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is



DOC ID #: 0001674647470400 7

completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan



DOC ID #: 00016746474704007

is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or



DOC ID #: 00016746474704007

repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of



DOC ID #: 00016746474704007

Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by



DOC ID #: 00016746474704007

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,



DOC ID #: 0001674647470400 7

instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

-6A(PA) (0508)          CHL (10/05)                    Page 14 of 17                        Form 3039  1/01



DOC ID #: 00016746474704007

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.



DOC ID #: 0001674647470407

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
KARL KROUSE                                          -Borrower

_____ (Seal)
BETTY HERZING                                        -Borrower

_____ (Seal)
                                                    -Borrower

_____ (Seal)
                                                    -Borrower



DOC ID #: 00016746474704007

**COMMONWEALTH OF PENNSYLVANIA,** ~~ELK~~ **County ss:**

On this, the 27th day of April, 2007, before me, the undersigned officer, personally appeared _Karl Krouse and Betty Herzing_ _____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: 3/17/11

_[signature]_

_Notary Public_
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karin F. Hesse, Notary Public
Upper St. Clair Twp., Allegheny County
My Commission Expires March 17, 2011
Member, Pennsylvania Association of Notaries

**Certificate of Residence**
I, _Karin F. Hesse_, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this 27th day of April 2007.

_[signature]_

Agent of Mortgagee

-6A(PA) (0508)      CHL (10/05)      Page 17 of 17      Form 3039 1/01

_[initials]_ B.H

## *Stewart Title Guaranty Company*

### EXHIBIT "A"

**File Number:** 102358

**The land referred to is described as follows:**

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

## RECORDER OF DEEDS
## ELK COUNTY
## *Peter Weidenboerner*

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0176130-0005i

| RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

**Document Type:** Assignment of Mortgage      **Transaction #:** 186513
**Document Date:** 02/24/2010 11:06:42 AM      **Document Page Count:** 2
**Document Number:** 2010-000473

| RETURN TO: | SUBMITTED BY: |
|---|---|
| PHELAN HALLINAN & SCHMIEG LLP | PHELAN HALLINAN & SCHMIEG LLP |
| ONE PENN CENTER AT SUBURBAN STATION | ONE PENN CENTER AT SUBURBAN STATION |
| 1617 JFK BLVD STE 1400 | 1617 JFK BLVD STE 1400 |
| PHILADELPHIA, PA 19103-9897 | PHILADELPHIA, PA 19103-9897 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $44.00 |
| Parcel Id Fee | $20.00 |
| **Total:** | $64.00 |

**Document Number: 2010-000473**
**Recorded Date: 02/24/2010**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

**NOTE: If document data differs from cover sheet, document data always supersedes.**
***COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT**
**FOR ANY ADDITIONAL INFORMATION.**

## DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **"Mortgage Electronic Registration Systems, Inc."** hereinafter **"Assignor"** the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING LP** , **"Assignee,"** the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **KARL KROUSE and BETTY HERZING** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**, bearing the date 04/27/2007, in the amount of **$75,000.00**, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on **06/06/2007** in the County of **ELK**, Commonwealth of Pennsylvania, in Mortgage Book 2007 Page 2242, MIN: 1000157-0007173573-8.

Being Known as Premises: **4408 WILCOX ROAD, WILCOX, PA 15870-2216**
Parcel No: 07-06-015-1873

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignor. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed.  Together with all Rights, Remedies and incidents thereunto belonging.  And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said **"Assignor"** has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 8th day of February, 2010.

Mortgage Electronic Registration Systems, Inc.

By: _Judith T. Romano_

Sealed and Delivered                                        Judith T. Romano, Assistant Secretary and Vice President
in the presence of us;

State of Pennsylvania          :
                               ss.
County of Philadelphia         :

On this 8th day of February, 2010, before me, the subscriber, personally appeared Judith T. Romano, who acknowledged herself to be the Assistant Secretary and Vice President of **Mortgage Electronic Registration Systems, Inc.**, and that she, as such Assistant Secretary and Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
EUGENE JASKIEWICZ, Notary Public
City of Philadelphia, Phila. County
My Commission Expires August 13, 2012

Stamp/Seal:

The precise address of the within named            After recording return to:
Assignee is:                                       Phelan Hallinan & Schmieg, LLP
**7105 CORPORATE DRIVE**                            1617 JFK Boulevard, Suite 1400           **February 5, 2010**
**PLANO, TX 75024**                                 One Penn Center Plaza                    **Document Execution**
By:_____                                 Philadelphia, PA 19103                   **PHS # 229231**
     (For Assignee)

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

THE FIRST THEREOF:

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

THE SECOND THEREOF:

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 1/2 acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

Being the same premises which Henry L. Halquist and Marilyn J. Halquist by deed dated July 25, 2000 and recorded September 26, 2000 in the Office of the Recorder of Deeds of Elk County in Deed Book Volume 412, Page 812, granted and conveyed unto Gail N. Barnett and Lori L. Abplanalp, the Grantors herein.

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

| | |
|---|---|
| Elk County<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0220493-0010E |

| RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | |
|---|---|
| **Document Type:** Assignment of Mortgage<br>**Document Date:** 05/05/2014 09:15:43 AM<br>**Document Number:** 2014-001072 | **Transaction #:**      261313<br>**Document Page Count:** 3 |
| **RETURN TO:**<br>M & T BANK<br>P O BOX 1288<br>BUFFALO, NY 14240 | **SUBMITTED BY:**<br>M & T BANK<br>P O BOX 1288<br>BUFFALO, NY 14240 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Assignment of Mortgage | $44.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | $64.00 | **Document Number: 2014-001072**<br>**Recorded Date: 05/05/2014** |

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING LP

When recorded mail to:
M&T BANK
ATTN: EMILY WITT
1 FOUNTAIN PLAZA, 4TH FLOOR
BUFFALO, NY 14203
Attn: ASSIGNMENT UNIT

---

## CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID# 33616746474756778
Commitment# A60745

For value received, the undersigned, BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING LP, 101 S. MARENGO AVE., 4TH FLOOR, PASADENA, CA 91101, hereby grants, assigns and transfers to:

M & T BANK
1 FOUNTAIN PLAZA, 4TH FLOOR, BUFFALO, NY 14203

All its interest under that certain Mortgage dated 4/27/07, executed by: KARL KROUSE and BETTY HERZING, Mortgagor as per MORTGAGE recorded as Instrument No. 2007-002242 on 6/06/07 in Book N/A Page N/A of official records in the County Recorder's Office of ELK County, PENNSYLVANIA.

Tax Parcel = 07-06-015-1873,
Original Mortgage $75,000.00
4408 WILCOX ROAD, WILCOX, PA 15870

(See page attached hereto for Legal Description)

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage. "I hereby certify that the precise address of the within named assignee is 1 FOUNTAIN PLAZA, 4TH FLOOR, BUFFALO, NY 14203 "

X _____

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID# 33616746474756778
Commitment# A60745

Dated: 02/04/2014        BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME
LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
SERVICING LP

By _____
GLENDA CHAVEZ, ASSISTANT VICE PRESIDENT

State of California
County of LOS ANGELES

On 02/04/2014 before me, _____Martine F.S. Henry_____, Notary Public,
personally appeared GLENDA CHAVEZ, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
Martine F.S. Henry

Prepared by: GLENDA CHAVEZ
101 S MARENGO AVE., 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 486-3537

MARTINE F. S. HENRY
COMM. # 1917150
NOTARY PUBLIC·CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 12, 2015

DOC#33616746474756778

# LEGAL DESCRIPTION

The land referred to is described as follows:

All these certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

THE FIRST THEREOF:

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Holquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

THE SECOND THEREOF:

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

(2)

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0248982-0005V

| RECORDING COVER PAGE | Page 1 of 10 |
|---|---|

| Document Type: Modification of Mortgage | Transaction #:      304111 |
|---|---|
| Document Date: 07/23/2015 01:00:21 PM | Document Page Count: 9 |
| Document Number: 2015-002189 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| SCHILLER & KNAPP | SCHILLER & KNAPP |
| 1412 SWEET HOME ROAD | 1412 SWEET HOME ROAD |
| SUITE 12 | SUITE 12 |
| AMHERST, NY 14228 | AMHERST, NY 14228 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Modification of Mortgage | $20.50 |
| Additional Pages Fee | $10.00 |
| Parcel Id Fee | $20.00 |
| **Total:** | $50.50 |

**Document Number: 2015-002189**
**Recorded Date: 07/23/2015**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

## DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.

Investor Loan # **FHLMC / 0435176471**

> RECORD & RETURN TO:
> SCHILLER & KNAPP, LLP
> 1412 SWEET HOME ROAD, STE 12
> AMHERST, NY 14228

This document was prepared by Gabriel Foster
Asset Manager, M&T Bank
475 Crosspoint Pkwy Getzville, NY 14068

_____[Space Above This Line For Recording Data]_____

### HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1]
**KARL KROUSE AND BETTY HERZING**

Lender or Servicer ("Lender"):
**M&T BANK**
476 Crosspoint Parkway, Getzville, NY 14068
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**April 27, 2007**

as recorded in Book or Liber or Instrument number  2007-002242  at page(s) N/A,  at County of ELK,
Commonwealth of PENNSYLVANIA

Loan Number:  Original principal balance $75,000.00; Premodification
8616  principal balance $69,381.31, Capitalized amount of
$12,650.62.
Property Address [and Legal Description if recordation is necessary] ("Property"):
**4408 WILCOX RD, WILCOX PA 15870**

_____

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT        Form 3157      3/09 (rev. 10/10)

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART OF HEREOF, AS EXHIBIT 'A'

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a trial period plan.

2.  **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on first day of April, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under

a trial period plan, this modification will not take effect. The first modified payment will be due on <u>first day of April, 2015.</u>

A.  The Maturity Date will be: <u>November 01, 2050</u>.

B.  The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan The new principal balance of my Note will be <u>$81,981.93</u> (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of <u>2.000%</u>will begin to accrue on the New Principal Balance as of <u>first day of March, 2015</u> and the first new monthly payment on the New Principal Balance will be due on <u>first day of April, 2015</u>. My payment schedule for the modified Loan is as follows:

| Interest Rate Change | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 | 2.000% | first day of March, 2015 | $268.07 | $367.29, may adjust periodically | $635.36, may adjust periodically | first day of April, 2015 | 60 |
| 2 | 3.000% | first day of March, 2020 | $306.54 | May adjust periodically | May adjust periodically | first day of April, 2020 | 12 |
| 3 | 3.750% | first day of March, 2021 | $336.44 | May adjust periodically | May adjust periodically | first day of April, 2021 | 356 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT        Form 3157    3/09 (rev. 10/10)

C.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

**D-1 Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;  (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D-1. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D-1.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable

·estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.-

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                            Form 3157    3/09 (rev. 10/10)

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.   I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.   At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.   If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

_____ (Seal)
**KARL KROUSE**


Commonwealth of PENNSYLVANIA
County of ELK

On the 11th day of MAY in the year 2015 before me, the undersigned, personally appeared KARL KROUSE personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Grace E. Eisenman, Notary Public
Ridgway Boro, Elk County
My Commission Expires March 17, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Notary Public

My Commission expires: 3-17-2018


_____ (Seal)
**BETTY HERZING**


Commonwealth of PENNSYLVANIE
County of ELK

On the 11th day of MAY in the year 2015 before me, the undersigned, personally appeared BETTY HERZING personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Grace E. Eisenman, Notary Public
Ridgway Boro, Elk County
My Commission Expires March 17, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

My Commission expires: 3-17-18


KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3157      3/09 (rev. 10/10)

LENDER

M&T Bank        LENDER
    Richard Scott Pomietlasz
        Supervisor I   *5-/2-/5*

Date of Lender's Signature

Witness 1                              Tynika Bennett

Witness 2                              Denise Gatti

---------------------[Space Below This Line For Acknowledgments]---------------------

State of New York

County of Erie

On the __12th__ day of __MAY__ in the year __2015__ before me, the
undersigned, personally appeared __Richard Scott Pomzo__ personally known to
me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s)
is(are)subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their capacity(ies), and that by his/her/their signature(s)on the instrument, the individual(s),or
the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

GABRIEL J FOSTER
Lic. #01FO6246828
Notary Public-State of New York
Qualified in ERIE
My Commission Expires  08/16/2015

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                    Form 3157    3/09 (rev. 10/10)

ALTA Loan Policy (6-17-06) - TIRBOP modifications (4-1-07)

# LOAN POLICY OF TITLE INSURANCE

## SCHEDULE A

### Exhibit A: Legal Description

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

*For Company Reference Only; Not An Insuring Provision:*

Address:        4408 Wilcox Road
                Wilcox, PA 15870

Parcel ID / Tax ID Number: 07-06-015-1873

**Loan Policy - Schedule A - Page 2 of 2**



P.O. Box 2029, Houston, TX 77252-2029

ALTA Loan Policy (6-17-06) - TIRBOP modifications (4-1-07)

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*



**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347

0298909-0005Z

| RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

| | |
|---|---|
| Document Type: Assignment of Mortgage | Transaction #:      372854 |
| Document Date: 05/25/2017 08:48:17 AM | Document Page Count: 2 |
| Document Number: 2017-001426 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| M & T BANK | M & T BANK |
| PO BOX 1850 | PO BOX 1850 |
| BUFFALO, NY 14240-9715 | BUFFALO, NY 14240-9715 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Assignment of Mortgage | $56.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | $76.00 | |

**Document Number: 2017-001426**
**Recorded Date: 05/25/2017**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania

P. W. Weidenboerner
Recorder of Deeds

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT**
**FOR ANY ADDITIONAL INFORMATION.**

## DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.

Document Number: 2017-001426     RECORDED ELK COUNTY, PA   12093FC   Page 2 of 3

When Recorded Return To:
VERONIKA STEEN
M&T BANK
ATTN: ASSIGNMENTS
PO BOX 1288
BUFFALO, NY 14240

### CORPORATE ASSIGNMENT OF MORTGAGE

Elk, Pennsylvania
SELLER'S SERVICING #:0050818616 "KROUSE"
SELLER'S LENDER ID#:  P71

MERS #: 100015700071735738 SIS #: 1-888-679-6377

Date of Assignment: November 8th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
Assignee: M AND T BANK

I hereby certify the precise address of the within named Assignor is 1901 E VOORHEES STREET,
SUITE C, DANVILLE, IL 61834.

I hereby certify the precise address of the within named Assignee is 1 FOUNTAIN PLAZA, 4TH FLR.,
BUFFALO, NY 14203.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C,
Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: KARL KROUSE, AND BETTY HERZING  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.
ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 04/27/2007 Recorded: 06/06/2007  in Book/Reel/Liber: N/A Page/Folio: N/A as
Instrument No.: 2007-002242  In the County of Elk, State of Pennsylvania.
4408 WILCOX ROAD, WILCOX, PA  15870 in the City of WILCOX     UPI # 07-06-015-1873

I do certify that the precise address of M AND T BANK is 1 FOUNTAIN PLAZA, 4TH FLR., BUFFALO,
NY 14203
Attested By: _____

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named
Assignee, the said Mortgage having an original principal sum of $75,000.00 with interest, secured
thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and
the full benefit of all the powers and of all the covenants and provisos therein contained, and the said
assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the
Security Instrument.

   *YYS*YYSMATB*11/08/2013 08:51:51 AM* MATB01MATBA000000000000000742207* PAELK*
0050818616 PASTATE_MORT_ASSIGN_ASSN **YYSMATB*

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
On November 8th, 2013

By: _____
Veronika A. Steen, Assistant Secretary

STATE OF New York
COUNTY OF Erie

On November 8th, 2013, before me, TAMMY M. HAMILTON, a Notary Public in and for Erie in the State of New York, personally appeared Veronika A. Steen, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
TAMMY M. HAMILTON
Notary Expires: 01/12/2017  #01HA6199021
Qualified in Erie County

Tammy M. Hamilton
Notary Public, State of New York
Qualified in Erie County
Reg #01HA6199021
My Commission Expires 1/12/2017

(This area for notarial seal)

*YYS*YYSMATB*11/08/2013 08:51:51 AM* MATB01MATBA00000000000000000742207* PAELK* 0050818616 PASTATE_MORT_ASSIGN_ASSN **YYSMATB*

# RECORDER OF DEEDS
# ELK COUNTY
## *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0324475-0005N |

| RECORDING COVER PAGE | Page 1 of 9 |
|---|---|

| | |
|---|---|
| **Document Type:** Modification of Mortgage<br>**Document Date:** 04/29/2019 12:12:23 PM<br>**Document Number:** 2019-001049 | **Transaction #:**      418316<br>**Document Page Count:** 8 |

| **RETURN TO:**<br>RUTH RUHL PC<br>12700 PARK CENTRAL DR<br>SUITE 850<br>DALLAS, TX 75251 | **SUBMITTED BY:**<br>RUTH RUHL PC<br>12700 PARK CENTRAL DR<br>SUITE 850<br>DALLAS, TX 75251 |
|---|---|

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Modification of Mortgage | $20.50 | |
| Additional Pages Fee | $8.00 | |
| Parcel Id Fee | $20.00 | |
| | | |
| **Total:** | $48.50 | |

**Document Number: 2019-001049**
**Recorded Date: 04/29/2019**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

**NOTE: If document data differs from cover sheet, document data always supersedes.**
***COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT**
**FOR ANY ADDITIONAL INFORMATION.**

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

**Document Number: 2019-001049**       **RECORDED ELK COUNTY, PA**              **Page 2 of 9**

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

**Prepared By:**
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

Parcel ID No.: 07-06-015-1873

_____[Space Above This Line For Recording Data]_____

Loan No.: 0050818616

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this   18th    day of   January, 2019
between KARL KROUSE and BETTY HERZING

                                                                                          ("Borrower")
and M&T Bank
                                                                                          ("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
April 27th, 2007        , recorded June 6th, 2007        , and recorded in Book/Liber N/A        , Page N/A
Instrument No. 2007-002242        , of the            Records of Elk            County, Pennsylvania ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
4408 WILCOX ROAD, WILCOX, Pennsylvania 15870        .

Said Security Instrument was assigned as follows:
        From Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.                                                                                   , to
BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP

by assignment dated  February 8th, 2010        , and recorded on  February 24th, 2010        of the Official Records of
Elk            County, State of Pennsylvania in Book/Liber  N/A            , Page N/A            .
Instrument No. 2010-000473

Original Loan Amount: $75,000.00

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                                          Page 1 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Document Number: 2019-001049          **RECORDED ELK COUNTY, PA**                    **Page 3 of 9**

Loan No.: 0050818616

From BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
to M&T Bank                    , by assignment dated February 4th, 2014              ,
and recorded on May 5th, 2014      of the Official Records of Elk           County, State of Pennsylvania
in Liber or Book N/A      , Page N/A     , Instrument No.  2014-001072

the real property described being set forth as follows:

SEE EXHIBIT "A"  ATTACHED HERETO AND MADE A PART HEREOF.

SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      As of March 1st, 2019, the amount payable under the Note and the Security Instrument (the "New Principal Balance") is U.S. $94,634.46 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.      $20,000.00 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $74,634.46. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.750%, from February 1st, 2019. Borrower promises to make monthly payments of principal and interest of U.S. $300.42, beginning on the 1st day of March, 2019, and continuing thereafter on the same day of each succeeding month until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of 3.750% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The new Maturity Date will be February 1st, 2059.

3.      Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

4.      If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

5.      If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

6.      Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the specified date in paragraph No. 1 above:

(a)      all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

Loan No.: 0050818616

    (b)    all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

    7.    Borrower understands and agrees that:

    (a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

    (e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

    (f)    Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

    Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

    By checking this box, Borrower also consents to being contacted by text messaging☐.

    8.    Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

    9.    If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

    10.    Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to

Document Number: 2019-001049        **RECORDED ELK COUNTY, PA**                Page 5 of 9

Loan No.: 0050818616

Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

| | | |
|---|---|---|
| *2-11-19* | *Karl K* | (Seal) |
| Date | KARL KROUSE | –Borrower |
| *2-11-19* | *Betty Herzing* | (Seal) |
| Date | BETTY HERZING | –Borrower |
| | | (Seal) |
| Date | | –Borrower |
| | | (Seal) |
| Date | | –Borrower |

**PENNSYLVANIA LOAN MODIFICATION AGREEMENT**
(FNMA Modified Form 3179 1/01 (rev. 04/14))                                    Page 4 of 6

**Document Number: 2019-001049**          **RECORDED ELK COUNTY, PA**                    **Page 6 of 9**

Loan No.: 0050818616

## BORROWER ACKNOWLEDGMENT

State of ~~PENNSYLVANIA~~            §
                                    §
County of ~~ELK~~                   §

On this, the 11ᵗʰ day of ~~FEBRUARY~~        , 20ᴬ, before me Jennifer M. Patterson the undersigned officer, personally appeared KARL KROUSE and BETTY HERZING

known to me (or satisfactorily proven) to be the person whose name(s) is/are subscribed to the within instrument, and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

(Seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Jennifer M. Patterson Notary Public
Ridgway Boro, Elk County
My Commission Expires Nov 30, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____
Notary Signature

NOTARY PUBLIC
_____
Title of Officer

**ACKNOWLEDGMENT (PENNSYLVANIA)**                                              **Page 5 of 6**

Loan No.: 0050818616

__M&T Bank__ _____          __2-13-19_____

              –Lender                                           -Date

By: _____          Marie F. MacKay
                                     Banking Officer
Its: _____


## LENDER ACKNOWLEDGMENT

State of  New York          §
                            §
County of  Erie             §

    On this, the  13  day of   February   ,  2019 before me   Gabriel Foster
the undersigned officer, personally appeared  Marie F. MacKay          who acknowledged
himself/herself to be the  Banking Officer          of   M&T Bank

a entity, and that he/she as such   Banking Officer          being authorized to do so, executed the
foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as
Banking Officer
    In witness whereof, I hereunto set my hand and official seal.

(Seal)          GABRIEL FOSTER
                REGISTRATION # 61FO6246528
                NOTARY PUBLIC-STATE OF NEW YORK      _____
                NIAGARA COUNTY                        Notary Signature
                MY COMMISSION EXPIRES AUGUST 15, 2019    NOTARY PUBLIC
                                                       Title of Officer

"I, Marie F MacKay, do hereby certify that the correct address of the within named Mortgagee is
475 Crosspoint Pkwy, Getzville, New York 14068. Witness my hand this  13  day of  Feb  ,
2019."
Signed: _____          Marie F. MacKay
By:                                       Banking Officer

# Exhibit "A"
# Legal Description

The land referred to is described as follows:

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

THE FIRST THEREOF:

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

THE SECOND THEREOF:

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

**Document Number: 2019-001049        RECORDED ELK COUNTY, PA**                    **Page 9 of 9**

Loan No.: 0050818616

### EXHIBIT "B"

(1) The Security Instrument executed by  KARL KROUSE and BETTY HERZING

in favor of   Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.
in the original principal sum of $ 75,000.00        , dated  April 27th, 2007       , recorded on June 6th, 2007          ,
in Liber or Book N/A          . Page  N/A          , Instrument No. 2007-002242          ,of the office of the Clerk of
Elk            County, Pennsylvania          .

Said Security Instrument was modified by a Loan Modification Agreement, recorded on July 23rd, 2015, in Liber or
Book N/A, Page N/A, Instrument No. 2015-002189, of the Official Records of Elk County, Pennsylvania.

Said Security Instrument was assigned as follows:
        From   Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.                                                                                      , to
BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
by assignment dated  February 8th, 2010        , and recorded on  February 24th, 2010     in the office of the Clerk of
Elk                County, State of Pennsylvania in Liber or Book  N/A              , Page N/A                   .
Instrument No.  2010-000473           .

        From  BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP                             .
to M&T Bank                                           , by assignment dated  February 4th, 2014          .
and recorded on  May 5th, 2014        in the office of the Clerk of  Elk              County, State of
Pennsylvania in Liber or Book  N/A          , Page N/A          , Instrument No.  2014-001072    .

        From  N/A                                                                                      .
to N/A
by assignment dated  N/A                      , and recorded on  N/A                in the office of the Clerk of
Elk                County, State of Pennsylvania in Liber or Book  N/A              , Page  N/A            .
Instrument No.  N/A

EXHIBIT "B"



# Lee A. Neureiter
### RECORDER OF DEEDS
## Elk County, Pennsylvania

| Elk County<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0347107-0014K |
|---|---|

| **RECORDING COVER PAGE** | Page 1 of 4 |
|---|---|

Document Type: Partial Release

Document Date: 05/06/2022 11:16:40 AM

Document Number: 2022-001258

Transaction #:      472100

Document Page Count: 3

| RETURN TO:<br>KML LAW GROUP P.C.<br>SUITE 5000<br>701 MARKET ST<br>PHILADELPHIA, PA 19106 | SUBMITTED BY:<br>KML LAW GROUP P.C.<br>SUITE 5000<br>701 MARKET ST<br>PHILADELPHIA, PA 19106 |
|---|---|

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| Parcel Id Fee | $20.00 |
|---|---|
| Recording Fee: Release of Mortgage | $60.75 |
| **Total:** | $80.75 |

**Document Number: 2022-001258**
**Recorded Date: 05/06/2022**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



*Lee A. Neureiter*

Lee A. Neureiter
Recorder of Deeds

# DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT
NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

When Recorded Return To:
KML Law Group P.C.
701 Market Street, Suite 5000 Philadelphia, PA 19106
(215) 627-1322
Assessor's/Tax ID No. Part of 07-06-015-1815
216348FC

## Partial Release of Mortgage

This Partial Release ("Partial Release"), granted this __4__ day of ____April____, 2022, by

**M & T BANK**

Name of Mortgagor: **KARL KROUSE and BETTY HERZING**

Name of Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

Date of Mortgage: **April 27, 2007**

Original Mortgage Debt: **$75,000.00**

Recorded on **June 6, 2007**, Instrument Number **2007-002242** of the Office of the Recorder of Deeds in Elk County, State of Pennsylvania

Assigned to **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** by Assignment dated February 8, 2010, recorded February 24, 2010, Instrument Number 2010-000473 of the Office of the Recorder of Deeds of Elk County, State of Pennsylvania

Further Assigned to Assigned to **M & T BANK** by Assignment dated February 4, 2014, recorded May 5, 2014, Instrument Number 2014-001072 of the Office of the Recorder of Deeds of Elk County, State of Pennsylvania

Property to be Released: **Part of Elk County, Pennsylvania. Parcel Identifier #07-06-015-1815** more particularly described as follows:

Loan: 0050818616

IN WITNESS WHEREOF, M & T Bank has caused this Partial Release to be executed by its
duly authorized representative as of the day and year first above written.

WITNESS:

_Jodie L. Fredlund_
Jodie L. Fredlund

M & T BANK

By: _Kimberly Coon_
Print Name:   Kimberly Coon
Title:   Assistant Vice President

STATE OF   NEW YORK

ERIE _____ , ss                                       april  4 . 2022

I hereby certify that on this   4   day of  April   , 2022, before me, the subscriber, a notary
public of the State of  New York   , and for the County of  Erie   , personally
appeared  Kimberly Coon   known to me or satisfactorily
proven to be the person(s) whose name is subscribed to the within instrument and acknowledge
that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

_Diane Chimera_
Notary Public:
My Commission Expires:  6. 2. 2024

216348FC

Diane Chimera
Lic# 01CH6187936
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 06/02/ 2024

Loan: 0050818616

ALL that certain piece or parcel of land situate, lying and being in the Township of Jones, County of Elk and State of Pennsylvania, bounded and described as follows:

BEGINNING at a ¾" rebar set in the east right of way line of Pennsylvania State Route SR-0219; said rebar being South 08° 42' 50" East and 262.00 feet distant from the northwest corner of lands of Peter T. Biel et ux described in Deed Book 414 at Page 323, said rebar also marking the northwest corner of Parcel 1 of the Barnett Subdivision described below;

Thence, South 66° 30' 57" East 209.00 feet to a ¾" rebar set in the western lines of lands now or formerly of Bruce and Blair Anderson described at Record Book 542 at Page 143;

Thence, along the western line of said Anderson lands, South 08° 42' 50" East 13.58 feet to a ¾" rebar, said rebar marking the southeastern corner of Parcel 1 in the Barnett Subdivision described below;

Thence, South 86° 22' 12" West 177.56 feet to an iron pin set in the eastern line of Pennsylvania State Route SR-0219, marking the southwestern corner of said Parcel 1;

Thence, along the east line of Pennsylvania State Route SR-0219, North 08° 42' 50" West 109.21 feet to a rebar marking the point and place of beginning.

CONTAINING 0.249 acres and being all of Parcel 1 of the Gail N. Barnett and Lori L. Abplanalp Subdivision, as shown on map prepared by Curry & Associates dated April 5, 2007, and duly recorded in the Office of the Recorder of Deeds of Elk County.

BEING part of the same premises intended to be described in a deed from Derek B. Barnett and Erin M. Barnett to Peter T. Biel and Shirley L. Biel dated June 9, 2006, and recorded June 9, 2006, in Elk County Record Book 552 at Page 301. This deed is made in satisfaction of a Boundary Line Agreement dated June 9, 2006, between Derek B. Barnett and Erin M. Barnett and Peter T. Biel and Shirley L. Biel and Gail M. Barnett and Lori L. Abplanalp. Karl Krouse and Betty Herzing have executed this deed as successors in interest to the lands of Gail M. Barnett and Lori L. Abplanalp adjacent to the property herein described.

This parcel is part of Elk County Uniform Parcel Identifier Number is 07-06-015-1815.

# RECORDER OF DEEDS
# ELK COUNTY
## *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0133378-00060 |

| **RECORDING COVER PAGE** | **Page 1 of 5** |
|---|---|
| **Document Type:** Quit Claim Deed | **Transaction #:**    136063 |
| **Document Date:** 09/26/2008 03:17:06 PM | **Document Page Count:** 4 |
| **Document Number:** 2008-003921 | |

| **RETURN TO:** | **SUBMITTED BY:** |
|---|---|
| MEYER & WAGNER<br>115 LAFAYETTE STREET<br>ST MARYS, PA 15857 | MEYER & WAGNER<br>115 LAFAYETTE STREET<br>ST MARYS, PA 15857 |

**DOCUMENT REFERENCE NAME:**

| | |
|---|---|
| **CONSIDERATION/SECURED AMT:**    $0.00<br>**FEES / TAXES:** | |
| Recording Fee: Quit Claim Deed    $28.50<br>Parcel Id Fee    $10.00 | **Document Number: 2008-003921**<br>**Recorded Date: 09/26/2008** |
| **Total:**    $38.50 | I hereby CERTIFY that this document is recorded in the Recorder's Office of Elk County, Pennsylvania |
| |  |
| | P. W. Weidenboerner<br>Recorder of Deeds |

**NOTE: If document data differs from cover sheet, document data always supersedes.**
**\*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT**
**FOR ANY ADDITIONAL INFORMATION.**

## DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.

# Quitclaim Deed

### Made this 21st day of September, 2008.

KARL KROUSE and BETTY HERZING, of Wilcox, Pennsylvania, the GRANTORS

AND

PETER T. BIEL and SHIRLEY L. BIEL, husband and wife, of Wilcox, Pennsylvania, the GRANTEES

WITNESSETH that in consideration of the sum of ONE DOLLAR to them in hand paid, receipt of which is hereby acknowledged, the Grantors do hereby RELEASE and QUITCLAIM to the Grantees, as tenants by the entireties, their heirs and assigns,

ALL that certain piece or parcel of land situate, lying and being in the Township of Jones, County of Elk and State of Pennsylvania, bounded and described as follows:

BEGINNING at a ¾" rebar set in the east right of way line of Pennsylvania State Route SR-0219; said rebar being South 08° 42' 50" East and 262.00 feet distant from the northwest corner of lands of Peter T. Biel et ux described in Deed Book 414 at Page 323, said rebar also marking the northwest corner of Parcel 1 of the Barnett Subdivision described below;

Thence, South 66° 30' 57" East 209.00 feet to a ¾" rebar set in the western lines of lands now or formerly of Bruce and Blair Anderson described at Record Book 542 at Page 143;

Thence, along the western line of said Anderson lands, South 08° 42' 50" East 13.58 feet to a ¾" rebar, said rebar marking the southeastern corner of Parcel 1 in the Barnett Subdivision described below;

Thence, South 86° 22' 12" West 177.56 feet to an iron pin set in the eastern line of Pennsylvania State Route SR-0219, marking the southwestern corner of said Parcel 1;

Thence, along the east line of Pennsylvania State Route SR-0219, North 08° 42' 50" West 109.21 feet to a rebar marking the point and place of beginning.

CONTAINING 0.249 acres and being all of Parcel 1 of the Gail N. Barnett and Lori L. Abplanalp Subdivision, as shown on map prepared by Curry & Associates dated April 5, 2007, and duly recorded in the Office of the Recorder of Deeds of Elk County.

BEING part of the same premises intended to be described in a deed from Derek B. Barnett and Erin M. Barnett to Peter T. Biel and Shirley L. Biel dated June 9, 2006, and recorded June 9, 2006, in Elk County Record Book 552 at Page 301. This deed is made in satisfaction of a Boundary Line Agreement dated June 9, 2006, between Derek B. Barnett and Erin M. Barnett and Peter T. Biel and Shirley L. Biel and Gail M. Barnett and Lori L. Abplanalp. Karl Krouse and Betty Herzing have executed this deed as successors in interest to the lands of Gail M. Barnett and Lori L. Abplanalp adjacent to the property herein described.

This deed is given for purposes of clearing a cloud on title and is therefore not subject to Pennsylvania or local realty transfer taxes.

This parcel is part of Elk County Uniform Parcel Identifier Number is 07-06-015-1815.

The Grantees herein are advised by the Grantors that the Grantors have never been placed on notice of any incurred violations of the Housing, Building, Safety or Fire Ordinance of the Township of Jones. The Grantees are instructed to contact the local Township Office if they desire further information regarding such ordinances. This statement is in conformance with Act No. 89 of June 23, 1976, P.L. 400, as outlined in 21 P.S. Section 611, et seq.

The Grantors herein have no actual knowledge of any hazardous waste as defined  in Act No. 1980-97 of the Commonwealth of Pennsylvania having been or which is presently disposed of, on, or about the property described in this deed.

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND

AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.

NOTICE: The undersigned, as evidenced by the signature(s) to this notice and the acceptance and recording of this deed, (is, are) fully cognizant of the fact that the undersigned may not be obtaining the right of protection against subsidence, as to the property herein conveyed, resulting from coal mining operations and that the purchased property, herein conveyed, may be protected from damage due to mine subsidence by a private contract with the owners of the economic interest in the coal. This notice is inserted herein to comply with the Bituminous Mine Subsidence and Land Conservation Act of 1966.

*Witness the hand and seal of the Grantor*

_____ (SEAL)
Karl Krouse

_____ (SEAL)
Betty Herzing

State of Pennsylvania    :
County of Elk    :

On this 21st, September, 2008 before me a Notary Public, the undersigned officer, appeared Karl Krouse and Betty Herzing, known to me or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Shawn T. McMahon, Notary Public
Ridgway Boro, Elk County
My Commission Expires April 26, 2011
Member, Pennsylvania Association of Notaries

Document Number: 2008-003921          **RECORDED ELK COUNTY, PA**                    **Page 5 of 5**

Certificate of Residence

I hereby certify that the precise address of the Grantee is:  4458 Wilcox Road
Wilcox, Pa. 15870



**Falcon Settlement, Inc.**
**660 Longview Road, Suite A**
**Fairmount City, PA 16224**
**(814) 365-5455**
**accounts@falconsettlement.com**

| Date | Invoice # |
|---|---|
| 1/16/2025 | 5098 |

Bill To

Quinn, Buseck, Leemhuis, Toohey & Kroto
2222 West Grandview Blvd.
Erie PA 16506-4508

| Reference # | Terms | Due Date |
|---|---|---|
| 75844.0001 | Net 30 | 2/15/2025 |

| Name | Search Type | Quantity | County | Rate | Amount |
|---|---|---|---|---|---|
| Krouse, Karl et al | Residential Current O...<br>Copies | 64 | Elk | 55.00<br>1.00 | 55.00<br>64.00 |

| | Total | $119.00 |
|---|---|---|

**Please include invoice number on check or a copy of the invoice with your payment.**
**Payment is due within 30 days. Past due accounts will be subject to a late charge of $5.00 or 5% of the**
**past due amount, whichever is greater.**

**Thank you for your business!**



**Falcon Settlement, Inc.**
660 Longview Road, Suite A
Fairmount City, PA 16224
814-365-5455 Fax 5019
www.falconsettlement.com
research@falconsettlement.com

January 16, 2025

Quinn, Buseck, Leemhuis, Toohey, Kroto, Inc.
2222 West Grandview Blvd.
Erie PA 16506-4508
814-833-2222, FAX 835-2076
MTrayer@quinnfirm.com

File #75844.0001
Re:    Karl Krouse and Betty Herzing
Jones Township #07-06-015-1873
Elk County

The Elk County Courthouse records have been searched, from 4/27/07 to 1/14/2025. The above captioned premises were searched with regard to the surface owners, but not as to any oil, gas or mineral interests, which may have been severed from the surface, nor as to any liens (municipal, current taxes, property owner fees, child support, bankruptcy, etc.) that are NOT filed in the courthouse.

The following information has been found. Please note:

## ASSESSMENT

Jones Township map #07-06-015-1873, Tax I.D. #07-009297, assessed as 418' X irr. lot, valued at $2,750, with residential improvements, valued at $24,050, totaling $26,800.
The property address is 4408 Wilcox Road (Wilcox, PA 15870).
Assessed to Karl Krouse and Betty Herzing of 4408 Wilcox Road, Wilcox, PA 15870.

## SOURCE OF TITLE

#2007-002241, dated 4/27/07, recorded 6/6/07, for $75,000.00, Gail N. Barnett and Lori L. Abplanalp, (both nms), to Karl Krouse and Betty Herzing, (both nms), as joint tenants, conveying 1) tract and 2) tract, excepting the south 1 ½ acres to Loraine Morgan as in DB 245/538. (copy)

## RECORDED LIENS

Real Estate Tax:   Paid through 2024

Mortgages:   #2007-2242, dated 4/27/07, recorded 6/6/07, for $75,000.00, Karl Krouse and
Betty Herzing to MERS as nominee for Countrywide Home Loans, Inc., covering
map #07-06-015-1873.
   -#2010-000473, recorded 2/24/10, assigned to BAC Home Loans
   Servicing, L.P. f/k/a Countrywide Home Loans Servicing L.P.
   -#2014-001072, recorded 5/5/14, assigned to M&T Bank
   -#2015-002189, recorded 7/23/15, modification agreement to new
   principal amount of $81,981.93
   -#2017-001426, recorded 5/25/17, assigned to M&T Bank.
   -#2019-001049, recorded 4/29/19, loan modification agreement
   -#2022-001258, recorded 5/6/2022, release of 0.249 acres from mortgage

Judgments:   1) #658-2009, entered 6/24/09 for $9,605.35, United States of America vs. Karl
W. Krouse

2) #10026-2011, entered 6/15/11 for $407.67, Jones Township Municipal
Authority vs. Karl Krouse and Betty Herzing.
   -Regarding map #07-06-015-1873

3) #246-2012, entered 3/28/12 for $1,387.07, LVNV Funding LLC vs. Betty
Herzing.

4) #895-2013, David Newman and Fred Newman vs. Karl W. Krouse d/b/a
Krouse Salvage.
   -Writ of execution was filed 10/16/13 in the amount of $1,085.75 being a
   Writ of execution from Jefferson Co. #746-2013

5) #528-2022, complaint in mortgage foreclosure filed 7/22/2022, M&T Bank vs.
Shirley L. Biel, Peter T. Biel, Betty Herzing a/k/a Betty C. Herzing and Karl
Krouse a/k/a Karl W. Krouse.
   -Case marked discontinued and ended as to Peter T. Biel and Shirley L.
   Biel on 11/10/2022
   -Judgment entered 12/29/2022 for $117,670.60
   -Writ of execution issued 12/29/2022
   -3129 filed 12/29/2022
   -Writ of execution filed 8/22/2024
   -3129 filed 8/22/2024
   -3129.1 filed 1/14/2025

6) #10005-2023, entered 4/12/2023 for $3,771.36, Jones Township Municipal
Authority vs. Betty Herzing a/k/a Betty C. Herzing and Karl Krause a/k/a Karl
Krause.
   -Regarding map #07-06-015-1873

7) #10017-2024, entered 12/23/2024 for $3,173.88, Jones Township Municipal
Authority vs. Betty Herzing a/k/a Betty C. Herzing and Karl Krouse a/k/a Karl W.
Krouse.
     -Regarding map #07-06-015-1873

Recorder UCCs:     None

## ADVERSE DEEDS

#2008-3921, dated 9/21/08, recorded 9/26/08, Karl Krouse et al to Peter T. Biel et ux, conveying 0.249
acres. (copy)
     -Note: Grantors executed this deed as successors in interest to Gail M. Barnett and Lori L.
Abplanalp and made to satisfy a boundary line agreement.

## RIGHTS OF WAY

None

## LEASES AND AGREEMENTS

None

## MISCELLANEOUS

#501-2008, complaint in divorce filed 5/21/08, Karl W. Krouse vs. Linda R. Krouse.
     -Granted 7/14/08

This information is provided from researching public records and should not be considered an opinion of title, title guarantee, title insurance, nor can
we guarantee accuracy of the public records on which we have relied.

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0125655-0007O

| RECORDING COVER PAGE | Page 1 of 6 |
|---|---|

| | |
|---|---|
| Document Type: Deed | Transaction #:     126096 |
| Document Date: 06/06/2007 12:40:12 PM | Document Page Count: 5 |
| Document Number: 2007-002241 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| AMERICAN DREAM SETTLEMENT | AMERICAN DREAM SETTLEMENT |
| 100 WEST MALL PLAZA | 100 WEST MALL PLAZA |
| CARNEGIE, PA 15106 | CARNEGIE, PA 15106 |

**DOCUMENT REFERENCE NAME:**

| CONSIDERATION/SECURED AMT: | $75,000.00 | |
|---|---|---|
| FEES / TAXES: | | |
| | | |
| Recording Fee: Deed | $41.50 | |
| State RTT | $750.00 | |
| Johnsonburg Area RTT | $375.00 | |
| Jones Township 8 RTT | $375.00 | |
| Additional Pages Fee | $2.00 | |
| Additional Parcels Fee | $0.50 | |
| N/C | $-0.50 | |
| | | |
| Total: | $1,543.50 | |

**Document Number: 2007-002241**
**Recorded Date: 06/06/2007**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

# *This Indenture* Made the 27th day of April 2007

*Between*

**Gail N. Barnett and Lori L. Abplanalp**

*(hereinafter called the Grantor(s), of the one part, and*

**Karl Krouse and Betty Herzing**  *[handwritten] Joint tenants w/ full right of survivorship*

*(hereinafter called the Grantee(s), of the other part;*

***Witnesseth** That the said Grantor(s) for and in consideration of the sum of **Seventy Five Thousand dollars and Zero cents ($75,000.00)** lawful money of the United States of America, unto them well and truly paid by the said Grantee(s), at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have granted, bargained, sold, aliened, enfeoffed, released and confirmed, and by these presents does grant, bargain, sell, alien, enfeoff, release and confirm unto the said Grantee(s) their Heirs and Assigns,*

*All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:*

## THE FIRST THEREOF:

*BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.*

## THE SECOND THEREOF:

*Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.*

*Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.*

*BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.*

*Being the same premises which Henry L. Halquist and Marilyn J. Halquist by deed dated July 25, 2000 and recorded September 26, 2000 in the Office of the Recorder of Deeds of Elk County in Deed Book Volume 412, Page 812, granted and conveyed unto Gail N. Barnett and Lori L. Abplanalp, the Grantors herein.*

*Under and subject to exceptions, reservations, covenants, conditions, easements, rights of way, restrictions and conveyances as recorded in prior instruments of record or which are visible on the premises and other instruments of record affecting title to the above-described premises.*

*Together* with all and singular the buildings and improvements, ways, streets, alleys, driveways, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances, whatsoever unto the hereby granted premises belonging, or in any wise appertaining, and the reversions and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, property, claim and demand whatsoever, of the said Grantor(s), as well at law as in equity, or otherwise howsoever, of, in, and to the same and every part thereof.

*To have and to hold* the said lot or piece of ground described with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s) their Heirs and Assigns, to and for the only proper use and behoof of the said Grantee(s), their Heirs and Assigns forever,

And the said Grantor(s), for themselves, their Heirs, Executors, and Administrators does by these presents, covenant, grant, promise and agree, to and with the said Grantee(s), their Heirs and Assigns, that the said Grantor(s) and their Heirs, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee(s), their Heirs and Assigns, against the said Grantor(s) and their Heirs, and against all and every other Person and Persons whomsoever lawfully claiming or to claim the same or any part thereof, by, from or under him, her, it, or any of them, shall and will WARRANT and forever DEFEND.

*In Witness Whereof,* the said parties of the first part to these presents have hereunto set their hand(s) and seal(s).  Dated the day and year first above written.

**Signed, Sealed and Delivered
IN THE PRESENCE OF US:**

_____ *Seal*
Gail N. Barnett

_____ *Seal*
Lori L. Abplanalp

_____ *Seal*

_____ *Seal*

Document Number: 2007-002241          **RECORDED ELK COUNTY, PA**                    Page 5 of 6

**Commonwealth of Pennsylvania**       )
                                                              ss:
**County of**                                      )

On this, the       27th               day of   April                    2007          , before me, a Notary Public
for the Commonwealth of Pennsylvania, the undersigned Officer, personally appeared **Gail N. Barnett and Lori L. Abplanalp** known to me (satisfactorily proven) to be the person(s) whose name(s) is subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Notary Public*

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karin F. Hesse, Notary Public
Upper St. Clair Twp., Allegheny County
My Commission Expires March 17, 2011
Member, Pennsylvania Association of Notaries

**NOTICE: - THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND.** (This notice is set forth in the manner provided in Section 1 of the Act of July, 17, 1957, P. L. 984)

Karl Krouse

Betty Herzing

# DEED.

Gail N. Barnett and Lori L. Abplanalp

TO

Karl Krouse and Betty Herzing

## MAIL TO:

**American Dream Settlements, Inc**
1700 N. Highland Road
Pittsburgh, PA 15241

The address of the above mentioned Grantee is:

4408 Wilcox Road
Wilcox, Pennsylvania 15870

_On behalf of the Grantee_

**Elk County**
240 Main Street
P.O. Box 314
Ridgway, PA 15853
Phone: (814) 776-5347



0125656-00060

| RECORDING COVER PAGE | Page 1 of 19 |
|---|---|

| | |
|---|---|
| Document Type: Mortgage | Transaction #:   126096 |
| Document Date: 06/06/2007 12:40:13 PM | Document Page Count: 18 |
| Document Number: 2007-002242 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| AMERICAN DREAM SETTLEMENT | AMERICAN DREAM SETTLEMENT |
| 100 WEST MALL PLAZA | 100 WEST MALL PLAZA |
| CARNEGIE, PA 15106 | CARNEGIE, PA 15106 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Mortgage | $41.50 |
| Additional Pages Fee | $28.00 |
| **Total:** | $69.50 |

**Document Number: 2007-002242**
**Recorded Date: 06/06/2007**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Prepared By:
BONNIE BURNETT
COUNTRYWIDE HOME LOANS, INC.


2595 W. CHANDLER BLVD
MSTP6147
CHANDLER
AZ 85224
Phone: (866)628-4995
After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.


MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Parcel Number:
07060151873
Premises:
4408 WILCOX ROAD
WILCOX
PA 15870

——————————————————— [Space Above This Line For Recording Data] ———————————————————

                    102358                    0001674647470 4007
              [Escrow/Closing #]                    [Doc ID #]

# MORTGAGE

**PENNSYLVANIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 17

VMP-6A(PA) (0508)        CHL (10/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291              Form 3039  1/01





*23991*                                    *16746474700000100 6A*

DOC ID #: 00016746474704007
MIN 1000157-0007173573-8

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 27, 2007 ,
together with all Riders to this document.

(B) "Borrower" is
KARL KROUSE, AND BETTY HERZING

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(D) "Lender" is
COUNTRYWIDE HOME LOANS, INC.

Lender is a
CORPORATION

organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314
Calabasas, CA 91302-1613

(E) "Note" means the promissory note signed by Borrower and dated APRIL 27, 2007 .
The Note states that Borrower owes Lender
SEVENTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 75,000.00        ) plus interest. Borrower has promised to pay this debt in regular

-6A(PA) (0506)       CHL (10/05)              Page 2 of 17                         Form 3039 1/01

DOC ID #: 0001674647704007

Periodic Payments and to pay the debt in full not later than  MAY 01, 2037 .

(F) "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."

(G) "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider
- [ ] 1-4 Family Rider
- [ ] Other(s) [specify]

(I) "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "**Escrow Items**" means those items that are described in Section 3.

(M) "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

K.K.
B.H

DOC ID #: 0001674647470400?

**TRANSFER OF RIGHTS IN THE PROPERTY**
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

COUNTY                              of                              ELK                              :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

see attachment "a"

which currently has the address of
                    4408 WILCOX ROAD, WILCOX                                      ,
                                            [Street/City]
Pennsylvania      15870      ("Property Address"):
            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

DOC ID #: 0001.6746474704007

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(PA) (0508)      CHL (10/05)              Page 5 of 17                    Form 3039 1/01



DOC ID #: 00016746474704007

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



DOC ID #: 00016746474704007

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If

-6A(PA) (0508)      CHL (19/05)              Page 7 of 17                      Form 3039  1/01



DOC ID #: 0001674647404007

Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is



DOC ID #: 00016746474704007

completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan



DOC ID #: 0001674647470007

is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or



DOC ID #: 00016746474704007

repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of



DOC ID #: 0001674647470400 7

Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by



DOC ID #: 00016746474704007

this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,



DOC ID #: 0001674647470400 7

instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

-6A(PA) (0508)          CHL (10/05)                    Page 14 of 17                              Form 3039  1/01



DOC ID #: 0001674647470400 7

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waivers. Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. Reinstatement Period. Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. Purchase Money Mortgage. If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. Interest Rate After Judgment. Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.



DOC ID #: 00016746474704007

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.


_____ (Seal)
KARL KROUSE                                                    -Borrower

_____ (Seal)
BETTY HERZING                                                 -Borrower

_____ (Seal)
                                                                       -Borrower

_____ (Seal)
                                                                       -Borrower


-6A(PA) (0508)       CHL (10/05)           Page 16 of 17                Form 3039  1/01



DOC_ID #: 00016746474704007

**COMMONWEALTH OF PENNSYLVANIA,**    ELK                    **County ss:**

On this, the 27th day of April, 2007, before me, the undersigned officer, personally appeared Karl Krouse and Betty Herzing _____

_____ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes herein contained.

   IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires: 3/17/11

_____

Notary Public
Title of Officer

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karin F. Hesse, Notary Public
Upper St. Clair Twp., Allegheny County
My Commission Expires March 17, 2011
Member, Pennsylvania Association of Notaries

**Certificate of Residence**
   I, Karin F. Hess _____, do hereby certify that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

   Witness my hand this 27th _____ day of April, 2007 .

_____

Agent of Mortgagee

VMP -6A(PA) (0508)        CHL (10/05)                Page 17 of 17                          Form 3039  1/01

K. H.
B.H

# *Stewart Title Guaranty Company*

### EXHIBIT "A"

File Number:  102358

## The land referred to is described as follows:

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

### THE FIRST THEREOF:

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

### THE SECOND THEREOF:

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

# RECORDER OF DEEDS
# ELK COUNTY
## *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0178130-0005I |

| RECORDING COVER PAGE | Page 1 of 3 |
|---|---|
| **Document Type:** Assignment of Mortgage | **Transaction #:** 186513 |
| **Document Date:** 02/24/2010 11:06:42 AM | **Document Page Count:** 2 |
| **Document Number:** 2010-000473 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| PHELAN HALLINAN & SCHMIEG LLP<br>ONE PENN CENTER AT SUBURBAN STATION<br>1617 JFK BLVD STE 1400<br>PHILADELPHIA, PA 19103-9897 | PHELAN HALLINAN & SCHMIEG LLP<br>ONE PENN CENTER AT SUBURBAN STATION<br>1617 JFK BLVD STE 1400<br>PHILADELPHIA, PA 19103-9897 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Assignment of Mortgage | $44.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | **$64.00** | |

**Document Number: 2010-000473**
**Recorded Date: 02/24/2010**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

**Document Number: 2010-000473          RECORDED ELK COUNTY, PA                     Page 2 of 3**

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that **"Mortgage Electronic Registration Systems, Inc."** hereinafter **"Assignor"** the holder of the Mortgage hereinafter mentioned, for and in consideration of the sum of ONE DOLLAR ($1.00) lawful money unto it in hand paid by **BAC HOME LOANS SERVICING, L.P. FKA COUNTRYWIDE HOME LOANS SERVICING LP** , **"Assignee,"** the receipt whereof is acknowledged, has granted, bargained, sold, assigned, transferred and set over unto the said Assignee, its successors and assigns, ALL THAT CERTAIN Indenture of Mortgage given and executed by **KARL KROUSE and BETTY HERZING** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INCORPORATED AS A NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**, bearing the date 04/27/2007, in the amount of **$75,000.00**, together with the Note and indebtedness therein mentioned, said Mortgage being recorded on **06/06/2007** in the County of **ELK**, Commonwealth of Pennsylvania, in Mortgage Book **2007 Page 2242**, MIN: **1000157-0007173573-8.**

Being Known as Premises: **4408 WILCOX ROAD, WILCOX, PA 15870-2216**
Parcel No: 07-06-015-1873

The transfer of the mortgage and accompanying rights was effective at the time the loan was sold and consideration passed to the Assignor. This assignment is solely intended to describe the instrument sold in a manner sufficient to put third parties on public notice of what has been sold.

Also the Bond or Obligation in the said Indenture of Mortgage recited, and all Moneys, Principal and Interest, due and to grow due thereon, with the Warrant of Attorney to the said Obligation annexed. Together with all Rights, Remedies and incidents thereunto belonging. And all its Right, Title, Interest, Property, Claim and Demand, in and to the same:

TO HAVE, HOLD, RECEIVE AND TAKE, all and singular the hereditaments and premises granted and assigned, or mentioned and intended so to be, with the appurtenances unto Assignee, its successors and assigns, to and for its only proper use, benefit and behoof forever; subject, nevertheless, to the equity of redemption of said Mortgagor in the said Indenture of Mortgage named, and his/her/their heirs and assigns therein.

IN WITNESS WHEREOF, the said **"Assignor"** has caused its Corporate Seal to be herein affixed and these presents to be duly executed by its proper officers this 8th day of February, 2010.

                                        Mortgage Electronic Registration Systems, Inc.

                                        By: _Judith T. Romano_
Sealed and Delivered                    Judith T. Romano, Assistant Secretary and Vice President
in the presence of us;

State of Pennsylvania      :
                           ss.
County of Philadelphia     :

        On this 8th day of February, 2010, before me, the subscriber, personally appeared Judith T. Romano, who acknowledged herself to be the Assistant Secretary and Vice President of **Mortgage Electronic Registration Systems, Inc.**, and that she, as such Assistant Secretary and Vice President, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

        IN WITNESS WHEREOF, I hereunto set my hand and official seal.

                                        **COMMONWEALTH OF PENNSYLVANIA**
                                        ┌─────────────────────────────────────┐
                                        │         NOTARIAL SEAL                 │
                                        │ EUGENE JASKIEWICZ, Notary Public      │
                                        │ City of Philadelphia, Phila. County   │
                                        │ My Commission Expires August 13, 2012 │
                                        └─────────────────────────────────────┘
                         _____
**Stamp/Seal:**          Notary Public

The precise address of the within named    **After recording return to:**
Assignee is:                                **Phelan Hallinan & Schmieg, LLP**
**7105 CORPORATE DRIVE**                    **1617 JFK Boulevard, Suite 1400**          **February 5, 2010**
**PLANO, TX 75024**                         **One Penn Center Plaza**                   **Document Execution**
By:_____                          **Philadelphia, PA 19103**                  **PHS # 229221**
       (For Assignee)

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

THE FIRST THEREOF:

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

THE SECOND THEREOF:

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 1/2 acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

Being the same premises which Henry L. Halquist and Marilyn J. Halquist by deed dated July 25, 2000 and recorded September 26, 2000 in the Office of the Recorder of Deeds of Elk County in Deed Book Volume 412, Page 812, granted and conveyed unto Gail N. Barnett and Lori L. Abplanalp, the Grantors herein.

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0220493-0010E |

| RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | |
|---|---|
| **Document Type:** Assignment of Mortgage<br>**Document Date:** 05/05/2014 09:15:43 AM<br>**Document Number:** 2014-001072 | **Transaction #:**     261313<br>**Document Page Count:** 3 |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| M & T BANK<br>P O BOX 1288<br>BUFFALO, NY 14240 | M & T BANK<br>P O BOX 1288<br>BUFFALO, NY 14240 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Recording Fee: Assignment of Mortgage | $44.00 | |
| Parcel Id Fee | $20.00 | |
| **Total:** | $64.00 | |

**Document Number: 2014-001072**
**Recorded Date: 05/05/2014**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Document Number: 2014-001072          **RECORDED ELK COUNTY, PA**                                    **Page 2 of 4**

Recording requested by:
BANK OF AMERICA, N.A.
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING LP

When recorded mail to:
M&T BANK
ATTN: EMILY WITT
1 FOUNTAIN PLAZA, 4TH FLOOR
BUFFALO, NY 14203
Attn: ASSIGNMENT UNIT

---

## CORPORATION ASSIGNMENT OF MORTGAGE

Doc. ID# 33616746474756778
Commitment# A60745

For value received, the undersigned, BANK OF AMERICA, N.A. SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING
LP, 101 S. MARENGO AVE., 4TH FLOOR, PASADENA, CA 91101, hereby grants,
assigns and transfers to:
      M & T BANK
      1 FOUNTAIN PLAZA, 4TH FLOOR, BUFFALO, NY 14203

All its interest under that certain Mortgage dated 4/27/07, executed by:
KARL KROUSE and BETTY HERZING, Mortgagor as per MORTGAGE recorded as
Instrument No. 2007-002242 on 6/06/07 in Book N/A Page N/A of official
records in the County Recorder's Office of ELK County, PENNSYLVANIA.
      Tax Parcel =   07-06-015-1873.
Original Mortgage $75,000.00
4408 WILCOX ROAD, WILCOX, PA 15870

   (See page attached hereto for Legal Description)
Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage. "I hereby certify that the precise address of the
within named assignee is 1 FOUNTAIN PLAZA, 4TH FLOOR, BUFFALO, NY 14203."

x _____

Document Number: 2014-001072        **RECORDED ELK COUNTY, PA**                        **Page 3 of 4**

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID# 33616746474756778
Commitment# A60745

Dated: 02/04/2014        BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME
LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
SERVICING LP

By _____
GLENDA CHAVEZ, ASSISTANT VICE PRESIDENT

State of California
County of LOS ANGELES

On 02/04/2014 before me, __Martine F.S. Henry__ , Notary Public,
personally appeared GLENDA CHAVEZ, who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____
Martine F.S. Henry

Prepared by: GLENDA CHAVEZ
101 S MARENGO AVE., 4TH FLOOR
PASADENA, CA 91101
Phone#: (626) 486-3537

MARTINE F. S. HENRY
COMM. # 1917150
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Jan. 12, 2015

DOC#33616746474756778

# LEGAL DESCRIPTION

The land referred to is described as follows:

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

(2)

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

<table>
<tr>
<td>
<b>Elk County</b><br>
240 Main Street<br>
P.O. Box 314<br>
Ridgway, PA 15853<br>
Phone: (814) 776-5347
</td>
<td>
<br>
0246982-0005V
</td>
</tr>
</table>

| RECORDING COVER PAGE | Page 1 of 10 |
|---|---|

| | |
|---|---|
| Document Type: Modification of Mortgage | Transaction #:     304111 |
| Document Date: 07/23/2015 01:00:21 PM | Document Page Count: 9 |
| Document Number: 2015-002189 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| SCHILLER & KNAPP<br>1412 SWEET HOME ROAD<br>SUITE 12<br>AMHERST, NY 14228 | SCHILLER & KNAPP<br>1412 SWEET HOME ROAD<br>SUITE 12<br>AMHERST, NY 14228 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Modification of Mortgage | $20.50 |
| Additional Pages Fee | $10.00 |
| Parcel Id Fee | $20.00 |
| **Total:** | **$50.50** |

**Document Number: 2015-002189**
**Recorded Date: 07/23/2015**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Document Number: 2015-002189        RECORDED ELK COUNTY, PA                        Page 2 of 10

Investor Loan # <u>FHLMC / 0435176471</u>

RECORD & RETURN TO:
SCHILLER & KNAPP, LLP
1412 SWEET HOME ROAD, STE 12
AMHERST, NY 14228

This document was prepared by <u>Gabriel Foster</u>
<u>Asset Manager, M&T Bank</u>
<u>475 Crosspoint Pkwy Getzville, NY 14068</u>

_____[Space Above This Line For Recording Data]_____

## HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1]
**KARL KROUSE AND BETTY HERZING**

Lender or Servicer ("Lender"):
**M&T BANK**
475 Crosspoint Parkway, Getzville, NY 14068
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**April 27, 2007**

as recorded in Book or Liber or Instrument number  <u>2007-002242</u>  at page(s) <u>N/A</u>,  at County of <u>ELK</u>,
Commonwealth of <u>PENNYSLVANIA</u>

Loan Number:   Original principal balance $75,000.00; Premodification
8616            principal balance $69,361.31; Capitalized amount of
                $12,650.62.

Property Address [and Legal Description if recordation is necessary] ("Property"):
**4408 WILCOX RD, WILCOX PA 15870**

_____
[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                        Form 3157    3/09 (rev. 10/10)

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART OF HEREOF, AS EXHIBIT 'A'

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations and Covenants**.  I certify, represent to Lender, covenant and agree:

   A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.      One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

   C.      There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

   D.      I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

   E.      Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

   F.      If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

   G.      I have made or will make all payments required under a trial period plan.

2.      **Acknowledgements and Preconditions to Modification**.  I understand and acknowledge that:

   A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.      **The Modification**.  If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on first day of April, 2015 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                                      Form 3157    3/09 (rev. 10/10)

a trial period plan, this modification will not take effect. The first modified payment will be due on first day of April, 2015.

A.   The Maturity Date will be: November 01, 2050.

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan The new principal balance of my Note will be $81,981.93 (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   Interest at the rate of 2.000% will begin to accrue on the New Principal Balance as of first day of March, 2015 and the first new monthly payment on the New Principal Balance will be due on first day of April, 2015. My  payment schedule for the modified Loan is as follows:

| Interest Rate Change | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 | 2.000% | first day of March, 2015 | $268.07 | $367.29, may adjust periodically | $635.36, may adjust periodically | first day of April, 2015 | 60 |
| 2 | 3.000% | first day of March, 2020 | $306.54 | May adjust periodically | May adjust periodically | first day of April, 2020 | 12 |
| 3 | 3.750% | first day of March, 2021 | $336.44 | May adjust periodically | May adjust periodically | first day of April, 2021 | 356 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09 (rev. 10/10)

C. · I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

D. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.    **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

**D-1 Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents;   (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D-1. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D-1.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                Form 3157    3/09 (rev. 10/10)

estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an Institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.  That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.  That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.  That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3157    3/09 (rev. 10/10)

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement.  I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature.  At Lender's option, this Agreement will be void and of no legal effect upon notice of such error.  If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.  In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.  If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note.  All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

**Document Number: 2015-002189**        **RECORDED ELK COUNTY, PA**        Page 8 of 10

_____ (Seal)
KARL KROUSE

Commonwealth of PENNSYLVANIA
County of ELK

On the 11th day of MAY in the year 2015 before me, the undersigned, personally appeared KARL KROUSE personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

Grace E. Eisenman
Notary Public

My Commission expires: 3-17-2018

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Grace E. Eisenman, Notary Public
Ridgway Boro, Elk County
My Commission Expires March 17, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

_____ (Seal)
BETTY HERZING

Commonwealth of PENNSYLVANIE
County of ELK

On the 11th day of MAY in the year 2015 before me, the undersigned, personally appeared BETTY HERZING personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or person upon behalf of which the individual acted, executed the instrument

Grace E. Eisenman
Notary Public

My Commission expires: 3-17-18

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Grace E. Eisenman, Notary Public
Ridgway Boro, Elk County
My Commission Expires March 17, 2018
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

KARL KROUSE;
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                    Form 3157    3/09 (rev. 10/10)

LENDER

_____
M&T Bank  LENDER
Richard Scott Pomietlasz
Supervisor I  5-12-15

Date of Lender's Signature

Witness 1  Tynika Bennett

Witness 2  Denise Gatti

—————————————[Space Below This Line For Acknowledgments]———————————————

State of **New York**

County of **Erie**

On the ____12th____ day of ____MAY____ in the year ____2015____ before me, the undersigned, personally appeared ____Richard Scott Pomtis____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are)subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s)on the instrument, the individual(s),or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public

GABRIEL J FOSTER
Lic. #01FO6246828
Notary Public-State of New York
Qualified in  ERIE
My Commission Expires  08/15/2015

KARL KROUSE:
MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT  Form 3157  3/09 (rev. 10/10)

ALTA Loan Policy (6-17-06) - TIRBOP modifications (4-1-07)

## LOAN POLICY OF TITLE INSURANCE

### SCHEDULE A

#### Exhibit A: Legal Description

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Helquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.


*For Company Reference Only; Not An Insuring Provision:*

Address:         4408 Wilcox Road
                 Wilcox, PA 15870

Parcel ID / Tax ID Number: 07-06-015-1873


**Loan Policy - Schedule A - Page 2 of 2**



P.O. Box 2029, Houston, TX 77252-2029

ALTA Loan Policy (6-17-06) - TIRBOP modifications (4-1-07)

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0298909-0005Z |

| RECORDING COVER PAGE | Page 1 of 3 |
|---|---|

| | |
|---|---|
| **Document Type:** Assignment of Mortgage<br>**Document Date:** 05/25/2017 08:48:17 AM<br>**Document Number:** 2017-001426 | **Transaction #:**      372854<br>**Document Page Count:** 2 |
| **RETURN TO:**<br>M & T BANK<br>PO BOX 1850<br>BUFFALO, NY 14240-9715 | **SUBMITTED BY:**<br>M & T BANK<br>PO BOX 1850<br>BUFFALO, NY 14240-9715 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $56.00 |
| Parcel Id Fee | $20.00 |
| **Total:** | **$76.00** |

**Document Number: 2017-001426**
**Recorded Date: 05/25/2017**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

Document Number: 2017-001426          RECORDED ELK COUNTY, PA   1209 35FC   Page 2 of 3

When Recorded Return To:
VERONIKA STEEN
M&T BANK
ATTN: ASSIGNMENTS
PO BOX 1288
BUFFALO, NY 14240

### CORPORATE ASSIGNMENT OF MORTGAGE

Elk, Pennsylvania
SELLER'S SERVICING #:0050818616 "KROUSE"
SELLER'S LENDER ID#: P71

MERS #: 100015700071735738 SIS #: 1-888-679-6377

Date of Assignment: November 8th, 2013
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
Assignee: M AND T BANK

I hereby certify the precise address of the within named Assignor is 1901 E VOORHEES STREET, SUITE C, DANVILLE, IL 61834.

I hereby certify the precise address of the within named Assignee is 1 FOUNTAIN PLAZA, 4TH FLR., BUFFALO, NY 14203.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 1901 E Voorhees Street, Suite C, Danville, IL 61834, P.O. BOX 2026, FLINT, MI 48501-2026

Executed By: KARL KROUSE, AND BETTY HERZING  To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
Date of Mortgage: 04/27/2007 Recorded: 06/06/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2007-002242 In the County of Elk, State of Pennsylvania.
4408 WILCOX ROAD, WILCOX, PA 15870 in the City of WILCOX      UPI# 07-06-015-1873

I do certify that the precise address of M AND T BANK is 1 FOUNTAIN PLAZA, 4TH FLR., BUFFALO, NY 14203
Attested By: _____

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $75,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said assignor hereby grants and conveys unto the said assignee, the assignor's beneficial interest under the Security Instrument.

*YYS*YYSMATB*11/08/2013 08:51:51 AM* MATB01MATBA000000000000000742207* PAELK* 0050818616 PASTATE_MORT_ASSIGN_ASSN **YYSMATB*

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2

   TO HAVE AND TO HOLD the said Security Instrument, and the said property unto the said assignee forever, subject to the terms contained in said Security Instrument.

   MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS
On November 8th, 2013

By: _____
Veronika A. Steen, Assistant Secretary

STATE OF New York
COUNTY OF Erie

On November 8th, 2013, before me, TAMMY M. HAMILTON, a Notary Public in and for Erie in the State of New York, personally appeared Veronika A. Steen, Assistant Secretary of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC. ITS SUCCESSORS AND ASSIGNS, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
TAMMY M. HAMILTON
Notary Expires: 01/12/2017  #01HA6199021
Qualified in Erie County

Tammy M. Hamilton
Notary Public, State of New York
Qualified in Erie County
Reg #01HA6199021
My Commission Expires 1/12/2017

(This area for notarial seal)

*YYS*YYSMATB*11/08/2013 08:51:51 AM* MATB01MATBA000000000000000742207* PAELK*
0050818616 PASTATE_MORT_ASSIGN_ASSN **YYSMATB*

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*

<table>
<tr><td>
**Elk County**<br>
240 Main Street<br>
P.O. Box 314<br>
Ridgway, PA 15853<br>
Phone: (814) 776-5347
</td>
<td>


0324475-0005N
</td></tr>
</table>

| RECORDING COVER PAGE | Page 1 of 9 |
|---|---|

**Document Type:** Modification of Mortgage      **Transaction #:**   418316
**Document Date:** 04/29/2019 12:12:23 PM      **Document Page Count:** 8
**Document Number:** 2019-001049

| RETURN TO: | SUBMITTED BY: |
|---|---|
| RUTH RUHL PC<br>12700 PARK CENTRAL DR<br>SUITE 850<br>DALLAS, TX 75251 | RUTH RUHL PC<br>12700 PARK CENTRAL DR<br>SUITE 850<br>DALLAS, TX 75251 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Modification of Mortgage | $20.50 |
| Additional Pages Fee | $8.00 |
| Parcel Id Fee | $20.00 |
| **Total:** | **$48.50** |

**Document Number: 2019-001049**
**Recorded Date: 04/29/2019**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

After Recording Return To:
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

Prepared By:
RUTH RUHL, P.C.
12700 Park Central Drive, Suite 850
Dallas, TX 75251
877-766-6677

Parcel ID No.: 07-06-015-1873

_____[Space Above This Line For Recording Data]_____

Loan No.: 0050818616

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this  18th   day of   January, 2019
between KARL KROUSE and BETTY HERZING

                                                                                                                  ("Borrower")

and M&T Bank

                                                                                                                  ("Lender"),
amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated
April 27th, 2007        , recorded June 6th, 2007       , and recorded in Book/Liber N/A        , Page N/A
Instrument No. 2007-002242        , of the            Records of Elk            County, Pennsylvania ,
and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and
personal property described in the Security Instrument and defined therein as the "Property," located at
4408 WILCOX ROAD, WILCOX, Pennsylvania 15870        .

Said Security Instrument was assigned as follows:
            From Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home
Loans, Inc.,                                                                                                      , to
BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP

by assignment dated  February 8th, 2010       , and recorded on  February 24th, 2010    of the Official Records of
Elk            County, State of Pennsylvania in Book/Liber  N/A                    , Page N/A             ,
Instrument No. 2010-000473

Original Loan Amount: $75,000.00

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                                          Page 1 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.: 0050818616

From  BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
to M&T Bank                              , by assignment dated  February 4th, 2014          ,
and recorded on  May 5th, 2014          of the Official Records of Elk              County, State of Pennsylvania
in Liber or Book  N/A          , Page N/A          , Instrument No.  2014-001072

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

SEE EXHIBIT "B" ATTACHED HERETO AND MADE A PART HEREOF.


        In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows
(notwithstanding anything to the contrary contained in the Note or Security Instrument):

        1.        As of March 1st, 2019, the amount payable under the Note and the Security Instrument (the "New
Principal Balance") is U.S. $94,634.46 consisting of the unpaid amount(s) loaned to Borrower by Lender plus any
interest and other amounts capitalized.
        2.        $20,000.00 of the New Principal Balance shall be deferred ("the Deferred Principal Balance") and
Borrower will not pay interest or make monthly payments on this amount. The New Principal Balance less the
Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is
$74,634.46. Interest will be charged on the Interest Bearing Principal Balance at the yearly rate of 3.750%, from
February 1st, 2019. Borrower promises to make monthly payments of principal and interest of U.S. $300.42,
beginning on the 1st day of March, 2019, and continuing thereafter on the same day of each succeeding month until
the Interest Bearing Principal Balance and all accrued interest thereon have been paid in full. The yearly rate of
3.750% will remain in effect until the Interest Bearing Principal Balance and all accrued interest thereon have been
paid in full. The new Maturity Date will be February 1st, 2059.
        3.        Borrower agrees to pay in full the Deferred Principal Balance and any other amounts still owed
under the Note and Security Instrument by the earliest of: (i) the date Borrower sells or transfers an interest in the
Property, (ii) the date Borrower pays the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.
        4.        If Borrower makes a partial prepayment of Principal, Lender may apply that partial prepayment
first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.
        5.        If all or any part of the Property or any interest in the Property is sold or transferred (or if
Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument,
        If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice
shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower
must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of
this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand
on Borrower.
        6.        Borrower also will comply with all other covenants, agreements, and requirements of the Security
Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes,
insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to
make under the Security Instrument; however, the following terms and provisions are forever canceled, null and
void, as of the specified date in paragraph No. 1 above:
        (a)        all terms and provisions of the Note and Security Instrument (if any) providing for, implementing,
or relating to, any change or adjustment in the rate of interest payable under the Note; and

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                                         Page 2 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.: 0050818616

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

7. Borrower understands and agrees that:

(a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f) Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this section, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan.

Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan including the trial period plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

By checking this box, Borrower also consents to being contacted by text messaging☐.

8. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

9. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

10. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                                                    Page 3 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

Loan No.: 0050818616

Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund Borrower any Funds held by Lender.

| | |
|---|---|
| *2-11-19* | *Karl K* (Seal) |
| Date | KARL KROUSE    –Borrower |
| *2-11-19* | *Betty Herzing* (Seal) |
| Date | BETTY HERZING    –Borrower |
| | (Seal) |
| Date | –Borrower |
| | (Seal) |
| Date | –Borrower |

PENNSYLVANIA LOAN MODIFICATION AGREEMENT                                          Page 4 of 6
(FNMA Modified Form 3179 1/01 (rev. 04/14))

**Document Number: 2019-001049**          **RECORDED ELK COUNTY, PA**                    **Page 6 of 9**

Loan No.: 0050818616

## BORROWER ACKNOWLEDGMENT

State of  ~~PENNSYLVANIA~~          §
                                    §
County of  ~~ELK~~                  §

    On this, the 11ᵗʰ day of ~~FEBRUARY~~     , ~~2019~~, before me  Jennifer M. Patterson
the undersigned officer, personally appeared KARL KROUSE and BETTY HERZING

known to me (or satisfactorily proven) to be the person whose name(s) is/are  subscribed to the within instrument,
and acknowledged that he/she/they executed the same for the purposes therein contained.
    In witness whereof, I hereunto set my hand and official seal.

(Seal)

        COMMONWEALTH OF PENNSYLVANIA
              NOTARIAL SEAL
     Jennifer M. Patterson  Notary Public
         Ridgway Boro, Elk County
    My Commission Expires Nov 30, 2019
   MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Notary Signature

Title of Officer

Loan No.: 0050818616

M&T Bank _____                    _2-13-19_____
                              --Lender                                          -Date


By: _Marie F. MacKay_____        Marie F. MacKay
                                                              Banking Officer
Its: _____


## LENDER ACKNOWLEDGMENT

State of  New York                    §
                                               §
County of  Erie                        §

        On this, the 13  day of    February           . 2019 before me    Gabriel Foster
the undersigned officer, personally appeared  Marie F. MacKay          who acknowledged
himself/herself to be the  Banking Officer              of  M&T Bank

a entity, and that he/she as such  Banking Officer                 being authorized to do so, executed the
foregoing instrument for the purposes therein contained by signing the name of said entity by himself/herself as
Banking Officer
        In witness whereof, I hereunto set my hand and official seal.


(Seal)              GABRIEL FOSTER
                REGISTRATION # 61FO6246828
        NOTARY PUBLIC-STATE OF NEW YORK      _Notary Signature_
                NIAGARA COUNTY
        MY COMMISSION EXPIRES AUGUST 16, 2019   _NoTARY PuBLIc_
                                                              Title of Officer


"I, _Marie F MacKay_, do hereby certify that the correct address of the within named Mortgagee is
475 Crosspoint Pkwy, Getzville, New York 14068. Witness my hand this  13  day of  Feb         ,
2019."                                                        Marie F. MacKay
Signed: _Marie F. MacKay_____        Banking Officer
By: _____

ACKNOWLEDGMENT (PENNSYLVANIA)                                              Page 6 of 6

# Exhibit "A"
## Legal Description

The land referred to is described as follows:

All those certain lots, parcels or pieces of ground situate in the Township of Jones, County of Elk, Commonwealth of Pennsylvania, being more particularly bounded and described as follows, to-wit:

**THE FIRST THEREOF:**

BEGINNING at a point in the Eastern line of the B.P. Highway and two hundred sixty-two (262) feet in a Southerly direction from the intersection of the Northern boundary of lands of Alfred Holquist and the said B.P. Highway; thence in a Southerly direction along said Eastern line of said B.P. Highway, two hundred nine (209) feet to a post corner; thence East two hundred nine (209) feet to a post corner; thence North two hundred nine (209) feet to a post corner; thence West two hundred nine (209) feet to the place of beginning.

**THE SECOND THEREOF:**

Beginning at a point at the edge of the B.P. Highway leading from Johnsonburg to Wilcox, this point being the Southwest corner of lot owned by Andrew Bendick; thence East along the South line of Bendick land two hundred nine (209) feet, continuing East one hundred fifty three (153) feet to a post corner; thence South three hundred sixty two (362) feet to a post corner; thence West three hundred sixty two (362) feet to the B.P. Highway; thence North along said B.P. Highway to the place of beginning.

Excepting and reserving the South 1 ½ acres which were conveyed to Loraine Morgan by Andrew Bendick, et ux by deed dated July 12, 1985 and recorded in the Office of the Recorder of Deeds for Elk County on September 18, 1985 in Deed Book Volume 245, page 538.

BEING designated as Tax Parcel No. 07-06-015-1873 in the Deed Registry Office of Elk County, Pennsylvania.

Loan No.: 0050818616

**EXHIBIT "B"**

(1) The Security Instrument executed by  KARL KROUSE and BETTY HERZING

in favor of   Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home Loans, Inc.
in the original principal sum of $ 75,000.00       , dated  April 27th, 2007       , recorded on June 6th, 2007      ,
in Liber or Book N/A       . Page  N/A       , Instrument No. 2007-002242      , of the office of the Clerk of
Elk                  County, Pennsylvania           .

Said Security Instrument was modified by a Loan Modification Agreement, recorded on July 23rd, 2015, in Liber or Book N/A, Page N/A, Instrument No. 2015-002189, of the Official Records of Elk County, Pennsylvania.

Said Security Instrument was assigned as follows:
         From  Mortgage Electronic Registration Systems, Inc., acting solely as nominee for Countrywide Home Loans, Inc.                                                               , to
BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
by assignment dated February 8th, 2010       , and recorded on February 24th, 2010       in the office of the Clerk of
Elk                  County, State of Pennsylvania in Liber or Book   N/A                , Page N/A             .
Instrument No.  2010-000473         .

         From BAC Home Loans Servicing, LP FKA Countrywide Home Loans, LP
to M&T Bank                                              , by assignment dated  February 4th, 2014      ,
and recorded on  May 5th, 2014        , in the office of the Clerk of  Elk                 County, State of
Pennsylvania in Liber or Book  N/A        , Page N/A         , Instrument No.  2014-001072   .

         From N/A
to N/A
by assignment dated  N/A                        , and recorded on  N/A                  in the office of the Clerk of
Elk                  County, State of Pennsylvania in Liber or Book  N/A                 , Page  N/A
Instrument No.  N/A

EXHIBIT "B"

# Lee A. Neureiter
## RECORDER OF DEEDS
## Elk County, Pennsylvania

| | |
|---|---|
| **Elk County**<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | <br>0347107-0014K |

| RECORDING COVER PAGE | Page 1 of 4 |
|---|---|

| | |
|---|---|
| **Document Type:** Partial Release<br>**Document Date:** 05/06/2022 11:16:40 AM<br>**Document Number:** 2022-001258 | **Transaction #:**    472100<br>**Document Page Count:** 3 |
| **RETURN TO:**<br>KML LAW GROUP P.C.<br>SUITE 5000<br>701 MARKET ST<br>PHILADELPHIA, PA 19106 | **SUBMITTED BY:**<br>KML LAW GROUP P.C.<br>SUITE 5000<br>701 MARKET ST<br>PHILADELPHIA, PA 19106 |

**DOCUMENT REFERENCE NAME:**

**FEES / TAXES:**

| | | |
|---|---|---|
| Parcel Id Fee | $20.00 | |
| Recording Fee: Release of Mortgage | $60.75 | |
| | | |
| **Total:** | $80.75 | |

**Document Number: 2022-001258**
**Recorded Date: 05/06/2022**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



*Lee A. Neureiter*

Lee A. Neureiter
Recorder of Deeds

# DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

**Document Number: 2022-001258**        **RECORDED ELK COUNTY, PA**        **Page 2 of 4**

When Recorded Return To:
KML Law Group P.C.
701 Market Street, Suite 5000 Philadelphia, PA 19106
(215) 627-1322
Assessor's/Tax ID No. Part of 07-06-015-1815
216348FC

## Partial Release of Mortgage

This Partial Release ("Partial Release"), granted this __4__ day of _April_____, 2022, by

**M & T BANK**

Name of Mortgagor: **KARL KROUSE and BETTY HERZING**

Name of Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE HOME LOANS, INC.**

Date of Mortgage: **April 27, 2007**

Original Mortgage Debt: **$75,000.00**

Recorded on **June 6, 2007**, Instrument Number **2007-002242** of the Office of the Recorder of Deeds in Elk County, State of Pennsylvania

Assigned to **BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** by Assignment dated February 8, 2010, recorded February 24, 2010, Instrument Number 2010-000473 of the Office of the Recorder of Deeds of Elk County, State of Pennsylvania

Further Assigned to Assigned to **M & T BANK** by Assignment dated February 4, 2014, recorded May 5, 2014, Instrument Number 2014-001072 of the Office of the Recorder of Deeds of Elk County, State of Pennsylvania

Property to be Released: **Part of Elk County, Pennsylvania. Parcel Identifier #07-06-015-1815** more particularly described as follows:

Loan: 0050818616

IN WITNESS WHEREOF, M & T Bank has caused this Partial Release to be executed by its
duly authorized representative as of the day and year first above written.

WITNESS:

_Jodie L. Fredlund_
Jodie L. Fredlund

M & T BANK

By: _Kimberly Coon_
Print Name: __Kimberly Coon__
Title: __Assistant Vice President__

STATE OF __NEW YORK__

__ERIE_____, ss                                    april 4, 2022

I hereby certify that on this __4__ day of __April_____, 2022, before me, the subscriber, a notary
public of the State of __New York__, and for the County of __Erie_____, personally
appeared __Kimberly Coon_____ known to me or satisfactorily
proven to be the person(s) whose name is subscribed to the within instrument and acknowledge
that he/she/they executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

_Diane Chimera_
Notary Public:
My Commission Expires: 6.2.2024

216348FC

Diane Chimera
Lic# 01CH6187936
Notary Public, State of New York
Qualified in Erie County
My Commission Expires 06/02/2024

Loan: 0050818616

Document Number: 2022-001258            **RECORDED ELK COUNTY, PA**                    Page 4 of 4

ALL that certain piece or parcel of land situate, lying and being in the Township of Jones, County of Elk and State of Pennsylvania, bounded and described as follows:

BEGINNING at a ¾" rebar set in the east right of way line of Pennsylvania State Route SR-0219; said rebar being South 08° 42' 50" East and 262.00 feet distant from the northwest corner of lands of Peter T. Biel et ux described in Deed Book 414 at Page 323, said rebar also marking the northwest corner of Parcel 1 of the Barnett Subdivision described below;

Thence, South 66° 30' 57" East 209.00 feet to a ¾" rebar set in the western lines of lands now or formerly of Bruce and Blair Anderson described at Record Book 542 at Page 143;

Thence, along the western line of said Anderson lands, South 08° 42' 50" East 13.58 feet to a ¾" rebar, said rebar marking the southeastern corner of Parcel 1 in the Barnett Subdivision described below;

Thence, South 86° 22' 12" West 177.56 feet to an iron pin set in the eastern line of Pennsylvania State Route SR-0219, marking the southwestern corner of said Parcel 1;

Thence, along the east line of Pennsylvania State Route SR-0219, North 08° 42' 50" West 109.21 feet to a rebar marking the point and place of beginning.

CONTAINING 0.249 acres and being all of Parcel 1 of the Gail N. Barnett and Lori L. Abplanalp Subdivision, as shown on map prepared by Curry & Associates dated April 5, 2007, and duly recorded in the Office of the Recorder of Deeds of Elk County.

BEING part of the same premises intended to be described in a deed from Derek B. Barnett and Erin M. Barnett to Peter T. Biel and Shirley L. Biel dated June 9, 2006, and recorded June 9, 2006, in Elk County Record Book 552 at Page 301. This deed is made in satisfaction of a Boundary Line Agreement dated June 9, 2006, between Derek B. Barnett and Erin M. Barnett and Peter T. Biel and Shirley L. Biel and Gail M. Barnett and Lori L. Abplanalp. Karl Krouse and Betty Herzing have executed this deed as successors in interest to the lands of Gail M. Barnett and Lori L. Abplanalp adjacent to the property herein described.

This parcel is part of Elk County Uniform Parcel Identifier Number is 07-06-015-1815.

# RECORDER OF DEEDS
## ELK COUNTY
### *Peter Weidenboerner*



| Elk County<br>240 Main Street<br>P.O. Box 314<br>Ridgway, PA 15853<br>Phone: (814) 776-5347 | |
|---|---|
| | 0133378-00060 |

**RECORDING COVER PAGE**        Page 1 of 5

| | |
|---|---|
| Document Type: Quit Claim Deed | Transaction #:        136063 |
| Document Date: 09/26/2008 03:17:06 PM | Document Page Count: 4 |
| Document Number: 2008-003921 | |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| MEYER & WAGNER | MEYER & WAGNER |
| 115 LAFAYETTE STREET | 115 LAFAYETTE STREET |
| ST MARYS, PA 15857 | ST MARYS, PA 15857 |

**DOCUMENT REFERENCE NAME:**

CONSIDERATION/SECURED AMT:        $0.00
FEES / TAXES:

| | |
|---|---|
| Recording Fee: Quit Claim Deed | $28.50 |
| Parcel Id Fee | $10.00 |
| Total: | $38.50 |

**Document Number: 2008-003921**
**Recorded Date: 09/26/2008**

I hereby CERTIFY that this document
is recorded in the Recorder's Office of
Elk County, Pennsylvania



P. W. Weidenboerner
Recorder of Deeds

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE MAY NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT
FOR ANY ADDITIONAL INFORMATION.

**DO NOT REMOVE - THIS PAGE IS PART OF THE RECORDED DOCUMENT.**

# Quitclaim Deed

**Made this 21st day of September, 2008.**

KARL KROUSE and BETTY HERZING, of Wilcox, Pennsylvania, the GRANTORS

AND

PETER T. BIEL and SHIRLEY L. BIEL, husband and wife, of Wilcox, Pennsylvania, the GRANTEES

WITNESSETH that in consideration of the sum of ONE DOLLAR to them in hand paid, receipt of which is hereby acknowledged, the Grantors do hereby RELEASE and QUITCLAIM to the Grantees, as tenants by the entireties, their heirs and assigns,

ALL that certain piece or parcel of land situate, lying and being in the Township of Jones, County of Elk and State of Pennsylvania, bounded and described as follows:

BEGINNING at a ¾" rebar set in the east right of way line of Pennsylvania State Route SR-0219; said rebar being South 08° 42' 50" East and 262.00 feet distant from the northwest corner of lands of Peter T. Biel et ux described in Deed Book 414 at Page 323, said rebar also marking the northwest corner of Parcel 1 of the Barnett Subdivision described below;

Thence, South 66° 30' 57" East 209.00 feet to a ¾" rebar set in the western lines of lands now or formerly of Bruce and Blair Anderson described at Record Book 542 at Page 143;

Thence, along the western line of said Anderson lands, South 08° 42' 50" East 13.58 feet to a ¾" rebar, said rebar marking the southeastern corner of Parcel 1 in the Barnett Subdivision described below;

Thence, South 86° 22' 12" West 177.56 feet to an iron pin set in the eastern line of Pennsylvania State Route SR-0219, marking the southwestern corner of said Parcel 1;

Thence, along the east line of Pennsylvania State Route SR-0219, North 08° 42' 50" West 109.21 feet to a rebar marking the point and place of beginning.

CONTAINING 0.249 acres and being all of Parcel 1 of the Gail N. Barnett and Lori L. Abplanalp Subdivision, as shown on map prepared by Curry & Associates dated April 5, 2007, and duly recorded in the Office of the Recorder of Deeds of Elk County.

BEING part of the same premises intended to be described in a deed from Derek B. Barnett and Erin M. Barnett to Peter T. Biel and Shirley L. Biel dated June 9, 2006, and recorded June 9, 2006, in Elk County Record Book 552 at Page 301. This deed is made in satisfaction of a Boundary Line Agreement dated June 9, 2006, between Derek B. Barnett and Erin M. Barnett and Peter T. Biel and Shirley L. Biel and Gail M. Barnett and Lori L. Abplanalp. Karl Krouse and Betty Herzing have executed this deed as successors in interest to the lands of Gail M. Barnett and Lori L. Abplanalp adjacent to the property herein described.

This deed is given for purposes of clearing a cloud on title and is therefore not subject to Pennsylvania or local realty transfer taxes.

This parcel is part of Elk County Uniform Parcel Identifier Number is 07-06-015-1815.

The Grantees herein are advised by the Grantors that the Grantors have never been placed on notice of any incurred violations of the Housing, Building, Safety or Fire Ordinance of the Township of Jones. The Grantees are instructed to contact the local Township Office if they desire further information regarding such ordinances. This statement is in conformance with Act No. 89 of June 23, 1976, P.L. 400, as outlined in 21 P.S. Section 611, et seq.

The Grantors herein have no actual knowledge of any hazardous waste as defined in Act No. 1980-97 of the Commonwealth of Pennsylvania having been or which is presently disposed of, on, or about the property described in this deed.

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND IN THAT CONNECTION DAMAGE MAY RESULT TO THE SURFACE OF THE LAND

AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE, RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT.

NOTICE: The undersigned, as evidenced by the signature(s) to this notice and the acceptance and recording of this deed, (is, are) fully cognizant of the fact that the undersigned may not be obtaining the right of protection against subsidence, as to the property herein conveyed, resulting from coal mining operations and that the purchased property, herein conveyed, may be protected from damage due to mine subsidence by a private contract with the owners of the economic interest in the coal. This notice is inserted herein to comply with the Bituminous Mine Subsidence and Land Conservation Act of 1966.

*Witness the hand and seal of the Grantor*

_____ (SEAL)
Karl Krouse

_____ (SEAL)
Betty Herzing

State of Pennsylvania                    :
County of Elk                            :

On this 21st, September, 2008 before me a Notary Public, the undersigned officer, appeared Karl Krouse and Betty Herzing, known to me or satisfactorily proven to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Shawn T. McMahon, Notary Public
Ridgway Boro, Elk County
My Commission Expires April 26, 2011
Member, Pennsylvania Association of Notaries

Certificate of Residence

I hereby certify that the precise address of the Grantee is:  4458 Wilcox Road
                                                              Wilcox, Pa. 15870

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | **Karl William Krouse** |
| | First Name     Middle Name     Last Name |
| Debtor 2 | **Betty Corinne Krouse** |
| (Spouse if, filing) | First Name     Middle Name     Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | **25-10027-CMB** |

☐ Check if this is an amended filing

## Official Form 106C
## Schedule C: The Property You Claim as Exempt          4/22

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. Using the property you listed on *Schedule A/B: Property* (Official Form 106A/B) as your source, list the property that you claim as exempt. If more space is needed, fill out and attach to this page as many copies of *Part 2: Additional Page* as necessary. On the top of any additional pages, write your name and case number (if known).

For each item of property you claim as exempt, you must specify the amount of the exemption you claim. One way of doing so is to state a specific dollar amount as exempt. Alternatively, you may claim the full fair market value of the property being exempted up to the amount of any applicable statutory limit. Some exemptions—such as those for health aids, rights to receive certain benefits, and tax-exempt retirement funds—may be unlimited in dollar amount. However, if you claim an exemption of 100% of fair market value under a law that limits the exemption to a particular dollar amount and the value of the property is determined to exceed that amount, your exemption would be limited to the applicable statutory amount.

### Part 1:    Identify the Property You Claim as Exempt

1. **Which set of exemptions are you claiming?** *Check one only, even if your spouse is filing with you.*

   ☐ You are claiming state and federal nonbankruptcy exemptions.  11 U.S.C. § 522(b)(3)

   ■ You are claiming federal exemptions.  11 U.S.C. § 522(b)(2)

2. **For any property you list on *Schedule A/B* that you claim as exempt, fill in the information below.**

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own (Copy the value from *Schedule A/B*) | Amount of the exemption you claim (*Check only one box for each exemption.*) | Specific laws that allow exemption |
|---|---|---|---|
| **4408 Wilcox Road Wilcox, PA 15870 Elk County** <br> Line from Schedule A/B: **1.1** | $128,000.00 | ■ $20,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(1)** |
| **2005 Kia Sportage** <br> Line from Schedule A/B: **3.1** | $2,000.00 | ■ $2,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(2)** |
| **1990 Chevy S-10 100,000 miles** <br> Line from Schedule A/B: **3.2** | $1,000.00 | ■ $1,000.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(2)** |
| **All household goods and furniture** <br> Line from Schedule A/B: **6.1** | $2,800.00 | ■ $2,800.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |
| **TV, DVD, and all other electronics** <br> Line from Schedule A/B: **7.1** | $400.00 | ■ $400.00 <br> ☐ 100% of fair market value, up to any applicable statutory limit | **11 U.S.C. § 522(d)(3)** |

| Debtor 1 | **Karl William Krouse** | |
|---|---|---|
| Debtor 2 | **Betty Corinne Krouse** | Case number (if known)    **25-10027-CMB** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| **2 handguns**<br>Line from Schedule A/B: **10.1** | *$300.00* | ■  *$300.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Clothing owned by debtors**<br>Line from Schedule A/B: **11.1** | *$300.00* | ■  *$300.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(3)* |
| **Wedding bands; costume jewelry**<br>Line from Schedule A/B: **12.1** | *$75.00* | ■  *$3,750.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(4)* |
| **Cash in debtor's possession**<br>Line from Schedule A/B: **16.1** | *$46.00* | ■  *$46.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Husband's Checking: CNB Checking**<br>Line from Schedule A/B: **17.1** | *$100.00* | ■  *$100.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Joint Checking: CNB Checking**<br>Line from Schedule A/B: **17.2** | *$2,300.00* | ■  *$1,885.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |
| **Joint Checking: CNB Checking**<br>Line from Schedule A/B: **17.2** | *$2,300.00* | ■  *$415.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(1)* |
| **Wife's Checking: CNB Checking**<br>Line from Schedule A/B: **17.3** | *$5.00* | ■  *$5.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(1)* |
| **401(k): Kwik Fill retirement plan through United Refinery**<br>Line from Schedule A/B: **21.1** | *$6,000.00* | ■  *100%*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(10)(E)* |
| **401(k): Kwik Fill retirement plan through United Refinery**<br>Line from Schedule A/B: **21.1** | *$6,000.00* | ■  *100%*<br>☐  100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(12)* |
| **401(k): Kwik Fill retirement plan through United Refinery**<br>Line from Schedule A/B: **21.1** | *$6,000.00* | ■  *$1.00*<br>☐  100% of fair market value, up to any applicable statutory limit | *29 U.S.C. § 1056(d)* |

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | | Case number (if known) | ***25-10027-CMB*** |

| Brief description of the property and line on *Schedule A/B* that lists this property | Current value of the portion you own | Amount of the exemption you claim | Specific laws that allow exemption |
|---|---|---|---|
| | Copy the value from *Schedule A/B* | *Check only one box for each exemption.* | |
| ***Social Security: Social Security - Husband receives $1,025 per month (in pay status)*** <br> Line from *Schedule A/B*: **21.2** | *$1.00* | ■ *100%* <br> ☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(10)(A)* |
| ***Social Security: Social Security - Wife receives $778 per month (in pay status)*** <br> Line from *Schedule A/B*: **21.3** | *$1.00* | ■ *$1.00* <br> ☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(10)(A)* |
| ***Federal & State: Income tax refunds for tax year ending 2024 is Federal $438 and State $181*** <br> Line from *Schedule A/B*: **28.1** | *$619.00* | ■ *$619.00* <br> ☐ 100% of fair market value, up to any applicable statutory limit | *11 U.S.C. § 522(d)(5)* |

3. **Are you claiming a homestead exemption of more than $189,050?**
   (Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.)

   ■ No

   ☐ Yes. Did you acquire the property covered by the exemption within 1,215 days before you filed this case?

       ☐ No

       ☐ Yes

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| | First Name        Middle Name        Last Name |
| Debtor 2 | *Betty Corinne Krouse* |
| (Spouse if, filing) | First Name        Middle Name        Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *25-10027-CMB* |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property                    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1:    List All Secured Claims

**2. List all secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.  If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim | Column C Unsecured portion If any |
|---|---|---|---|

| 2.1 | *Elk County Tax Claim Bureau* | | | |
|---|---|---|---|---|

Creditor's Name

*ATTN: Bankruptcy*
*250 Main Street*
*PO Box 448*
*Ridgway, PA 15853*

Number, Street, City, State & Zip Code

**Describe the property that secures the claim:**

*4408 Wilcox Road Wilcox, PA 15870*
*Elk County*

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

Column A: **$1.00**
Column B: **$128,000.00**
Column C: **$1.00**

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a
community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)   *Real Estate Tax*

Date debt was incurred _____     Last 4 digits of account number _____

Official Form 106D                    **Schedule D: Creditors Who Have Claims Secured by Property**                    page 1 of 4

Debtor 1    *Karl William Krouse*
        First Name           Middle Name          Last Name

Case number (if known)  *25-10027-CMB*

Debtor 2    *Betty Corinne Krouse*
        First Name            Middle Name          Last Name

---

**2.2**  **Jones Township Municipal Authority** | Describe the property that secures the claim: | **$7,500.00** | **$128,000.00** | **$7,500.00**

Creditor's Name

**4408 Wilcox Road Wilcox, PA 15870
Elk County**

**ATTN: Bankruptcy Dept
PO Box 374
Wilcox, PA 15870**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
■ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    *Water & Sewer Lien*

Date debt was incurred    *2011-2024*        Last 4 digits of account number  _____

---

**2.3**  **M&T Bank** | Describe the property that secures the claim: | **$139,497.19** | **$128,000.00** | **$11,497.19**

Creditor's Name

**4408 Wilcox Road Wilcox, PA 15870
Elk County**

**ATTN: Bankruptcy Dept.
1 M&T Plaza
8th Floor
Buffalo, NY 14203**

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.

☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

■ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    *First Mortgage*

Date debt was incurred    _____        Last 4 digits of account number  _____

---

Add the dollar value of your entries in Column A on this page. Write that number here:  |  **$146,998.19**

If this is the last page of your form, add the dollar value totals from all pages. Write that number here:  |  **$146,998.19**

---

**Part 2:**  **List Others to Be Notified for a Debt That You Already Listed**

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

[  ]   Name, Number, Street, City, State & Zip Code

**Countrywide Home Loans
ATTN: Bankruptcy
1800 Tapo Canyon Rd
MS #SV-103
Simi Valley, CA 93063**

On which line in Part 1 did you enter the creditor?  *2.3*

Last 4 digits of account number  ___

---

| Debtor 1 | **Karl William Krouse** | | | Case number *(if known)* | **25-10027-CMB** |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | **Betty Corinne Krouse** | | | | |
| | First Name | Middle Name | Last Name | | |

---

[ ]   Name, Number, Street, City, State & Zip Code
**John R. Thomas, Esq.**
**PO Box 82**
**128 South Street**
**Ridgway, PA 15853**

On which line in Part 1 did you enter the creditor?  **2.2**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**Jones Township Municipal Authority**
**ATTN: Bankruptcy Dept**
**PO Box 25**
**Wilcox, PA 15870**

On which line in Part 1 did you enter the creditor?  **2.2**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**Jones Township Municipal Authority**
**ATTN: Bankruptcy Dept**
**320 Faries Street**
**Wilcox, PA 15870**

On which line in Part 1 did you enter the creditor?  **2.2**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**KML Law Group PC**
**Suite 5000, BNY Mellon Independence Ctr**
**701 Market Street**
**Suite #5000**
**Philadelphia, PA 19106**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**M&T Bank**
**ATTN: Bankruptcy/Legal Dept.**
**626 Commerce Drive**
**Buffalo, NY 14228**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**M&T Bank**
**ATTN: Bankruptcy Dept.**
**PO Box 1508**
**Buffalo, NY 14240**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**M&T Bank**
**ATTN: Bankruptcy**
**3 Fountain Plaza**
**Buffalo, NY 14203**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**MERS**
**ATTN: Bankruptcy Dept.**
**1901 Vorhees Street, Suite C**
**Danville, IL 61834**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

[ ]   Name, Number, Street, City, State & Zip Code
**MERS**
**ATTN: Bankruptcy**
**11819 Miami Street, Suite #100**
**Omaha, NE 68164**

On which line in Part 1 did you enter the creditor?  **2.3**

Last 4 digits of account number ___

---

| Debtor 1 | *Karl William Krouse* | | | Case number (if known) | *25-10027-CMB* |
|---|---|---|---|---|---|
| | First Name | Middle Name | Last Name | | |
| Debtor 2 | *Betty Corinne Krouse* | | | | |
| | First Name | Middle Name | Last Name | | |

[ ]

Name, Number, Street, City, State & Zip Code
*Thomas G. Wagner, Esq.*
*115 Lafayette Street*
*Saint Marys, PA 15857*

On which line in Part 1 did you enter the creditor?  *2.2*

Last 4 digits of account number ___

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| | First Name / Middle Name / Last Name |
| Debtor 2 | *Betty Corinne Krouse* |
| (Spouse if, filing) | First Name / Middle Name / Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | *25-10027-CMB* |

☐ Check if this is an amended filing

## Official Form 106E/F
## Schedule E/F: Creditors Who Have Unsecured Claims                    12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY claims and Part 2 for creditors with NONPRIORITY claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Property (Official Form 106A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 106G). Do not include any creditors with partially secured claims that are listed in Schedule D: Creditors Who Have Claims Secured by Property. If more space is needed, copy the Part you need, fill it out, number the entries in the boxes on the left. Attach the Continuation Page to this page. If you have no information to report in a Part, do not file that Part. On the top of any additional pages, write your name and case number (if known).

| Part 1: | List All of Your PRIORITY Unsecured Claims |
|---|---|

1.  **Do any creditors have priority unsecured claims against you?**

☐ No. Go to Part 2.

■ Yes.

2.  **List all of your priority unsecured claims.** If a creditor has more than one priority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. If a claim has both priority and nonpriority amounts, list that claim here and show both priority and nonpriority amounts. As much as possible, list the claims in alphabetical order according to the creditor's name. If you have more than two priority unsecured claims, fill out the Continuation Page of Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.

(For an explanation of each type of claim, see the instructions for this form in the instruction booklet.)

| | | Total claim | Priority amount | Nonpriority amount |
|---|---|---|---|---|

**2.1** *Elk County Tax Collector*

Priority Creditor's Name

*ATTN: Bankruptcy*
*PO Box 70*
*Wilcox, PA 15870*

Number Street City State Zip Code

Last 4 digits of account number ____     *$1.00*     *$0.00*     *$1.00*

When was the debt incurred? _____

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations

■ Taxes and certain other debts you owe the government

☐ Claims for death or personal injury while you were intoxicated

☐ Other. Specify _____

*Taxes*

Debtor 1   **Karl William Krouse**
Debtor 2   **Betty Corinne Krouse**

Case number (*if known*)   **25-10027-CMB**

---

| 2.2 | **Jones Township Tax Collector** | Last 4 digits of account number | | **$337.85** | **$257.85** | **$80.00** |
|---|---|---|---|---|---|---|

Priority Creditor's Name
**ATTN: Bankruptcy Dept**
**PO Box 70**
**Wilcox, PA 15870**
Number Street City State Zip Code

When was the debt incurred?   **2023-2024**

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of PRIORITY unsecured claim:**

☐ Domestic support obligations

■ Taxes and certain other debts you owe the government

☐ Claims for death or personal injury while you were intoxicated

☐ Other. Specify   **Per Capita 2023-2024**

---

**Part 2:    List All of Your NONPRIORITY Unsecured Claims**

3.   **Do any creditors have nonpriority unsecured claims against you?**

☐ No. You have nothing to report in this part. Submit this form to the court with your other schedules.

■ Yes.

4.   **List all of your nonpriority unsecured claims in the alphabetical order of the creditor who holds each claim.** If a creditor has more than one nonpriority unsecured claim, list the creditor separately for each claim. For each claim listed, identify what type of claim it is. Do not list claims already included in Part 1. If more than one creditor holds a particular claim, list the other creditors in Part 3.If you have more than three nonpriority unsecured claims fill out the Continuation Page of Part 2.

| | | | Total claim |
|---|---|---|---|

| 4.1 | **Affirm, Inc.** | Last 4 digits of account number | | **$317.00** |
|---|---|---|---|---|

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**650 California Street, Floor #12**
**San Francisco, CA 94108**
Number Street City State Zip Code

When was the debt incurred?   **2020-2024**

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify   **Credit Card Purchases**

---

Debtor 1  **Karl William Krouse**
Debtor 2  **Betty Corinne Krouse**

Case number (*if known*)    **25-10027-CMB**

---

| 4.2 | **Cavalry SPV I LLC** | Last 4 digits of account number | | $1.00 |
|---|---|---|---|---|

Nonpriority Creditor's Name
**ATTN: Bankruptcy Dept.**
**Suite 400**
**500 Summit Lake Drive**
**Valhalla, NY 10595**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify  *Debt Buyer of Chase Bank/WaMU and ACM Riverwalk IV B, LLC account - NOTICE ONLY AS DEBT IS PAST THE STATUTE OF LIMITATIONS*

---

| 4.3 | **David Newman** | Last 4 digits of account number | | $1.00 |
|---|---|---|---|---|

Nonpriority Creditor's Name
**9396 Route 949**
**Sigel, PA 15860**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**    *2013*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify  *Old debt from Krouse Salvage - NOTICE ONLY*

---

| 4.4 | **Dept of Veterans Affairs** | Last 4 digits of account number | | $1.00 |
|---|---|---|---|---|

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**PO Box 530269**
**Atlanta, GA 30353**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**When was the debt incurred?**    *2020-2024*

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify  *Medical*

---

Debtor 1  **Karl William Krouse**

Debtor 2  **Betty Corinne Krouse**

Case number (*if known*)    **25-10027-CMB**

---

| 4.5 | **ECMC** | Last 4 digits of account number _____ | $12,219.85 |
|---|---|---|---|

Nonpriority Creditor's Name

**ATTN: Bankruptcy**
**1 Imation Place**
**Oakdale, MN 55128-3421**

Number Street City State Zip Code

**When was the debt incurred?**    **1989-1991**

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

■ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

☐ Other. Specify    **Student Loan**

---

| 4.6 | **Elk County Regional Health Center** | Last 4 digits of account number _____ | $100.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**ATTN: Bankruptcy**
**769 Johnsonsburg Road**
**Saint Marys, PA 15857**

Number Street City State Zip Code

**When was the debt incurred?**    **2020-2024**

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Medical**

---

| 4.7 | **Fred Newman** | Last 4 digits of account number _____ | $1.00 |
|---|---|---|---|

Nonpriority Creditor's Name

**9396 Route 949**
**Sigel, PA 15860**

Number Street City State Zip Code

**When was the debt incurred?**    **2013**

**Who incurred the debt?** Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a  community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    **Old debt from Krouse Salvage - NOTICE ONLY**

---

Debtor 1   *Karl William Krouse*
Debtor 2   *Betty Corinne Krouse*

Case number *(if known)*   **25-10027-CMB**

---

| 4.8 | **Holiday Financial Services** | Last 4 digits of account number _____ | | $198.00 |

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**715 West 38th Street**
**Erie, PA 16508**

When was the debt incurred?   *2020-2024*

Number Street City State Zip Code

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Trade Debt*

**Is the claim subject to offset?**

■ No
☐ Yes

---

| 4.9 | **IRS** | Last 4 digits of account number _____ | | $9,605.00 |

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**1000 Liberty Avenue**
**M/S #711B**
**Pittsburgh, PA 15222**

When was the debt incurred?   *2008-2009*

Number Street City State Zip Code

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *old tax lien 2009-658*

**Is the claim subject to offset?**

■ No
☐ Yes

---

| 4.10 | **Kane Community Hospital** | Last 4 digits of account number _____ | | $100.00 |

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**4372 State Route 6**
**Kane, PA 16735**

When was the debt incurred?   *2020-2024*

Number Street City State Zip Code

**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Medical*

**Is the claim subject to offset?**

■ No
☐ Yes

---

Debtor 1    **Karl William Krouse**
Debtor 2    **Betty Corinne Krouse**

Case number *(if known)*    **25-10027-CMB**

---

| 4.1 1 | **Kenneth Seitz, Esq.** | Last 4 digits of account number | $1.00 |

Nonpriority Creditor's Name
**PO Box 211**
**Ligonier, PA 15658**

When was the debt incurred?    **2024-2025**

Number Street City State Zip Code
**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **legal fees foreclosure**

---

| 4.1 2 | **LVNV Funding LLC** | Last 4 digits of account number | $1,387.07 |

Nonpriority Creditor's Name
**15 S. Main Street**
**Suite 600**
**Greenville, SC 29601**

When was the debt incurred?    **2012-2013**

Number Street City State Zip Code
**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No
☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    **NOTICE ONLY**

---

| 4.1 3 | **LVNV Funding LLC** | Last 4 digits of account number | $1.00 |

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**2400 Ansys Drive, Suite 402B**
**Canonsburg, PA 15317**

When was the debt incurred?

Number Street City State Zip Code
**Who incurred the debt?** Check one.

As of the date you file, the claim is: Check all that apply

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**
■ No

☐ Yes

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify    *Debt Buyer of Credit One Bank, NA and MHC Receivables, LLC account -- NOTICE ONLY. DEBT IS PAST THE STATUTE OF LIMITATIONS*

---

Debtor 1   **Karl William Krouse**
Debtor 2   **Betty Corinne Krouse**

Case number (if known)   **25-10027-CMB**

---

| 4.1<br>4 | **Portfolio Recovery Associates Inc.** | Last 4 digits of account number _____ | **$328.64** |

Nonpriority Creditor's Name
**ATTN: Bankruptcy Dept.**
**P.O. Box 12914**
**Norfolk, VA 23541**

When was the debt incurred?   **2020-2023**

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Debt Buyer of Syncb/Amazon Account**

---

| 4.1<br>5 | **Portfolio Recovery Associates Inc.** | Last 4 digits of account number _____ | **$12,350.28** |

Nonpriority Creditor's Name
**ATTN: Bankruptcy Dept.**
**P.O. Box 12914**
**Norfolk, VA 23541**

When was the debt incurred?   _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Buyer of OneMain Financial Debt**

---

| 4.1<br>6 | **Portfolio Recovery Associates Inc.** | Last 4 digits of account number _____ | **$6,675.30** |

Nonpriority Creditor's Name
**ATTN: Bankruptcy Dept.**
**P.O. Box 12914**
**Norfolk, VA 23541**

When was the debt incurred?   _____

Number Street City State Zip Code

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   **Debt Buyer of OneMain Financial**

---

Debtor 1    *Karl William Krouse*
Debtor 2    *Betty Corinne Krouse*

Case number (if known)    *25-10027-CMB*

---

**4.17**

**Progressive Insurance**
Nonpriority Creditor's Name

**ATTN: Bankruptcy Dept.**
**6300 Wilson Mills Road**
**Cleveland, OH 44143**
Number Street City State Zip Code

Who incurred the debt? Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

Last 4 digits of account number _____    $194.00

When was the debt incurred?    *2020-2024*

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    *Trade Debt*

---

**4.18**

**SYNCB/Harbor Freight**
Nonpriority Creditor's Name

**ATTN: Bankruptcy**
**PO Box 965060**
**Orlando, FL 32896**
Number Street City State Zip Code

Who incurred the debt? Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

Last 4 digits of account number _____    $318.85

When was the debt incurred?    *2020-2024*

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    *Credit Card Purchases*

---

**4.19**

**UPMC**
Nonpriority Creditor's Name

**ATTN: Bankruptcy**
**Room 386**
**2 Hot Metal Street**
**Pittsburgh, PA 15203**
Number Street City State Zip Code

Who incurred the debt? Check one.

☐ Debtor 1 only

☐ Debtor 2 only

■ Debtor 1 and Debtor 2 only

☐ At least one of the debtors and another

☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No

☐ Yes

Last 4 digits of account number _____    $200.00

When was the debt incurred?    *2020-2024*

As of the date you file, the claim is: Check all that apply

☐ Contingent

☐ Unliquidated

☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans

☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims

☐ Debts to pension or profit-sharing plans, and other similar debts

■ Other. Specify    *Medical*

---

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* | *25-10027-CMB* |

---

**4.20**

**UPMC Community Medicine**
Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**2060 North Pearl Street**
**North East, PA 16428**
Number Street City State Zip Code
**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____          **$144.60**

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Medical*

---

**4.21**

**UPMC Physicians Services**
Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**PO Box 1123**
**Minneapolis, MN 55440**
Number Street City State Zip Code
**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____          **$0.00**

When was the debt incurred?   *2020-2024*

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Medical*

---

**4.22**

**Verizon**
Nonpriority Creditor's Name
**500 Technology Drive**
**Suite 30**
**Weldon Springs, MO 63304**
Number Street City State Zip Code
**Who incurred the debt? Check one.**

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**
**Is the claim subject to offset?**
■ No
☐ Yes

Last 4 digits of account number _____          **$61.61**

When was the debt incurred? _____

As of the date you file, the claim is: Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed
**Type of NONPRIORITY unsecured claim:**
☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
■ Other. Specify   *Cell Phone*

---

| Debtor 1 | **Karl William Krouse** |
| Debtor 2 | **Betty Corinne Krouse** |

Case number *(if known)*  **25-10027-CMB**

---

**4.2 3**

| **West Penn Power** | Last 4 digits of account number | **$5,212.53** |

Nonpriority Creditor's Name
**ATTN: Bankruptcy**
**5001 NASA Blvd.**
**Fairmont, WV 26554**
Number Street City State Zip Code

When was the debt incurred?  **2020-2024**

**Who incurred the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
■ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ **Check if this claim is for a community debt**

**Is the claim subject to offset?**

■ No
☐ Yes

**As of the date you file, the claim is:** Check all that apply

☐ Contingent
☐ Unliquidated
☐ Disputed

**Type of NONPRIORITY unsecured claim:**

☐ Student loans
☐ Obligations arising out of a separation agreement or divorce that you did not report as priority claims
☐ Debts to pension or profit-sharing plans, and other similar debts
☐ Other. Specify  **Utility**

---

**Part 3:**   List Others to Be Notified About a Debt That You Already Listed

5. Use this page only if you have others to be notified about your bankruptcy, for a debt that you already listed in Parts 1 or 2. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the original creditor in Parts 1 or 2, then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Parts 1 or 2, list the additional creditors here. If you do not have additional persons to be notified for any debts in Parts 1 or 2, do not fill out or submit this page.

Name and Address
**Attorney General of Pennsylvania**
**Western Regional Office**
**1251 Waterfont Place**
**Mezzanine Level**
**Pittsburgh, PA 15222**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.9** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Attorney General of the United States**
**U.S. Dept. of Justice**
**950 Pennsylvania Avenue, N.W.**
**Washington, DC 20530-0001**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.9** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Cavalry SPV I LLC**
**ATTN: Bankruptcy**
**PO Box 27288**
**Tempe, AZ 85282**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.2** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Cavalry SPV I LLC**
**c/o CT Corporation System, Stat. Agent**
**ATTN: Bankruptcy Dept.**
**1200 South Pine Island Road**
**Fort Lauderdale, FL 33324**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.2** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address
**Cavalry SPV I LLC**
**ATTN: Bankruptcy**
**1 American Lane, Suite #220**
**Greenwich, CT 06831**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.2** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

Name and Address

On which entry in Part 1 or Part 2 did you list the original creditor?

Debtor 1  *Karl William Krouse*
Debtor 2  *Betty Corinne Krouse*

Case number (*if known*)  **25-10027-CMB**

---

*Chase Bank NA/WAMU*
*ATTN: Bankruptcy*
*P.O. Box 15123*
*Wilmington, DE 19850-5123*

Line **4.2** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Chase Bank, NA/WAMU*
*ATTN: Bankruptcy*
*301 North Walnut Street, Floor #9*
*Wilmington, DE 19801*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.2** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Credit Collection Service*
*725 Canton Street*
*Norwood, MA 02062*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.17** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Credit Collection Service*
*ATTN: Bankruptcy*
*PO Box 607*
*Norwood, MA 02062*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.17** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Dept of Education/Nelnet*
*ATTN: Bankruptcy*
*PO Box 173904*
*Denver, CO 80217*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Dept. of Education*
*Fed Loan Servicing*
*P.O. Box 530210*
*Atlanta, GA 30353-0210*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Dept. of Education*
*Fed Loan Servicing*
*P.O. Box 530210*
*Atlanta, GA 30353-0210*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Dept. of Education/Advantage*
*ATTN: Bankruptcy*
*PO Box 9635*
*Wilkes Barre, PA 18773*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Dept. of Education/Aidvantage*
*ATTN: Bankruptcy*
*PO Box 4450*
*Portland, OR 97208*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
*Dept. of Education/Aidvantage*
*ATTN: Bankruptcy*
*1600 Tyson Boulevard*
*Greenville, TX 75403*

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (*Check one*):

☐ Part 1: Creditors with Priority Unsecured Claims
☒ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

2/04/25 12:42PM

Debtor 1  **Karl William Krouse**
Debtor 2  **Betty Corinne Krouse**

Case number (if known)   **25-10027-CMB**

---

Name and Address
**Dept. of Education/Navient
ATTN: Bankruptcy
P.O. Box 9635
Wilkes Barre, PA 18773**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Dept. of Education/Navient
ATTN: Bankruptcy
PO Box 4450
Portland, OR 97208**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Educational Credit Management
Corp.
ATTN: Bankruptcy
PO Box 16408
Saint Paul, MN 55116**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.5** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Internal Revenue Service
ATTN: Centralized Insolvency
Operations
P.O. Box 7346
Philadelphia, PA 19101-7346**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.9** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC
15 S. Main Street
Suite 600
Greenville, SC 29601**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC
ATTN: Bankruptcy
2400 Ansys Drive, Suite 402B
Canonsburg, PA 15317**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC
ATTN:  Bankruptcy
Suite 600
15 S. Main Street
Greenville, SC 29601**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC
P.O. Box 10497
Greenville, SC 29603**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC
ATTN: Bankruptcy
P.O. Box 1269
Greenville, SC 29602**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC
ATTN: Bankruptcy Dept.**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims

| Debtor 1 | **Karl William Krouse** | | |
|---|---|---|---|
| Debtor 2 | **Betty Corinne Krouse** | | |

Case number (*if known*)    **25-10027-CMB**

**355 South Main Street, Suite #300-D**
**Greenville, SC 29601**

☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC**
**ATTN: Bankruptcy**
**2400 Ansys Drive, Suite 402B**
**Canonsburg, PA 15317**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC**
**200 Meeting Street**
**Suite 206**
**Charlestown, SC 29401-3187**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**LVNV Funding LLC**
**ATTN:  Bankruptcy**
**Suite 600**
**15 S. Main Street**
**Greenville, SC 29601**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Michael Ratchford, Esq.**
**Ratchford Law Group PC**
**54 Glenmaura National Blvd, Suite #104**
**Moosic, PA 18507**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**OneMain**
**ATTN: Bankruptcy**
**100 International Drive, 15th Floor**
**Baltimore, MD 21202**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.15** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**OneMain Financial**
**ATTN: Bankruptcy**
**6801 Colwell Blvd.**
**Irving, TX 75039**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.15** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**OneMain Financial**
**ATTN: Bankruptcy**
**601 N.W. Second Street**
**Evansville, IN 47708**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.15** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Portfolio Recovery Associates LLC**
**ATTN: Bankruptcy Dept**
**P.O. Box 41067**
**Norfolk, VA 23541**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.15** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Portfolio Recovery Associates, Inc.**
**Riverside Commerce Center**
**120 Corporate Blvd.**
**Norfolk, VA 23502-4962**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.14** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number (*if known*) | ***25-10027-CMB*** |

---

**Name and Address**
***Portfolio Recovery Associates, Inc.***
***ATTN: Bankruptcy Dept.***
***120 Corporate Blvd.***
***Riverside Commerce Center***
***Norfolk, VA 23502-4962***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.14** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Portfolio Recovery Associates, Inc.***
***ATTN: Bankruptcy***
***150 Corporate Blvd.***
***Norfolk, VA 23502-4962***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.15** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***PRA Receivables Management, LLC***
***ATTN: Bankruptcy***
***130 Corporate Boulevard***
***Norfolk, VA 23502***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.14** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***PRA Receivables Management, LLC***
***ATTN: Akera Smith, Bankruptcy***
***Dept***
***P.O. Box 41067***
***Norfolk, VA 23541***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.14** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Progressive Insurance***
***ATTN: Bankruptcy***
***5920 Landerbrook Drive***
***Cleveland, OH 44124***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.17** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Progressive Insurance***
***ATTN: Bankruptcy***
***PO Box 6807***
***Cleveland, OH 44101***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.17** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Ratchford Law Group***
***54 Glenmaura National Blvd.***
***Suite #104***
***Moosic, PA 18507***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Ratchford Law Group , PC***
***409 Lackawanna Avenue, Suite #320***
***Scranton, PA 18503***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.12** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Resurgent Acquisitions***
***ATTN: Bankruptcy***
***6801 South Cimarron Street 424 N***
***Las Vegas, NV 89113***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims
■ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

**Name and Address**
***Resurgent Capital Services***
***ATTN: Bankruptcy***

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (*Check one*):
☐ Part 1: Creditors with Priority Unsecured Claims

---

Debtor 1  **Karl William Krouse**

Debtor 2  **Betty Corinne Krouse**

Case number (if known)  **25-10027-CMB**

**55 Beattie Place, Suite #110**
**MS #276**
**Greenville, SC 29601**

☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Resurgent Capital Services**
**ATTN: Bankruptcy**
**PO Box 10587**
**Greenville, SC 29603**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.18** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**SYNCB/Amazon**
**ATTN: Bankruptcy**
**PO Box 965015**
**Orlando, FL 32896**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.14** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**United States of America**
**ATTN: IRS - Bankruptcy Dept.**
**700 Grant Street, Suite #4000**
**Pittsburgh, PA 15219**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.9** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**UPMC**
**Attn: Bankruptcy**
**200 Lothro Street**
**Pittsburgh, PA 15213**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.20** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**UPMC**
**ATTN: Bankruptcy**
**Room 386**
**2 Hot Metal Street**
**Pittsburgh, PA 15203**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.20** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**UPMC Community Medicine**
**ATTN: Bankruptcy**
**PO Box 1123**
**Minneapolis, MN 55440**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.20** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**UPMC Physicians Services**
**ATTN: Bankruptcy Dept.**
**P.O. Box 371980**
**Pittsburgh, PA 15250-7980**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.21** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**UPMC Physicians Services**
**ATTN: Bankruptcy**
**201 State Street**
**Erie, PA 16550**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.21** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

Last 4 digits of account number

---

Name and Address
**Verizon**
**by American InfoSource LP as**
**agent**
**P.O. Box 248838**

On which entry in Part 1 or Part 2 did you list the original creditor?
Line **4.22** of (Check one):
☐ Part 1: Creditors with Priority Unsecured Claims
☑ Part 2: Creditors with Nonpriority Unsecured Claims

---

Debtor 1  **Karl William Krouse**
Debtor 2  **Betty Corinne Krouse**

Case number (if known)  **25-10027-CMB**

**Oklahoma City, OK 73124-8838**

Last 4 digits of account number

| | |
|---|---|
| Name and Address<br>**Verizon**<br>**ATTN: Bankruptcy**<br>**401 South High Street, 2nd Floor**<br>**West Chester, PA 19383** | On which entry in Part 1 or Part 2 did you list the original creditor?<br>Line **4.22** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

| | |
|---|---|
| Name and Address<br>**Verizon Wireless**<br>**Bankruptcy Administration**<br>**500 Technology Drive**<br>**Suite 550**<br>**Weldon Spring, MO 63304** | On which entry in Part 1 or Part 2 did you list the original creditor?<br>Line **4.22** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

| | |
|---|---|
| Name and Address<br>**Verizon Wireless**<br>**ATTN: Bankruptcy**<br>**5 Foster Brook Blvd.**<br>**Bradford, PA 16701** | On which entry in Part 1 or Part 2 did you list the original creditor?<br>Line **4.22** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

| | |
|---|---|
| Name and Address<br>**Verizon Wireless**<br>**by American Infosource as agent**<br>**PO Box 4457**<br>**Houston, TX 77210** | On which entry in Part 1 or Part 2 did you list the original creditor?<br>Line **4.22** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

| | |
|---|---|
| Name and Address<br>**West Penn Power/First Energy**<br>**ATTN: Bankruptcy Department**<br>**6896 Miller Road**<br>**Brecksville, OH 44141** | On which entry in Part 1 or Part 2 did you list the original creditor?<br>Line **4.23** of (Check one):<br>☐ Part 1: Creditors with Priority Unsecured Claims<br>■ Part 2: Creditors with Nonpriority Unsecured Claims |

Last 4 digits of account number

**Part 4:    Add the Amounts for Each Type of Unsecured Claim**

6.  **Total the amounts of certain types of unsecured claims. This information is for statistical reporting purposes only. 28 U.S.C. §159. Add the amounts for each type of unsecured claim.**

| | | | | Total Claim |
|---|---|---|---|---|
| Total claims from Part 1 | 6a. | **Domestic support obligations** | 6a. | $ 0.00 |
| | 6b. | **Taxes and certain other debts you owe the government** | 6b. | $ 338.85 |
| | 6c. | **Claims for death or personal injury while you were intoxicated** | 6c. | $ 0.00 |
| | 6d. | **Other.** Add all other priority unsecured claims. Write that amount here. | 6d. | $ 0.00 |
| | 6e. | **Total Priority.** Add lines 6a through 6d. | 6e. | $ 338.85 |

| | | | | Total Claim |
|---|---|---|---|---|
| Total claims from Part 2 | 6f. | **Student loans** | 6f. | $ 12,219.85 |
| | 6g. | **Obligations arising out of a separation agreement or divorce that you did not report as priority claims** | 6g. | $ 0.00 |
| | 6h. | **Debts to pension or profit-sharing plans, and other similar debts** | 6h. | $ 0.00 |
| | 6i. | **Other.** Add all other nonpriority unsecured claims. Write that amount here. | 6i. | $ 37,198.88 |
| | 6j. | **Total Nonpriority.** Add lines 6f through 6i. | 6j. | $ 49,418.73 |

2/04/25 12:42PM

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| | First Name              Middle Name                    Last Name |
| Debtor 2 | *Betty Corinne Krouse* |
| (Spouse if, filing) | First Name              Middle Name                    Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *25-10027-CMB* |
| (if known) | |

☐ Check if this is an
amended filing

## Official Form 106G
## Schedule G: Executory Contracts and Unexpired Leases    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the additional page, fill it out, number the entries, and attach it to this page. On the top of any additional pages, write your name and case number (if known).

1.  **Do you have any executory contracts or unexpired leases?**
    ☐ No. Check this box and file this form with the court with your other schedules.  You have nothing else to report on this form.
    ■ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B:Property* (Official Form 106 A/B).

2.  **List separately each person or company with whom you have the contract or lease. Then state what each contract or lease is for (for example, rent, vehicle lease, cell phone).** See the instructions for this form in the instruction booklet for more examples of executory contracts and unexpired leases.

| Person or company with whom you have the contract or lease<br>Name, Number, Street, City, State and ZIP Code | State what the contract or lease is for |
|---|---|
| 2.1  *Peter & Shirley Biel*<br>*4408 Wilcox Road*<br>*Wilcox, PA 15870* | *Boundary Agreement* |

**Fill in this information to identify your case:**

| | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| | First Name    Middle Name    Last Name |
| Debtor 2 | *Betty Corinne Krouse* |
| (Spouse if, filing) | First Name    Middle Name    Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | *25-10027-CMB* |

☐ Check if this is an amended filing

# Official Form 106H
# Schedule H: Your Codebtors                                      12/15

Codebtors are people or entities who are also liable for any debts you may have. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, and number the entries in the boxes on the left. Attach the Additional Page to this page. On the top of any Additional Pages, write your name and case number (if known). Answer every question.

**1. Do you have any codebtors?** (If you are filing a joint case, do not list either spouse as a codebtor.)

■ No
☐ Yes

**2. Within the last 8 years, have you lived in a community property state or territory?** (*Community property states and territories include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, and Wisconsin.*)

■ No. Go to line 3.
☐ Yes. Did your spouse, former spouse, or legal equivalent live with you at the time?

**3. In Column 1, list all of your codebtors. Do not include your spouse as a codebtor if your spouse is filing with you. List the person shown in line 2 again as a codebtor only if that person is a guarantor or cosigner. Make sure you have listed the creditor on Schedule D (Official Form 106D), Schedule E/F (Official Form 106E/F), or Schedule G (Official Form 106G). Use Schedule D, Schedule E/F, or Schedule G to fill out Column 2.**

| *Column 1:* **Your codebtor** Name, Number, Street, City, State and ZIP Code | *Column 2:* **The creditor to whom you owe the debt** Check all schedules that apply: |
|---|---|
| **3.1** _____ <br> Name _____ <br> <br> Number    Street <br> City        State        ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |
| **3.2** _____ <br> Name _____ <br> <br> Number    Street <br> City        State        ZIP Code | ☐ Schedule D, line _____ <br> ☐ Schedule E/F, line _____ <br> ☐ Schedule G, line _____ |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| Debtor 2 (Spouse, if filing) | *Betty Corinne Krouse* |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (If known) | *25-10027-CMB* |

Check if this is:

☐ An amended filing

☐ A supplement showing postpetition chapter 13 income as of the following date:
_____
MM / DD / YYYY

## Official Form 106I

## Schedule I: Your Income                                                      12/15

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

### Part 1:      Describe Employment

1. **Fill in your employment information.**

   If you have more than one job, attach a separate page with information about additional employers.

   Include part-time, seasonal, or self-employed work.

   Occupation may include student or homemaker, if it applies.

| | | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Employment status | ■ Employed<br>☐ Not employed | ■ Employed<br>☐ Not employed |
| | Occupation | *Customer Service* | *Disabled* |
| | Employer's name | *Kwik Fill* | |
| | Employer's address | *c/o United Refining Company*<br>*15 Bradley Street*<br>*Warren, PA 16365* | |
| | How long employed there? | *5 years* | |

### Part 2:      Give Details About Monthly Income

Estimate monthly income as of the date you file this form. If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|---|
| 2. | List monthly gross wages, salary, and commissions (before all payroll deductions).  If not paid monthly, calculate what the monthly wage would be. | 2. | $ *477.88* | $ *0.00* |
| 3. | Estimate and list monthly overtime pay. | 3. | +$ *0.00* | +$ *0.00* |
| 4. | Calculate gross income.  Add line 2 + line 3. | 4. | $ *477.88* | $ *0.00* |

| | | | |
|---|---|---|---|
| Debtor 1 | **Karl William Krouse** | | |
| Debtor 2 | **Betty Corinne Krouse** | Case number *(if known)* | **25-10027-CMB** |

| | | | **For Debtor 1** | **For Debtor 2 or non-filing spouse** |
|---|---|---|---|---|
| | **Copy line 4 here** | 4. | $ *477.88* | $ *0.00* |
| 5. | **List all payroll deductions:** | | | |
| | 5a. **Tax, Medicare, and Social Security deductions** | 5a. | $ *60.68* | $ *0.00* |
| | 5b. **Mandatory contributions for retirement plans** | 5b. | $ *0.00* | $ *0.00* |
| | 5c. **Voluntary contributions for retirement plans** | 5c. | $ *14.14* | $ *0.00* |
| | 5d. **Required repayments of retirement fund loans** | 5d. | $ *0.00* | $ *0.00* |
| | 5e. **Insurance** | 5e. | $ *0.00* | $ *0.00* |
| | 5f. **Domestic support obligations** | 5f. | $ *0.00* | $ *0.00* |
| | 5g. **Union dues** | 5g. | $ *0.00* | $ *0.00* |
| | 5h. **Other deductions.** Specify: | 5h.+ | $ *0.00* + | $ *0.00* |
| 6. | **Add the payroll deductions.** Add lines 5a+5b+5c+5d+5e+5f+5g+5h. | 6. | $ *74.82* | $ *0.00* |
| 7. | **Calculate total monthly take-home pay.** Subtract line 6 from line 4. | 7. | $ *403.06* | $ *0.00* |
| 8. | **List all other income regularly received:** | | | |
| | 8a. **Net income from rental property and from operating a business, profession, or farm** <br>Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | 8a. | $ *0.00* | $ *0.00* |
| | 8b. **Interest and dividends** | 8b. | $ *0.00* | $ *0.00* |
| | 8c. **Family support payments that you, a non-filing spouse, or a dependent regularly receive** <br>Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | 8c. | $ *0.00* | $ *0.00* |
| | 8d. **Unemployment compensation** | 8d. | $ *0.00* | $ *0.00* |
| | 8e. **Social Security** | 8e. | $ *0.00* | $ *0.00* |
| | 8f. **Other government assistance that you regularly receive** <br>Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. <br>Specify: | 8f. | $ *0.00* | $ *0.00* |
| | 8g. **Pension or retirement income** | 8g. | $ *1,025.00* | $ *778.00* |
| | 8h. **Other monthly income.** Specify: | 8h.+ | $ *0.00* + | $ *0.00* |
| 9. | **Add all other income.** Add lines 8a+8b+8c+8d+8e+8f+8g+8h. | 9. | $ *1,025.00* | $ *778.00* |
| 10. | **Calculate monthly income.** Add line 7 + line 9. <br>Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | 10. | $ *1,428.06* + $ *778.00* = | $ *2,206.06* |

11. **State all other regular contributions to the expenses that you list in *Schedule J.***
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.
Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in *Schedule J.*
Specify:

11. +$ *0.00*

12. **Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income.
Write that amount on the *Summary of Schedules* and *Statistical Summary of Certain Liabilities* and Related *Data*, if it applies

12. $ *2,206.06*

**Combined monthly income**

13. **Do you expect an increase or decrease within the year after you file this form?**

■ No.

☐ Yes. Explain: | *Debtor Husband works part-time at Kwik Fill.  He averaged $477.88 gross per month for the past 6 months.* |

Fill in this information to identify your case:

| | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| Debtor 2 (Spouse, if filing) | *Betty Corinne Krouse* |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (If known) | *25-10027-CMB* |

Check if this is:

☐ An amended filing
☐ A supplement showing postpetition chapter 13 expenses as of the following date:

_____
MM / DD / YYYY

## Official Form 106J
## Schedule J: Your Expenses                                                                   12/15

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

### Part 1:    Describe Your Household

1.  **Is this a joint case?**

    ☐ No. Go to line 2.

    ☑ Yes. **Does Debtor 2 live in a separate household?**

        ☑ No
        ☐ Yes. Debtor 2 must file Official Form 106J-2, *Expenses for Separate Household* of Debtor 2.

2.  **Do you have dependents?**    ☑ No

    Do not list Debtor 1 and Debtor 2.    ☐ Yes.    Fill out this information for each dependent..............

    Do not state the dependents names.

| | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
|---|---|---|---|
| | _____ | _____ | ☐ No ☐ Yes |
| | _____ | _____ | ☐ No ☐ Yes |
| | _____ | _____ | ☐ No ☐ Yes |
| | _____ | _____ | ☐ No ☐ Yes |

3.  **Do your expenses include expenses of people other than yourself and your dependents?**    ☑ No    ☐ Yes

### Part 2:    Estimate Your Ongoing Monthly Expenses

**Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case to report expenses as of a date after the bankruptcy is filed. If this is a supplemental *Schedule J*, check the box at the top of the form and fill in the applicable date.**

Include expenses paid for with non-cash government assistance if you know the value of such assistance and have included it on *Schedule I: Your Income* (Official Form 106I.)

| | Your expenses |
|---|---|

4.  **The rental or home ownership expenses for your residence.** Include first mortgage payments and any rent for the ground or lot.    4. $ _____ *870.00*

    **If not included in line 4:**

    4a.    Real estate taxes    4a. $ _____ *0.00*
    4b.    Property, homeowner's, or renter's insurance    4b. $ _____ *0.00*
    4c.    Home maintenance, repair, and upkeep expenses    4c. $ _____ *45.00*
    4d.    Homeowner's association or condominium dues    4d. $ _____ *0.00*
5.  **Additional mortgage payments for your residence,** such as home equity loans    5. $ _____ *0.00*

Debtor 1   *Karl William Krouse*
Debtor 2   *Betty Corinne Krouse*                                   Case number (if known)   **25-10027-CMB**

| | | | | |
|---|---|---|---|---|
| 6. | **Utilities:** | | | |
| | 6a. Electricity, heat, natural gas | 6a. | $ | *200.00* |
| | 6b. Water, sewer, garbage collection | 6b. | $ | *95.00* |
| | 6c. Telephone, cell phone, Internet, satellite, and cable services | 6c. | $ | *215.00* |
| | 6d. Other. Specify: | 6d. | $ | *0.00* |
| 7. | **Food and housekeeping supplies** | 7. | $ | *800.00* |
| 8. | **Childcare and children's education costs** | 8. | $ | *0.00* |
| 9. | **Clothing, laundry, and dry cleaning** | 9. | $ | *40.00* |
| 10. | **Personal care products and services** | 10. | $ | *40.00* |
| 11. | **Medical and dental expenses** | 11. | $ | *30.00* |
| 12. | **Transportation.** Include gas, maintenance, bus or train fare. Do not include car payments. | 12. | $ | *140.00* |
| 13. | **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | $ | *10.00* |
| 14. | **Charitable contributions and religious donations** | 14. | $ | *5.00* |
| 15. | **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | | |
| | 15a. Life insurance | 15a. | $ | *0.00* |
| | 15b. Health insurance | 15b. | $ | *0.00* |
| | 15c. Vehicle insurance | 15c. | $ | *78.00* |
| | 15d. Other insurance. Specify: | 15d. | $ | *0.00* |
| 16. | **Taxes.** Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: | 16. | $ | *0.00* |
| 17. | **Installment or lease payments:** | | | |
| | 17a. Car payments for Vehicle 1 | 17a. | $ | *0.00* |
| | 17b. Car payments for Vehicle 2 | 17b. | $ | *0.00* |
| | 17c. Other. Specify: | 17c. | $ | *0.00* |
| | 17d. Other. Specify: | 17d. | $ | *0.00* |
| 18. | **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, *Schedule I, Your Income* (Official Form 106I).** | 18. | $ | *0.00* |
| 19. | **Other payments you make to support others who do not live with you.** Specify: | 19. | $ | *0.00* |
| 20. | **Other real property expenses not included in lines 4 or 5 of this form or on *Schedule I: Your Income.*** | | | |
| | 20a. Mortgages on other property | 20a. | $ | *0.00* |
| | 20b. Real estate taxes | 20b. | $ | *0.00* |
| | 20c. Property, homeowner's, or renter's insurance | 20c. | $ | *0.00* |
| | 20d. Maintenance, repair, and upkeep expenses | 20d. | $ | *0.00* |
| | 20e. Homeowner's association or condominium dues | 20e. | $ | *0.00* |
| 21. | **Other:** Specify: *Tobaccco* | 21. | +$ | *275.00* |
| | *Pets (preventative, food, vet, etc.)* | | +$ | *100.00* |

| | | | | |
|---|---|---|---|---|
| 22. | **Calculate your monthly expenses** | | | |
| | 22a. Add lines 4 through 21. | | $ | *2,943.00* |
| | 22b. Copy line 22 (monthly expenses for Debtor 2), if any, from Official Form 106J-2 | | $ | |
| | 22c. Add line 22a and 22b. The result is your monthly expenses. | | $ | *2,943.00* |
| 23. | **Calculate your monthly net income.** | | | |
| | 23a. Copy line 12 *(your combined monthly income)* from Schedule I. | 23a. | $ | *2,206.06* |
| | 23b. Copy your monthly expenses from line 22c above. | 23b. | -$ | *2,943.00* |
| | 23c. Subtract your monthly expenses from your monthly income. The result is your *monthly net income.* | 23c. | $ | *-736.94* |

24. **Do you expect an increase or decrease in your expenses within the year after you file this form?**
For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

■ No.
☐ Yes.     Explain here:

<table>
<tr><td colspan="3"><strong>Fill in this information to identify your case:</strong></td></tr>
</table>

| | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| | First Name            Middle Name            Last Name |
| Debtor 2 | *Betty Corinne Krouse* |
| (Spouse if, filing) | First Name            Middle Name            Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number (if known) | *25-10027-CMB* |

☐ Check if this is an amended filing

## Official Form 106Dec
# Declaration About an Individual Debtor's Schedules

12/15

**If two married people are filing together, both are equally responsible for supplying correct information.**

**You must file this form whenever you file bankruptcy schedules or amended schedules. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Sign Below

**Did you pay or agree to pay someone who is NOT an attorney to help you fill out bankruptcy forms?**

■ No

☐ Yes.  Name of person _____  Attach *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119)

**Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct.**

X */s/ Karl William Krouse*                         X */s/ Betty Corinne Krouse*
*Karl William Krouse*                                  *Betty Corinne Krouse*
Signature of Debtor 1                                  Signature of Debtor 2

Date  *February  4, 2025*                          Date  *February  4, 2025*

| Fill in this information to identify your case: | |
|---|---|
| Debtor 1 | *Karl William Krouse* |
| | First Name            Middle Name            Last Name |
| Debtor 2 | *Betty Corinne Krouse* |
| (Spouse if, filing) | First Name            Middle Name            Last Name |
| United States Bankruptcy Court for the: | WESTERN DISTRICT OF PENNSYLVANIA |
| Case number | *25-10027-CMB* |
| (if known) | |

☐ Check if this is an amended filing

## Official Form 107
## Statement of Financial Affairs for Individuals Filing for Bankruptcy                    04/22

**Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.**

### Part 1:    Give Details About Your Marital Status and Where You Lived Before

**1.    What is your current marital status?**

■ Married
☐ Not married

**2.    During the last 3 years, have you lived anywhere other than where you live now?**

■ No
☐ Yes. List all of the places you lived in the last 3 years. Do not include where you live now.

| Debtor 1: | Dates Debtor 1 lived there | Debtor 2 Prior Address: | Dates Debtor 2 lived there |
|---|---|---|---|
| | | | |

**3.    Within the last 8 years, did you ever live with a spouse or legal equivalent in a community property state or territory?** (*Community property states and territories* include Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington and Wisconsin.)

■ No
☐ Yes. Make sure you fill out *Schedule H: Your Codebtors* (Official Form 106H).

### Part 2    Explain the Sources of Your Income

**4.    Did you have any income from employment or from operating a business during this year or the two previous calendar years?**
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities.
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | ■ Wages, commissions, bonuses, tips | *$477.00* | ☐ Wages, commissions, bonuses, tips | *$0.00* |
| | ☐ Operating a business | | ☐ Operating a business | |

| Debtor 1 | *Karl William Krouse* | | | |
|---|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | | Case number *(if known)* | **25-10027-CMB** |

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) | **Sources of income** Check all that apply. | **Gross income** (before deductions and exclusions) |
| **For last calendar year:** (January 1 to December 31, 2024 ) | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | *$5,724.00* | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | *$0.00* |
| **For the calendar year before that:** (January 1 to December 31, 2023 ) | ■ Wages, commissions, bonuses, tips<br>☐ Operating a business | *$5,724.00* | ☐ Wages, commissions, bonuses, tips<br>☐ Operating a business | *$0.00* |

5.  **Did you receive any other income during this year or the two previous calendar years?**
Include income regardless of whether that income is taxable. Examples of *other income* are alimony; child support; Social Security, unemployment, and other public benefit payments; pensions; rental income; interest; dividends; money collected from lawsuits; royalties; and gambling and lottery winnings. If you are filing a joint case and you have income that you received together, list it only once under Debtor 1.

List each source and the gross income from each source separately. Do not include income that you listed in line 4.

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income** Describe below. | **Gross income from each source** (before deductions and exclusions) | **Sources of income** Describe below. | **Gross income** (before deductions and exclusions) |
| **From January 1 of current year until the date you filed for bankruptcy:** | *Social Security Benefits* | *$1,025.00* | *Social Security Benefits* | *$778.00* |
| **For last calendar year:** (January 1 to December 31, 2024 ) | *Social Security Benefits* | *$12,300.00* | *Social Security Benefits* | *$9,336.00* |
| **For the calendar year before that:** (January 1 to December 31, 2023 ) | *Social Security Benefits* | *$12,300.00* | *Social Security Benefits* | *$9,336.00* |

**Part 3:    List Certain Payments You Made Before You Filed for Bankruptcy**

6.  **Are either Debtor 1's or Debtor 2's debts primarily consumer debts?**

☐ No.  **Neither Debtor 1 nor Debtor 2 has primarily consumer debts.** *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $7,575* or more?

☐ No.    Go to line 7.

☐ Yes    List below each creditor to whom you paid a total of $7,575* or more in one or more payments and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.
* Subject to adjustment on 4/01/25 and every 3 years after that for cases filed on or after the date of adjustment.

■ Yes.  **Debtor 1 or Debtor 2 or both have primarily consumer debts.**

During the 90 days before you filed for bankruptcy, did you pay any creditor a total of $600 or more?

■ No.    Go to line 7.

☐ Yes    List below each creditor to whom you paid a total of $600 or more and the total amount you paid that creditor. Do not include payments for domestic support obligations, such as child support and alimony. Also, do not include payments to an attorney for this bankruptcy case.

| | | | | |
|---|---|---|---|---|
| Debtor 1 | **Karl William Krouse** | | | |
| Debtor 2 | **Betty Corinne Krouse** | | Case number *(if known)* | **25-10027-CMB** |

| Creditor's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Was this payment for ... |
|---|---|---|---|---|

7. **Within 1 year before you filed for bankruptcy, did you make a payment on a debt you owed anyone who was an insider?**
*Insiders* include your relatives; any general partners; relatives of any general partners; partnerships of which you are a general partner; corporations of which you are an officer, director, person in control, or owner of 20% or more of their voting securities; and any managing agent, including one for a business you operate as a sole proprietor. 11 U.S.C. § 101. Include payments for domestic support obligations, such as child support and alimony.

■ No
☐ Yes. List all payments to an insider.

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment |
|---|---|---|---|---|

8. **Within 1 year before you filed for bankruptcy, did you make any payments or transfer any property on account of a debt that benefited an insider?**
Include payments on debts guaranteed or cosigned by an insider.

■ No
☐ Yes. List all payments to an insider

| Insider's Name and Address | Dates of payment | Total amount paid | Amount you still owe | Reason for this payment<br>Include creditor's name |
|---|---|---|---|---|

**Part 4:    Identify Legal Actions, Repossessions, and Foreclosures**

9. **Within 1 year before you filed for bankruptcy, were you a party in any lawsuit, court action, or administrative proceeding?**
List all such matters, including personal injury cases, small claims actions, divorces, collection suits, paternity actions, support or custody modifications, and contract disputes.

☐ No
■ Yes. Fill in the details.

| Case title<br>Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| *M&T Bank vs. Karl Krouse, et. al.*<br>*2022-528* | *Civil/Foreclosure* | *Elk County Commn Pleas Court*<br>*250 Main Street*<br>*PO Box 448*<br>*Ridgway, PA 15853* | ■ Pending<br>☐ On appeal<br>☐ Concluded |
| *David Newman, et. al. vs. Karl Krouse dba Krouse Salvage*<br>*2013-895* | *Civil* | *Elk County Courthouse*<br>*250 Main Street*<br>*Ridgway, PA 15853* | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| *Jones Township Municipal Authority vs. Karl Krouse, et. al.*<br>*2011-10026* | *Civil/Lien* | *Elk County Courthouse*<br>*250 Main Street*<br>*Ridgway, PA 15853* | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| *Jones Township Municipal Authority vs. Betty Herzing*<br>*2023-10005* | *Civil/Lien* | *Elk County Courthouse*<br>*250 Main Street*<br>*Ridgway, PA 15853* | ☐ Pending<br>☐ On appeal<br>■ Concluded |
| *Jones Township Municipal Authority vs. Betty Herzing*<br>*2024-10017* | *Civil/Lien* | *Elk County Courthouse*<br>*250 Main Street*<br>*Ridgway, PA 15853* | ■ Pending<br>☐ On appeal<br>☐ Concluded |

| Debtor 1 | *Karl William Krouse* | |
|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* **25-10027-CMB** |

| Case title Case number | Nature of the case | Court or agency | Status of the case |
|---|---|---|---|
| *LVNV vs. Betty Herzing 2012-246* | *Civil* | *Elk County Courthouse 250 Main Street Ridgway, PA 15853* | ☐ Pending ☐ On appeal ■ Concluded |
| *David Newman, et. al. vs. Karl Krouse dba Krouse Salvage MJ-54303-CV-0110187-2008* | *Civil* | *Magisterial District 54-3-03 Brookville, PA 15825* | ☐ Pending ☐ On appeal ■ Concluded |

10. **Within 1 year before you filed for bankruptcy, was any of your property repossessed, foreclosed, garnished, attached, seized, or levied?** Check all that apply and fill in the details below.

■ No. Go to line 11.
☐ Yes. Fill in the information below.

| Creditor Name and Address | Describe the Property Explain what happened | Date | Value of the property |
|---|---|---|---|
| | | | |

11. **Within 90 days before you filed for bankruptcy, did any creditor, including a bank or financial institution, set off any amounts from your accounts or refuse to make a payment because you owed a debt?**

■ No
☐ Yes. Fill in the details.

| Creditor Name and Address | Describe the action the creditor took | Date action was taken | Amount |
|---|---|---|---|
| | | | |

12. **Within 1 year before you filed for bankruptcy, was any of your property in the possession of an assignee for the benefit of creditors, a court-appointed receiver, a custodian, or another official?**

■ No
☐ Yes

**Part 5:   List Certain Gifts and Contributions**

13. **Within 2 years before you filed for bankruptcy, did you give any gifts with a total value of more than $600 per person?**

■ No
☐ Yes. Fill in the details for each gift.

| Gifts with a total value of more than $600 per person Person to Whom You Gave the Gift and Address: | Describe the gifts | Dates you gave the gifts | Value |
|---|---|---|---|
| | | | |

14. **Within 2 years before you filed for bankruptcy, did you give any gifts or contributions with a total value of more than $600 to any charity?**

■ No
☐ Yes. Fill in the details for each gift or contribution.

| Gifts or contributions to charities that  total more than $600 Charity's Name Address (Number, Street, City, State and ZIP Code) | Describe what you contributed | Dates you contributed | Value |
|---|---|---|---|
| | | | |

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* | *25-10027-CMB* |

| Part 6: | List Certain Losses |
|---|---|

**15. Within 1 year before you filed for bankruptcy or since you filed for bankruptcy, did you lose anything because of theft, fire, other disaster, or gambling?**

■ No
☐ Yes. Fill in the details.

| Describe the property you lost and how the loss occurred | Describe any insurance coverage for the loss<br><br>Include the amount that insurance has paid. List pending insurance claims on line 33 of *Schedule A/B: Property.* | Date of your loss | Value of property lost |
|---|---|---|---|

| Part 7: | List Certain Payments or Transfers |
|---|---|

**16. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone you consulted about seeking bankruptcy or preparing a bankruptcy petition?**

Include any attorneys, bankruptcy petition preparers, or credit counseling agencies for services required in your bankruptcy.

☐ No
■ Yes. Fill in the details.

| Person Who Was Paid<br>Address<br>Email or website address<br>Person Who Made the Payment, if Not You | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|
| *Quinn, Buseck, Leemhuis, Toohey, & Kroto*<br>*2222 West Grandview Boulevard*<br>*Erie, PA 16506*<br>*mjanjanin@quinnfirm.com* | *Attorney Fees* | *01/13/2025* | *$2,000.00* |

**17. Within 1 year before you filed for bankruptcy, did you or anyone else acting on your behalf pay or transfer any property to anyone who promised to help you deal with your creditors or to make payments to your creditors?**

Do not include any payment or transfer that you listed on line 16.

■ No
☐ Yes. Fill in the details.

| Person Who Was Paid<br>Address | Description and value of any property transferred | Date payment or transfer was made | Amount of payment |
|---|---|---|---|

**18. Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?**

Include both outright transfers and transfers made as security (such as the granting of a security interest or mortgage on your property). Do not include gifts and transfers that you have already listed on this statement.

■ No
☐ Yes. Fill in the details.

| Person Who Received Transfer<br>Address<br><br>Person's relationship to you | Description and value of property transferred | Describe any property or payments received or debts paid in exchange | Date transfer was made |
|---|---|---|---|

**19. Within 10 years before you filed for bankruptcy, did you transfer any property to a self-settled trust or similar device of which you are a beneficiary?** (These are often called *asset-protection devices.*)

■ No
☐ Yes. Fill in the details.

| Name of trust | Description and value of the property transferred | Date Transfer was made |
|---|---|---|

| Debtor 1 | *Karl William Krouse* |
|---|---|
| Debtor 2 | *Betty Corinne Krouse* |

Case number *(if known)* **25-10027-CMB**

**Part 8:**  List of Certain Financial Accounts, Instruments, Safe Deposit Boxes, and Storage Units

20. **Within 1 year before you filed for bankruptcy, were any financial accounts or instruments held in your name, or for your benefit, closed, sold, moved, or transferred?**
Include checking, savings, money market, or other financial accounts; certificates of deposit; shares in banks, credit unions, brokerage houses, pension funds, cooperatives, associations, and other financial institutions.

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution and Address (Number, Street, City, State and ZIP Code) | Last 4 digits of account number | Type of account or instrument | Date account was closed, sold, moved, or transferred | Last balance before closing or transfer |
|---|---|---|---|---|

21. **Do you now have, or did you have within 1 year before you filed for bankruptcy, any safe deposit box or other depository for securities, cash, or other valuables?**

■ No
☐ Yes. Fill in the details.

| Name of Financial Institution Address (Number, Street, City, State and ZIP Code) | Who else had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

22. **Have you stored property in a storage unit or place other than your home within 1 year before you filed for bankruptcy?**

■ No
☐ Yes. Fill in the details.

| Name of Storage Facility Address (Number, Street, City, State and ZIP Code) | Who else has or had access to it? Address (Number, Street, City, State and ZIP Code) | Describe the contents | Do you still have it? |
|---|---|---|---|

**Part 9:**  Identify Property You Hold or Control for Someone Else

23. **Do you hold or control any property that someone else owns? Include any property you borrowed from, are storing for, or hold in trust for someone.**

■ No
☐ Yes.  Fill in the details.

| Owner's Name Address (Number, Street, City, State and ZIP Code) | Where is the property? (Number, Street, City, State and ZIP Code) | Describe the property | Value |
|---|---|---|---|

**Part 10:**  Give Details About Environmental Information

For the purpose of Part 10, the following definitions apply:

■ *Environmental law* means any federal, state, or local statute or regulation concerning pollution, contamination, releases of hazardous or toxic substances, wastes, or material into the air, land, soil, surface water, groundwater, or other medium, including statutes or regulations controlling the cleanup of these substances, wastes, or material.
■ *Site* means any location, facility, or property as defined under any environmental law, whether you now own, operate, or utilize it or used to own, operate, or utilize it, including disposal sites.
■ *Hazardous material* means anything an environmental law defines as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, contaminant, or similar term.

Report all notices, releases, and proceedings that you know about, regardless of when they occurred.

24. **Has any governmental unit notified you that you may be liable or potentially liable under or in violation of an environmental law?**

■ No
☐ Yes. Fill in the details.

| Name of site Address (Number, Street, City, State and ZIP Code) | Governmental unit Address (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|

Official Form 107          Statement of Financial Affairs for Individuals Filing for Bankruptcy          page **6**

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number *(if known)* | **25-10027-CMB** |

**25. Have you notified any governmental unit of any release of hazardous material?**

☑ No
☐ Yes. Fill in the details.

| Name of site<br>**Address** (Number, Street, City, State and ZIP Code) | Governmental unit<br>**Address** (Number, Street, City, State and ZIP Code) | Environmental law, if you know it | Date of notice |
|---|---|---|---|
| | | | |

**26. Have you been a party in any judicial or administrative proceeding under any environmental law? Include settlements and orders.**

☑ No
☐ Yes. Fill in the details.

| **Case Title**<br>**Case Number** | **Court or agency Name**<br>**Address** (Number, Street, City, State and ZIP Code) | Nature of the case | Status of the case |
|---|---|---|---|
| | | | |

## Part 11:  Give Details About Your Business or Connections to Any Business

**27. Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?**

☐ A sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time

☐ A member of a limited liability company (LLC) or limited liability partnership (LLP)

☐ A partner in a partnership

☐ An officer, director, or managing executive of a corporation

☐ An owner of at least 5% of the voting or equity securities of a corporation

☑ No. None of the above applies.  Go to Part 12.
☐ Yes. Check all that apply above and fill in the details below for each business.

| Business Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Describe the nature of the business<br><br>Name of accountant or bookkeeper | Employer Identification number<br>Do not include Social Security number or ITIN.<br><br>Dates business existed |
|---|---|---|
| | | |

**28. Within 2 years before you filed for bankruptcy, did you give a financial statement to anyone about your business? Include all financial institutions, creditors, or other parties.**

☑ No
☐ Yes. Fill in the details below.

| Name<br>Address<br>(Number, Street, City, State and ZIP Code) | Date Issued |
|---|---|
| | |

## Part 12:  Sign Below

I have read the answers on this *Statement of Financial Affairs* and any attachments, and I declare under penalty of perjury that the answers are true and correct. I understand that making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both.
**18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| */s/ Karl William Krouse* | */s/ Betty Corinne Krouse* |
|---|---|
| *Karl William Krouse* | *Betty Corinne Krouse* |
| **Signature of Debtor 1** | **Signature of Debtor 2** |
| Date   *February  4, 2025* | Date   *February  4, 2025* |

**Did you attach additional pages to *Your Statement of Financial Affairs for Individuals Filing for Bankruptcy* (Official Form 107)?**

☑ No
☐ Yes

**Did you pay or agree to pay someone who is not an attorney to help you fill out bankruptcy forms?**

☑ No
☐ Yes. Name of Person _____. Attach the *Bankruptcy Petition Preparer's Notice, Declaration, and Signature* (Official Form 119).

Debtor 1    *Karl William Krouse*
Debtor 2    *Betty Corinne Krouse*

Case number *(if known)*    *25-10027-CMB*

<table>
<tr><td>

**Fill in this information to identify your case:**

Debtor 1    **Karl William Krouse**

Debtor 2    **Betty Corinne Krouse**
(Spouse, if filing)

United States Bankruptcy Court for the:    Western District of Pennsylvania

Case number    **25-10027-CMB**
(if known)

</td></tr>
</table>

**Check as directed in lines 17 and 21:**

According to the calculations required by this Statement:

■ 1. Disposable income is not determined under 11 U.S.C. § 1325(b)(3).

☐ 2. Disposable income is determined under 11 U.S.C. § 1325(b)(3).

■ 3. The commitment period is 3 years.

☐ 4. The commitment period is 5 years.

☐ Check if this is an amended filing

## Official Form 122C-1
# Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period

**10/19**

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for being accurate. If more space is needed, attach a separate sheet to this form. Include the line number to which the additional information applies. On the top of any additional pages, write your name and case number (if known).

| Part 1: | Calculate Your Average Monthly Income |
|---|---|

1. **What is your marital and filing status?** Check one only.

   ☐ **Not married.** Fill out Column A, lines 2-11.

   ■ **Married.** Fill out both Columns A and B, lines 2-11.

Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case. 11 U.S.C. § 101(10A). For example, if you are filing on September 15, the 6-month period would be March 1 through August 31. If the amount of your monthly income varied during the 6 months, add the income for all 6 months and divide the total by 6. Fill in the result. Do not include any income amount more than once. For example, if both spouses own the same rental property, put the income from that property in one column only. If you have nothing to report for any line, write $0 in the space.

|  |  | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 2. | **Your gross wages, salary, tips, bonuses, overtime, and commissions** (before all payroll deductions). | $ 477.90 | $ 0.00 |
| 3. | **Alimony and maintenance payments.** Do not include payments from a spouse if Column B is filled in. | $ 0.00 | $ 0.00 |
| 4. | **All amounts from any source which are regularly paid for household expenses of you or your dependents, including child support.** Include regular contributions from an unmarried partner, members of your household, your dependents, parents, and roommates. Do not include payments from a spouse. Do not include payments you listed on line 3. | $ 0.00 | $ 0.00 |

5. **Net income from operating a business, profession, or farm**

| | Debtor 1 | | |
|---|---|---|---|
| Gross receipts (before all deductions) | $ 0.00 | | |
| Ordinary and necessary operating expenses | -$ 0.00 | | |
| Net monthly income from a business, profession, or farm | $ 0.00 Copy here -> | $ 0.00 | $ 0.00 |

6. **Net income from rental and other real property**

| | Debtor 1 | | |
|---|---|---|---|
| Gross receipts (before all deductions) | $ 0.00 | | |
| Ordinary and necessary operating expenses | -$ 0.00 | | |
| Net monthly income from rental or other real property | $ 0.00 Copy here -> | $ 0.00 | $ 0.00 |

| Debtor 1 | *Karl William Krouse* |
|----------|----------------------|
| Debtor 2 | *Betty Corinne Krouse* |

Case number (*if known*)    **25-10027-CMB**

|  | | Column A<br>Debtor 1 | Column B<br>Debtor 2 or<br>non-filing spouse |
|---|---|---|---|
| 7. | **Interest, dividends, and royalties** | $ _____ *0.00* | $ _____ *0.00* |
| 8. | **Unemployment compensation** | $ _____ *0.00* | $ _____ *0.00* |

Do not enter the amount if you contend that the amount received was a benefit under the Social Security Act. Instead, list it here:

| For you | $ _____ *0.00* |
|---------|----------------|
| For your spouse | $ _____ *0.00* |

9. **Pension or retirement income.** Do not include any amount received that was a benefit under the Social Security Act. Also, except as stated in the next sentence, do not include any compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If you received any retired pay paid under chapter 61 of title 10, then include that pay only to the extent that it does not exceed the amount of retired pay to which you would otherwise be entitled if retired under any provision of title 10 other than chapter 61 of that title.    $ _____ *0.00*    $ _____ *0.00*

10. **Income from all other sources not listed above.** Specify the source and amount. Do not include any benefits received under the Social Security Act; payments received as a victim of a war crime, a crime against humanity, or international or domestic terrorism; or compensation, pension, pay, annuity, or allowance paid by the United States Government in connection with a disability, combat-related injury or disability, or death of a member of the uniformed services. If necessary, list other sources on a separate page and put the total below.

|  | | | |
|---|---|---|---|
| | | $ _____ *0.00* | $ _____ *0.00* |
| | | $ _____ *0.00* | $ _____ *0.00* |
| | Total amounts from separate pages, if any. | + $ _____ *0.00* | $ _____ *0.00* |

11. **Calculate your total average monthly income.** Add lines 2 through 10 for each column. Then add the total for Column A to the total for Column B.    $ *477.90* + $ *0.00* = $ *477.90*

Total average monthly income

| **Part 2:** | Determine How to Measure Your Deductions from Income |
|-------------|------------------------------------------------------|

12. **Copy your total average monthly income from line 11.** .............................................    $ *477.90*

13. **Calculate the marital adjustment.** Check one:

☐ You are not married. Fill in 0 below.

■ You are married and your spouse is filing with you. Fill in 0 below.

☐ You are married and your spouse is not filing with you.

Fill in the amount of the income listed in line 11, Column B, that was NOT regularly paid for the household expenses of you or your dependents, such as payment of the spouse's tax liability or the spouse's support of someone other than you or your dependents.

Below, specify the basis for excluding this income and the amount of income devoted to each purpose. If necessary, list additional adjustments on a separate page.

If this adjustment does not apply, enter 0 below.

|  | $ _____ |
|---|---------|
| | $ _____ |
| | + $ _____ |
| Total | $ _____ *0.00*    Copy here=>    − _____ *0.00* |

14. **Your current monthly income.** Subtract line 13 from line 12.    $ *477.90*

15. **Calculate your current monthly income for the year.** Follow these steps:

15a.  Copy line 14 here=> ...............................................................................................    $ *477.90*

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number (*if known*) | **25-10027-CMB** |

Multiply line 15a by 12 (the number of months in a year).      **x 12**

15b.  The result is your current monthly income for the year for this part of the form. ..........................................  $   **5,734.80**

---

16.  **Calculate the median family income that applies to you.** Follow these steps:

16a. Fill in the state in which you live.     *PA*

16b. Fill in the number of people in your household.     *2*

16c. Fill in the median family income for your state and size of household.     $   **80,864.00**

To find a list of applicable median income amounts, go online using the link specified in the separate instructions for this form. This list may also be available at the bankruptcy clerk's office.

17.  **How do the lines compare?**

17a.  ■  Line 15b is less than or equal to line 16c. On the top of page 1 of this form, check box 1, *Disposable income is not determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3.** Do NOT fill out *Calculation of Your Disposable Income* (Official Form 122C-2).

17b.  ☐  Line 15b is more than line 16c. On the top of page 1 of this form, check box 2, *Disposable income is determined under 11 U.S.C. § 1325(b)(3)*. **Go to Part 3 and fill out Calculation of Your Disposable Income (Official Form 122C-2).** On line 39 of that form, copy your current monthly income from line 14 above.

| **Part 3:** | **Calculate Your Commitment Period Under 11 U.S.C. § 1325(b)(4)** |
|---|---|

18.  **Copy your total average monthly income from line 11 .**     $   **477.90**

19.  **Deduct the marital adjustment if it applies.** If you are married, your spouse is not filing with you, and you contend that calculating the commitment period under 11 U.S.C. § 1325(b)(4) allows you to deduct part of your spouse's income, copy the amount from line 13.

19a. If the marital adjustment does not apply, fill in 0 on line 19a.     -$   **0.00**

19b. **Subtract line 19a from line 18.**     $   **477.90**

20.  **Calculate your current monthly income for the year.** Follow these steps:

20a. Copy line 19b     $   **477.90**

Multiply by 12 (the number of months in a year).     **x 12**

20b. The result is your current monthly income for the year for this part of the form     $   **5,734.80**

20c. Copy the median family income for your state and size of household from line 16c     $   **80,864.00**

21.  **How do the lines compare?**

■  Line 20b is less than line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 3, *The commitment period is 3 years*. Go to Part 4.

☐  Line 20b is more than or equal to line 20c. Unless otherwise ordered by the court, on the top of page 1 of this form, check box 4, *The commitment period is 5 years*. Go to Part 4.

| **Part 4:** | **Sign Below** |
|---|---|

By signing here, under penalty of perjury I declare that the information on this statement and in any attachments is true and correct.

**X** */s/ Karl William Krouse*        **X** */s/ Betty Corinne Krouse*

*Karl William Krouse*              *Betty Corinne Krouse*
Signature of Debtor 1             Signature of Debtor 2

Date   *February  4, 2025*        Date   *February  4, 2025*
    MM / DD / YYYY             MM / DD / YYYY

If you checked 17a, do NOT fill out or file Form 122C-2.

---

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number (*if known*) | *25-10027-CMB* |

If you checked 17b, fill out Form 122C-2 and file it with this form. On line 39 of that form, copy your current monthly income from line 14 above.

| Debtor 1 | *Karl William Krouse* | | |
|---|---|---|---|
| Debtor 2 | *Betty Corinne Krouse* | Case number (*if known*) | *25-10027-CMB* |

# Current Monthly Income Details for the Debtor

**Debtor Income Details:**
Income for the Period *07/01/2024* to *12/31/2024*.

### Line 2 - Gross wages, salary, tips, bonuses, overtime, commissions
Source of Income: *Quik Fill*
Income by Month:

| | | |
|---|---|---|
| 6 Months Ago: | *07/2024* | *$229.64* |
| 5 Months Ago: | *08/2024* | *$726.34* |
| 4 Months Ago: | *09/2024* | *$415.51* |
| 3 Months Ago: | *10/2024* | *$429.43* |
| 2 Months Ago: | *11/2024* | *$563.75* |
| Last Month: | *12/2024* | *$502.71* |
| | Average per month: | *$477.90* |

### Non-CMI - Social Security Act Income
Source of Income: *Social Security*
Income by Month:

| | | |
|---|---|---|
| 6 Months Ago: | *07/2024* | *$1,025.00* |
| 5 Months Ago: | *08/2024* | *$1,025.00* |
| 4 Months Ago: | *09/2024* | *$1,025.00* |
| 3 Months Ago: | *10/2024* | *$1,025.00* |
| 2 Months Ago: | *11/2024* | *$1,025.00* |
| Last Month: | *12/2024* | *$1,025.00* |
| | Average per month: | *$1,025.00* |

| Debtor 1 | *Karl William Krouse* | | | |
| Debtor 2 | *Betty Corinne Krouse* | | Case number (*if known*) | *25-10027-CMB* |

## Current Monthly Income Details for the Debtor's Spouse

**Spouse Income Details**:
Income for the Period *07/01/2024* to *12/31/2024*.

*Non-CMI - Social Security Act Income*
Source of Income: *Social Security*
Income by Month:

| | | |
|---|---|---|
| 6 Months Ago: | *07/2024* | *$778.00* |
| 5 Months Ago: | *08/2024* | *$778.00* |
| 4 Months Ago: | *09/2024* | *$778.00* |
| 3 Months Ago: | *10/2024* | *$778.00* |
| 2 Months Ago: | *11/2024* | *$778.00* |
| Last Month: | *12/2024* | *$778.00* |
| | Average per month: | *$778.00* |

# Notice Required by 11 U.S.C. § 342(b) for Individuals Filing for Bankruptcy (Form 2010)

This notice is for you if:

You are an individual filing for bankruptcy, and

Your debts are primarily consumer debts. *Consumer debts* are defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."

**The types of bankruptcy that are available to individuals**

Individuals who meet the qualifications may file under one of four different chapters of Bankruptcy Code:

Chapter 7 - Liquidation

Chapter 11 - Reorganization

Chapter 12 - Voluntary repayment plan for family farmers or fishermen

Chapter 13 - Voluntary repayment plan for individuals with regular income

**You should have an attorney review your decision to file for bankruptcy and the choice of chapter.**

| Chapter 7: | Liquidation |
|---|---|
| $245 | filing fee |
| $78 | administrative fee |
| + $15 | trustee surcharge |
| $338 | total fee |

Chapter 7 is for individuals who have financial difficulty preventing them from paying their debts and who are willing to allow their non-exempt property to be used to pay their creditors. The primary purpose of filing under chapter 7 is to have your debts discharged. The bankruptcy discharge relieves you after bankruptcy from having to pay many of your pre-bankruptcy debts. Exceptions exist for particular debts, and liens on property may still be enforced after discharge. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

However, if the court finds that you have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge.

You should know that even if you file chapter 7 and you receive a discharge, some debts are not discharged under the law. Therefore, you may still be responsible to pay:

most taxes;

most student loans;

domestic support and property settlement obligations;

most fines, penalties, forfeitures, and criminal restitution obligations; and

certain debts that are not listed in your bankruptcy papers.

You may also be required to pay debts arising from:

fraud or theft;

fraud or defalcation while acting in breach of fiduciary capacity;

intentional injuries that you inflicted; and

death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs.

If your debts are primarily consumer debts, the court can dismiss your chapter 7 case if it finds that you have enough income to repay creditors a certain amount. You must file *Chapter 7 Statement of Your Current Monthly Income* (Official Form 122A–1) if you are an individual filing for bankruptcy under chapter 7. This form will determine your current monthly income and compare whether your income is more than the median income that applies in your state.

If your income is not above the median for your state, you will not have to complete the other chapter 7 form, the *Chapter 7 Means Test Calculation* (Official Form 122A–2).

If your income is above the median for your state, you must file a second form —the *Chapter 7 Means Test Calculation* (Official Form 122A-2). The calculations on the form— sometimes called the *Means Test*—deduct from your income living expenses and payments on certain debts to determine any amount available to pay unsecured creditors. If

your income is more than the median income for your state of residence and family size, depending on the results of the *Means Test*, the U.S. trustee, bankruptcy administrator, or creditors can file a motion to dismiss your case under § 707(b) of the Bankruptcy Code. If a motion is filed, the court will decide if your case should be dismissed. To avoid dismissal, you may choose to proceed under another chapter of the Bankruptcy Code.

If you are an individual filing for chapter 7 bankruptcy, the trustee may sell your property to pay your debts, subject to your right to exempt the property or a portion of the proceeds from the sale of the property. The property, and the proceeds from property that your bankruptcy trustee sells or liquidates that you are entitled to, is called *exempt property*. Exemptions may enable you to keep your home, a car, clothing, and household items or to receive some of the proceeds if the property is sold.

Exemptions are not automatic. To exempt property, you must list it on *Schedule C: The Property You Claim as Exempt* (Official Form 106C). If you do not list the property, the trustee may sell it and pay all of the proceeds to your creditors.

---

**Chapter 11: Reorganization**

---

| | | |
|---|---|---|
| | $1,167 | filing fee |
| + | $571 | administrative fee |
| | $1,738 | total fee |

Chapter 11 is often used for reorganizing a business, but is also available to individuals. The provisions of chapter 11 are too complicated to summarize briefly.

**Read These Important Warnings**

Because bankruptcy can have serious long-term financial and legal consequences, including loss of your property, you should hire an attorney and carefully consider all of your options before you file. Only an attorney can give you legal advice about what can happen as a result of filing for bankruptcy and what your options are. If you do file for bankruptcy, an attorney can help you fill out the forms properly and protect you, your family, your home, and your possessions.

Although the law allows you to represent yourself in bankruptcy court, you should understand that many people find it difficult to represent themselves successfully. The rules are technical, and a mistake or inaction may harm you. If you file without an attorney, you are still responsible for knowing and following all of the legal requirements.

You should not file for bankruptcy if you are not eligible to file or if you do not intend to file the necessary documents.

Bankruptcy fraud is a serious crime; you could be fined and imprisoned if you commit fraud in your bankruptcy case. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $250,000, or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

---

### Chapter 12: Repayment plan for family farmers or fishermen

|   | $200 | filing fee |
|---|------|------------|
| + | $78 | administrative fee |
|   | $278 | total fee |

Similar to chapter 13, chapter 12 permits family farmers and fishermen to repay their debts over a period of time using future earnings and to discharge some debts that are not paid.

---

### Chapter 13: Repayment plan for individuals with regular income

|   | $235 | filing fee |
|---|------|------------|
| + | $78 | administrative fee |
|   | $313 | total fee |

Chapter 13 is for individuals who have regular income and would like to pay all or part of their debts in installments over a period of time and to discharge some debts that are not paid. You are eligible for chapter 13 only if your debts are not more than certain dollar amounts set forth in 11 U.S.C. § 109.

Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, usually using your future earnings. If the court approves your plan, the court will allow you to repay your debts, as adjusted by the plan, within 3 years or 5 years, depending on your income and other factors.

After you make all the payments under your plan, many of your debts are discharged. The debts that are not discharged and that you may still be responsible to pay include:

- domestic support obligations,

- most student loans,

- certain taxes,

- debts for fraud or theft,

- debts for fraud or defalcation while acting in a fiduciary capacity,

- most criminal fines and restitution obligations,

- certain debts that are not listed in your bankruptcy papers,

- certain debts for acts that caused death or personal injury, and

- certain long-term secured debts.

### Warning: File Your Forms on Time

Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information about your creditors, assets, liabilities, income, expenses and general financial condition. The court may dismiss your bankruptcy case if you do not file this information within the deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

For more information about the documents and their deadlines, go to:
http://www.uscourts.gov/forms/bankruptcy-forms

**Bankruptcy crimes have serious consequences**

If you knowingly and fraudulently conceal assets or make a false oath or statement under penalty of perjury—either orally or in writing—in connection with a bankruptcy case, you may be fined, imprisoned, or both.

All information you supply in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the U.S. Trustee, the Office of the U.S. Attorney, and other offices and employees of the U.S. Department of Justice.

**Make sure the court has your mailing address**

The bankruptcy court sends notices to the mailing address you list on *Voluntary Petition for Individuals Filing for Bankruptcy* (Official Form 101). To ensure that you receive information about your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address.

A married couple may file a bankruptcy case together—called a *joint case.* If you file a joint case and each spouse lists the same mailing address on the bankruptcy petition, the bankruptcy court generally will mail you and your spouse one copy of each notice, unless you file a statement with the court asking that each spouse receive separate copies.

**Understand which services you could receive from credit counseling agencies**

The law generally requires that you receive a credit counseling briefing from an approved credit counseling agency. 11 U.S.C. § 109(h). If you are filing a joint case, both spouses must receive the briefing. With limited exceptions, you must receive it within the 180 days **before** you file your bankruptcy petition. This briefing is usually conducted by telephone or on the Internet.

In addition, after filing a bankruptcy case, you generally must complete a financial management instructional course before you can receive a discharge. If you are filing a joint case, both spouses must complete the course.

You can obtain the list of agencies approved to provide both the briefing and the instructional course from: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

In Alabama and North Carolina, go to: http://www.uscourts.gov/services-forms/bankruptcy/credit-counseling-and-debtor-education-courses.

If you do not have access to a computer, the clerk of the bankruptcy court may be able to help you obtain the list.

B2030 (Form 2030) (12/15)

# United States Bankruptcy Court
## Western District of Pennsylvania

In re    *Karl William Krouse*  
      *Betty Corinne Krouse*                            Case No.    *25-10027-CMB*  
                                     Debtor(s)      Chapter    *13*

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.   Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

     ■   **FLAT FEE**

         For legal services, I have agreed to accept ................................ $      *5,000.00*

         Prior to the filing of this statement I have received ................ $      *500.00*

         Balance Due ..................................................................... $      *4,500.00*

     ☐   **RETAINER**

         For legal services, I have agreed to accept and received a retainer of ................ $ _____

         The undersigned shall bill against the retainer at an hourly rate of _____ $ _____  
         [Or attach firm hourly rate schedule.] Debtor(s) have agreed to pay all Court approved  
         fees and expenses exceeding the amount of the retainer.

2.   The source of the compensation paid to me was:

     ■   Debtor     ☐   Other (specify):

3.   The source of compensation to be paid to me is:

     ■   Debtor     ☐   Other (specify):

4.   ■   I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

     ☐   I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5.   In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

     a.   Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;  
     b.   Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;  
     c.   Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;  
     d.   [Other provisions as needed]

6.   By agreement with the debtor(s), the above-disclosed fee does not include the following service:

     *As of the date of the filing of the Petition, Counsel for the Debtor(s) has received a total of $1,000.00, which represents $500.00 in attorney's fees and a $500.00 expense charge. This expense charge includes the filing fee, a bringdown search fee, and photocopying and postage costs. The Debtor(s) has/have agreed to a flat fee of $5,000.00 for attorney's fees, (subject to any increases approved by the Court in the "no-look fee") for the preparation and filing of the Bankruptcy Petition, Schedules, and related documents, Chapter 13 Plan, Motion for Wage Attachment, as well as the attendance of counsel at the First Meeting of Creditors and Confirmation Hearing.*

     *Additional services, such as the filing of Motions to Avoid Liens, Objections to Claim, Motions and/or Complaints for Sale of Personal and/or Real Property, Adversary Proceedings, including but not limited to fraudulent conveyance actions, preference actions, turnover actions, and the defense of Objections to Discharge, the filing of Amended Chapter 13 Plans, and/or the conversion of the case to a Chapter 7 proceeding will be done on an hourly basis of $275.00 per hour additional charge to the Debtor(s). Any and all additional fees and costs shall be approved by the Court and paid through the Debtor's Chapter 13 Plan.*

In re    **Karl William Krouse**
**Betty Corinne Krouse**                                  Case No.    **25-10027-CMB**
_____
Debtor(s)

# DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)
## (Continuation Sheet)

*Additional services, such as the filing of Motions to Avoid Liens, Objections to Claim,  Motions and/or Complaints for Sale of Personal and/or Real Property, Adversary Proceedings, including but not limited to fraudulent conveyance actions, preference actions, turnover actions, and defense of Objections to Discharge, Motions for Relief from the Automatic Stay, and substantial abuse allegations, and/or the conversion of the case to a Chapter 13 proceeding will be done on an hourly basis of $275.00 per hour additional charge to the Debtor(s).*

**CERTIFICATION**

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

**February  4, 2025**                              **/s/ Michael S. Jan Janin, Esquire**
_____                _____
*Date*                                          **Michael S. Jan Janin, Esquire 38880**
                                                *Signature of Attorney*
                                                **Quinn, Buseck, Leemhuis, Toohey, & Kroto, Inc.**
                                                **2222 West Grandview Boulevard**
                                                **Erie, PA 16506**
                                                **814-833-2222  Fax: 814-833-6753**
                                                **mjanjanin@quinnfirm.com**
                                                _____
                                                *Name of law firm*

Michael S. Jan Janin
msjanjanin@quinnfirm.com

2222 W. Grandview Blvd.
Erie, PA 16506
814/833-2222 Phone
814/833-6753 Fax
www.quinnfirm.com

January 27, 2025

Karl William Krouse
Betty Corinne Krouse
4408 Wilcox Road
Wilcox, PA 15870
Email: karlk1960@yahoo.com

RE:    Chapter 13 Bankruptcy

Dear Betty and Karl:

You have asked us, the Quinn Law Firm, to represent you in connection with a Chapter 13 bankruptcy, and we are pleased to do so.

It is our Firm's practice to confirm in writing (1) the identity of any client whom we undertake to represent, (2) the nature of our undertaking on behalf of that client and (3) our billing and payment arrangements with respect to our legal services. We do this to avoid the possibility of any future misunderstanding about these matters.

We understand that we are being engaged to act as counsel for KARL WILLIAM KROUSE and BETTY CORINNE KROUSE and for no other entity or entities and that we are to file a voluntary Chapter 13 bankruptcy petition on your behalf in the United States Bankruptcy Court for the Western District of Pennsylvania, Erie Division.

Our flat fee for a Chapter 13 Bankruptcy is the Court's approved minimum legal fees of $5,000 plus the court approved costs in the amount of $500 (which includes the $318 filing fee, search fee and other actual out-of-pocket costs) for a total of $5,500. Upon receipt of the completed bankruptcy schedules and a retainer in the amount of $1,000, we will file a voluntary Chapter 13 Bankruptcy Petition on your behalf in the United States Bankruptcy Court for the Western District of Pennsylvania, Erie Division. If the Chapter 13 Plan is confirmed, the balance of the legal fees will be paid by the Chapter 13 Trustee over the life of the Chapter 13 Plan. If the Chapter 13 Plan is not confirmed, you have no further liability whatsoever for the payment of legal fees.

This fee includes representing you over the five (5) year life of the Chapter 13 Plan and includes the filing fee for the preparation and filing of the bankruptcy petition, schedules, and related documents, chapter 13 plan, and motion for a wage attachment, as well as the attendance of counsel at the first meeting of creditors and confirmation hearing.

It is our Firm's policy to require that a retainer be deposited with us to be applied against services and costs incurred. Our retainer in this matter is $1,000. Statements for professional services and related charges, based upon our standard billing practices as described in this letter, will be presented to you and will be payable upon

January 27, 2025
Page 2

presentation as described above. Your advance payment will be applied by us to any outstanding balances that may be due to us at the time our engagement is concluded or our services terminated. To the extent no amounts are then owing, we will refund such advanced payment to you.

We will seek to keep you informed as to the progress of our engagement. As appropriate, we would expect to send you copies of significant papers prepared or received by us. If you have any question(s) about our services or about the status of our engagement, please feel free to contact me at any time.

We would, at this time, like to confirm that you are in agreement with the matters set forth herein. Therefore, we would ask that you sign and date the enclosed copy of this letter in the spaces provided below and return the same to us for our files. If the foregoing is not in accordance with your understanding of our agreement in any respect, please contact me so that we may address your concerns promptly. We look forward to working for you.

Very truly yours,

QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.

By _____
        Michael S. Jan Janin

ACCEPTED AND ACKNOWLEDGED:

By _____
        Karl William Krouse

By _____
        Betty Corinne Krouse

DATE: _1-31-2025_

#1694052

# United States Bankruptcy Court
## Western District of Pennsylvania

In re  **Karl William Krouse**
**Betty Corinne Krouse**

Debtor(s)

Case No.  **25-10027-CMB**

Chapter  **13**

# VERIFICATION OF CREDITOR MATRIX

The above-named Debtors hereby verify that the attached list of creditors is true and correct to the best of their knowledge.

Date:  **February  4, 2025**

**/s/ Karl William Krouse**
**Karl William Krouse**
Signature of Debtor

Date:  **February  4, 2025**

**/s/ Betty Corinne Krouse**
**Betty Corinne Krouse**
Signature of Debtor

Affirm, Inc.
ATTN: Bankruptcy
650 California Street, Floor #12
San Francisco, CA 94108

Attorney General of Pennsylvania
Western Regional Office
1251 Watefront Place
Mezzanine Level
Pittsburgh, PA 15222

Attorney General of the United States
U.S. Dept. of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Cavalry SPV I LLC
ATTN: Bankruptcy Dept.
Suite 400
500 Summit Lake Drive
Valhalla, NY 10595

Cavalry SPV I LLC
ATTN: Bankruptcy
PO Box 27288
Tempe, AZ 85282

Cavalry SPV I LLC
ATTN: Bankruptcy
1 American Lane, Suite #220
Greenwich, CT 06831

Cavalry SPV I LLC
c/o CT Corporation System, Stat. Agent
ATTN: Bankruptcy Dept.
1200 South Pine Island Road
Fort Lauderdale, FL 33324

Chase Bank NA/WAMU
ATTN: Bankruptcy
P.O. Box 15123
Wilmington, DE 19850-5123

Chase Bank, NA/WAMU
ATTN: Bankruptcy
301 North Walnut Street, Floor #9
Wilmington, DE 19801

Choicepoint
ATTN: Bankruptcy
1000 Alderman Drive
Alpharetta, GA 30005

```
Countrywide Home Loans
ATTN: Bankruptcy
1800 Tapo Canyon Rd
MS #SV-103
Simi Valley, CA 93063

Credit Collection Service
725 Canton Street
Norwood, MA 02062

Credit Collection Service
ATTN: Bankruptcy
PO Box 607
Norwood, MA 02062

David Newman
9396 Route 949
Sigel, PA 15860

Dept of Education/Nelnet
ATTN: Bankruptcy
PO Box 173904
Denver, CO 80217

Dept of Veterans Affairs
ATTN: Bankruptcy
PO Box 530269
Atlanta, GA 30353

Dept. of Education
Fed Loan Servicing
P.O. Box 530210
Atlanta, GA 30353-0210

Dept. of Education/Advantage
ATTN: Bankruptcy
PO Box 9635
Wilkes Barre, PA 18773

Dept. of Education/Aidvantage
ATTN: Bankruptcy
PO Box 4450
Portland, OR 97208

Dept. of Education/Aidvantage
ATTN: Bankruptcy
1600 Tyson Boulevard
Greenville, TX 75403

Dept. of Education/Navient
ATTN: Bankruptcy
P.O. Box 9635
Wilkes Barre, PA 18773
```

Dept. of Education/Navient
ATTN: Bankruptcy
PO Box 4450
Portland, OR 97208

ECMC
ATTN: Bankruptcy
1 Imation Place
Oakdale, MN 55128-3421

Educational Credit Management Corp.
ATTN: Bankruptcy
PO Box 16408
Saint Paul, MN 55116

Elk County Regional Health Center
ATTN: Bankruptcy
769 Johnsonsburg Road
Saint Marys, PA 15857

Elk County Tax Claim Bureau
ATTN: Bankruptcy
250 Main Street
PO Box 448
Ridgway, PA 15853

Elk County Tax Collector
ATTN: Bankruptcy
PO Box 70
Wilcox, PA 15870

Equifax
ATTN: Bankruptcy
1550 Peachtree Street, NW
Atlanta, GA 30309

Equifax
Attn: Bankruptcy Dept.
P.O. Box 740241
Atlanta, GA 30374

Experian
ATTN: Bankruptcy
PO Box 2104
Allen, TX 75013

Experian
ATTN: Bankruptcy
PO Box 4500
Allen, TX 75013

Experian
Attn: Bankruptcy Dept.
P.O. Box 2002
Allen, TX 75013

Fred Newman
9396 Route 949
Sigel, PA 15860

Holiday Financial Services
ATTN: Bankruptcy
715 West 38th Street
Erie, PA 16508

Internal Revenue Service
ATTN: Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

IRS
ATTN: Bankruptcy
1000 Liberty Avenue
M/S #711B
Pittsburgh, PA 15222

John R. Thomas, Esq.
PO Box 82
128 South Street
Ridgway, PA 15853

Jones Township Municipal Authority
ATTN: Bankruptcy Dept
PO Box 374
Wilcox, PA 15870

Jones Township Municipal Authority
ATTN: Bankruptcy Dept
PO Box 25
Wilcox, PA 15870

Jones Township Municipal Authority
ATTN: Bankruptcy Dept
320 Faries Street
Wilcox, PA 15870

Jones Township Tax Collector
ATTN: Bankruptcy Dept
PO Box 70
Wilcox, PA 15870

Kane Community Hospital
ATTN: Bankruptcy
4372 State Route 6
Kane, PA 16735

Kenneth Seitz, Esq.
PO Box 211
Ligonier, PA 15658

KML Law Group PC
Suite 5000, BNY Mellon Independence Ctr
701 Market Street
Suite #5000
Philadelphia, PA 19106

LexisNexis Risk
ATTN: Bankruptcy
PO Box 105108
Atlanta, GA 30348

LVNV Funding LLC
15 S. Main Street
Suite 600
Greenville, SC 29601

LVNV Funding LLC
ATTN: Bankruptcy
2400 Ansys Drive, Suite 402B
Canonsburg, PA 15317

LVNV Funding LLC
ATTN:  Bankruptcy
Suite 600
15 S. Main Street
Greenville, SC 29601

LVNV Funding LLC
200 Meeting Street
Suite 206
Charlestown, SC 29401-3187

LVNV Funding LLC
P.O. Box 10497
Greenville, SC 29603

LVNV Funding LLC
ATTN: Bankruptcy Dept.
355 South Main Street, Suite #300-D
Greenville, SC 29601

LVNV Funding LLC
ATTN: Bankruptcy
P.O. Box 1269
Greenville, SC 29602

M&T Bank
ATTN: Bankruptcy Dept.
1 M&T Plaza
8th Floor
Buffalo, NY 14203

M&T Bank
ATTN: Bankruptcy/Legal Dept.
626 Commerce Drive
Buffalo, NY 14228

M&T Bank
ATTN: Bankruptcy
3 Fountain Plaza
Buffalo, NY 14203

M&T Bank
ATTN: Bankruptcy Dept.
PO Box 1508
Buffalo, NY 14240

MERS
ATTN: Bankruptcy Dept.
1901 Vorhees Street, Suite C
Danville, IL 61834

MERS
ATTN: Bankruptcy
11819 Miami Street, Suite #100
Omaha, NE 68164

Michael Ratchford, Esq.
Ratchford Law Group PC
54 Glenmaura National Blvd, Suite #104
Moosic, PA 18507

OneMain
ATTN: Bankruptcy
100 International Drive, 15th Floor
Baltimore, MD 21202

OneMain Financial
ATTN: Bankruptcy
6801 Colwell Blvd.
Irving, TX 75039

OneMain Financial
ATTN: Bankruptcy
601 N.W. Second Street
Evansville, IN 47708

Peter & Shirley Biel
4408 Wilcox Road
Wilcox, PA 15870

Portfolio Recovery Associates Inc.
ATTN: Bankruptcy Dept.
P.O. Box 12914
Norfolk, VA 23541

```
Portfolio Recovery Associates LLC
ATTN: Bankruptcy Dept
P.O. Box 41067
Norfolk, VA 23541

Portfolio Recovery Associates, Inc.
Riverside Commerce Center
120 Corporate Blvd.
Norfolk, VA 23502-4962

Portfolio Recovery Associates, Inc.
ATTN: Bankruptcy Dept.
120 Corporate Blvd.
Riverside Commerce Center
Norfolk, VA 23502-4962

Portfolio Recovery Associates, Inc.
ATTN: Bankruptcy
150 Corporate Blvd.
Norfolk, VA 23502-4962

PRA Receivables Management, LLC
ATTN: Bankruptcy
130 Corporate Boulevard
Norfolk, VA 23502

PRA Receivables Management, LLC
ATTN: Akera Smith, Bankruptcy Dept
P.O. Box 41067
Norfolk, VA 23541

Progressive Insurance
ATTN: Bankruptcy Dept.
6300 Wilson Mills Road
Cleveland, OH 44143

Progressive Insurance
ATTN: Bankruptcy
5920 Landerbrook Drive
Cleveland, OH 44124

Progressive Insurance
ATTN: Bankruptcy
PO Box 6807
Cleveland, OH 44101

Ratchford Law Group
54 Glenmaura National Blvd.
Suite #104
Moosic, PA 18507

Ratchford Law Group , PC
409 Lackawanna Avenue, Suite #320
Scranton, PA 18503
```

Resurgent Acquisitions
ATTN: Bankruptcy
6801 South Cimarron Street 424 N
Las Vegas, NV 89113

Resurgent Capital Services
ATTN: Bankruptcy
55 Beattie Place, Suite #110
MS #276
Greenville, SC 29601

Resurgent Capital Services
ATTN: Bankruptcy
PO Box 10587
Greenville, SC 29603

SYNCB/Amazon
ATTN: Bankruptcy
PO Box 965015
Orlando, FL 32896

SYNCB/Harbor Freight
ATTN: Bankruptcy
PO Box 965060
Orlando, FL 32896

Thomas G. Wagner, Esq.
115 Lafayette Street
Saint Marys, PA 15857

TransUnion
ATTN: Bankruptcy
PO Box 1000
Crum Lynne, PA 19022

TransUnion
ATTN: Bankruptcy
PO Box 2000
Chester, PA 19016

Transunion
Attn: Bankruptcy Dept.
P.O. Box 1000
Crum Lynne, PA 19022

United States of America
ATTN: IRS - Bankruptcy Dept.
700 Grant Street, Suite #4000
Pittsburgh, PA 15219

UPMC
ATTN: Bankruptcy
Room 386
2 Hot Metal Street
Pittsburgh, PA 15203

UPMC
Attn: Bankruptcy
200 Lothro Street
Pittsburgh, PA 15213

UPMC Community Medicine
ATTN: Bankruptcy
2060 North Pearl Street
North East, PA 16428

UPMC Community Medicine
ATTN: Bankruptcy
PO Box 1123
Minneapolis, MN 55440

UPMC Physicians Services
ATTN: Bankruptcy
PO Box 1123
Minneapolis, MN 55440

UPMC Physicians Services
ATTN: Bankruptcy Dept.
P.O. Box 371980
Pittsburgh, PA 15250-7980

UPMC Physicians Services
ATTN: Bankruptcy
201 State Street
Erie, PA 16550

Verizon
500 Technology Drive
Suite 30
Weldon Springs, MO 63304

Verizon
by American InfoSource LP as agent
P.O. Box 248838
Oklahoma City, OK 73124-8838

Verizon
ATTN: Bankruptcy
401 South High Street, 2nd Floor
West Chester, PA 19383

Verizon Wireless
Bankruptcy Administration
500 Technology Drive
Suite 550
Weldon Spring, MO 63304

Verizon Wireless
by American Infosource as agent
PO Box 4457
Houston, TX 77210

Verizon Wireless
ATTN: Bankruptcy
5 Foster Brook Blvd.
Bradford, PA 16701

West Penn Power
ATTN: Bankruptcy
5001 NASA Blvd.
Fairmont, WV 26554

West Penn Power/First Energy
ATTN: Bankruptcy Department
6896 Miller Road
Brecksville, OH 44141